William A. Isaacson, Esq., DC Bar No. 414788
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W. Ste 800
Washington, District of Columbia 20015
Tel  (202) 237-2727
Fax (202) 237-6131

Patrick D. Webb, Esq., CA State Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, Calif. 92101
Tel  (619) 236-1650
Fax (619) 236-1283

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER J. ROSALES, ESTATE OF HELEN CUERO, ESTATE OF DEAN ROSALES, P.O. Box 85, Jamul, California, 91935 | **CASE NUMBER:** |
| | **JUDGE:** |
| KAREN TOGGERY, ESTATE OF MARIE TOGGERY, ESTATE OF MATTHEW TINEJERO TOGGERY, P.O. Box 375, Jamul, California, 91935 | **DECK TYPE:**      **Tribal Rights** |
| | **DATE STAMP:** |
| JAMUL INDIAN VILLAGE, a federally recognized Indian tribe, P.O. Box 612, Jamul, California, 91935. | |
| Plaintiffs, | |
| vs. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| UNITED STATES OF AMERICA, Department of Justice 950 Pennsylvania Avenue, NW Washington, D.C. 20530-0001, and its divisions, including but not limited to, DEPARTMENT OF THE INTERIOR, by and through Secretary DIRK KEMPTHORNE, in his official capacity, 1849 C Street, NW, Washington, D.C. 20240, | |
| BUREAU OF INDIAN AFFAIRS, by and through Assistant Secretary of Indian Affairs, JAMES E. CASON, in his official capacity, 1849 C Street. NW, Washington, D.C. 20240, | |
| Defendants. | |

Plaintiffs, WALTER ROSALES, KAREN TOGGERY, JAMUL INDIAN VILLAGE,

ESTATE OF HELEN CUERO, ESTATE OF DEAN ROSALES, ESTATE OF MARIE

TOGGERY, ESTATE OF MATTHEW TINEJERO TOGGERY, are informed and believe and

thereupon allege as follows:

**PARTIES**

1.       Plaintiffs, WALTER J. ROSALES, and KAREN TOGGERY, are Native

American residents of San Diego County of one-half or more degree of California Indian blood,

are enrolled members and lawfully elected officers of the Plaintiff, JAMUL INDIAN VILLAGE

(hereinafter VILLAGE), and duly authorized to file this action on behalf of the VILLAGE,

which is a tribal governmental entity of Kumeyaay Indians, recognized by the United States'

Congress, governed by a Constitution adopted on May 9, 1981, pursuant to the Indian

Reorganization Act of 1934, 25 U.S.C. 461 et seq., and located in Jamul, California.

2.       Plaintiff, WALTER J. ROSALES, is also a lineal descendant and son of Native

American, Helen Cuero, the personal representative of his mother's estate, the Estate of Helen

Cuero, the personal representative of his son's estate, the Estate of Dean Rosales, and a lienal

descendant with ownership and control of their human remains and Native American cultural

items, and his un-named baby brother's human remains and Native American cultural items, as

set forth in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001-2.

3.       Plaintiff, KAREN TOGGERY, is also a lineal descendant and daughter of Native

American, Marie Toggery, and the personal representative of her mother's estate, the Estate of

Marie Toggery, as well as the mother of her son Matthew Tinejero Toggery, and the personal

representative of the Estate of Matthew Tinejero Toggery, and a lineal descendant with

ownership and control of their human remains and Native American cultural items, as set forth in

2

Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001-2.

4.      The Defendants are the UNITED STATES OF AMERICA, and its divisions,
including, but not limited to, the DEPARTMENT OF THE INTERIOR, through its Secretary
DIRK KEMPTHORNE,  the BUREAU OF INDIAN AFFAIRS, through its Assistant Secretary
for Indian Affairs, JAMES E. CASON.

5.      The true names and capacities, whether individual, corporate, associate or
otherwise, of DOE 1, is unknown to Plaintiffs at this time, who, therefore, sue said Defendant by
said fictitious name.  Plaintiffs are informed and believe, and based thereon allege, that DOE 1 is
responsible in some measure for the actions, events and happenings herein alleged, and was the
legal cause of injury and damages to the Plaintiffs as herein alleged, including, but not limited to
having contracted to grade Parcels 597-080-04, 597-080-05, 597-080-06, and thereby causing
irreparable damage to Native American human remains, along with the items associated with
their human remains, including, but not limited to grave goods, cultural items, associated
funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res.
Code 5097.9-5097.99, and 25 U.S.C. 3001, by knowingly and/or willfully mutilating,
disinterring, wantonly disturbing, and willfully removing them without authority of law.  When
the true names and capacities of said Defendants are ascertained by Plaintiffs, Plaintiffs will seek
leave to amend this complaint to insert their true names and capacities, or will serve said Doe
Defendants when they become known.

6.      The true names and capacities, whether individual, corporate, associate or
otherwise, of DOES 2-20, inclusive, are unknown to Plaintiffs at this time, who, therefore, sue
said Defendants by said fictitious names.  Plaintiffs are informed and believe, and based thereon

allege, that each of the fictitiously named Defendants is responsible in some measure for the actions, events and happenings herein alleged, and was the legal cause of injury and damages to the Plaintiffs as herein alleged. When the true names and capacities of said Defendants are ascertained by Plaintiffs, Plaintiffs will seek leave to amend this complaint to insert their true names and capacities, or will serve said Doe Defendants when they become known.

7.      At all times herein mentioned, Defendants, and each of them, were the agent, employee and/or joint venturer of their co-defendants, and were acting within the course and scope of such agency, employment and/or joint venture, with the permission and consent of their co-defendants and defendants. Furthermore, that at all times herein mentioned, Defendants, while acting as principals, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other herein alleged. Each reference to one defendant is also a reference to each and every other defendant. Plaintiffs are informed and believe and thereon allege that the defendants, and each of them, conspired with each other, to engage in acts in furtherance of a conspiracy to wrongfully and illegally violate the Plaintiffs' rights, rendering each of the defendants jointly and severally liable for all resulting and irreparable injury and damage to Plaintiffs.

## JURISDICTION

8.      Jurisdiction is alleged pursuant to 28 U.S.C. 1331, federal question, 28 U.S.C. 1337, commerce, 28 U.S.C. 1343, civil rights, 28 U.S.C. 1346, United States as a defendant, 28 U.S.C. 1361, mandamus, 28 U.S.C. 2201, declaratory judgments, 28 U.S.C. 1353, claims arising from allotments, 25 U.S.C. 345, actions arising from allotments, 25 U.S.C. 335, extension of provisions to allotments, 25 U.S.C. 348, trust allotments and contracts touching the same, 25

U.S.C. 465, Indian Reorganization Act land acquisitions, 25 U.S.C. 3009 and 3013, enforcement

of the Native American Graves Protection and Repatriation Act, 18 U.S.C. 1151, claims arising

in Indian country, 25 U.S.C. 81, contracts with Indians, and 5 U.S.C. 704, claims arising from

decisions of agencies of the U.S. under the Administrative Procedures Act.

## GENERAL ALLEGATIONS

9.     For more than 100 years, the Native American families of which the Plaintiffs are

the lineal descendants have inhumed, interred and deposited hundreds of their deceased family

members' human remains, and items associated with their human remains, including, but not

limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of

cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on

three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-

080-04, 597-080-05, and 597-080-06.

10.     The individual Plaintiffs have personal knowledge of at least 20 Native

Americans whose human remains, and items associated with their human remains, including, but

not limited to grave goods, cultural items, associated funerary objects, sacred objects, and

objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C.

3001, have been interred and deposited on three parcels of land, originally known as 597-080-01

and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

11.     On September 26, 1912, J.D. Speckel's Coronado Beach Company deeded 2.21

acres of land in Jamul, California, to the Roman Catholic Bishop of Monterey and Los Angeles,

a corporate in sole of the State of California, "to be used for the purposes of an Indian graveyard

and approach thereto," as set forth in Exhibits A and B hereto, and now known as parcels 597-

5

080-05 and 597-080-06.  In 1912, Father LaPointe and the Roman Catholic church erected a chapel at the cemetery, and since 1956 the diocese of St. Pius Xavier has maintained the chapel, on the parcel now known as 597-080-05, for the purpose of ministering at the Indian cemetery.

12.     From their birth, the Plaintiffs were the lineal descendants of the Native American families that have occupied and possessed that cemetery and the property contiguous to that Indian graveyard in Jamul, California, for more than 100 years, which private property was owned at various times since 1831 by Mexican Governor and Don, Pio Pico, U.S. General Henry S. Burton and his widow Maria Amparo Ruiz de Burton, John D. Spreckel's Coronado Beach Company, and later by the Lawrence and Donald Daley families, and the Catholic Diocese, as reflected in Exhibits A, B, C and D hereto.[1]

13.     During the latter part of the 1970's the Plaintiffs and their families negotiated a gift of that certain property of which they were in possession from the Daley families and the Catholic Diocese.  The Daley families agreed to convey title to the land then occupied by the Plaintiffs' families to the United States in trust for the explicit benefit of those half-blood Jamul Indians then occupying the property. The Daley families specifically agreed to this form of conveyance in order to provide a place for the Plaintiffs and their families to live in perpetuity, and to provide a place protected by the United States as a trustee to protect the living and the dead against all forms of alienation, trespass, desecration, mutilation, disinterment, and any other infringement.

---

[1] See also, United States v. Pio Pico (1870) 27 F.Cas. 537; Estate of Burton (1883) 63 Cal. 36; G.W.B.McDonald, Administrator v. Burton (1886) 68 Cal. 445; Henry H. Burton v. Maria A. Burton (1889) 79 Cal. 490; In re Burton's Estate (1892) 93 Cal. 459; and McDonald v. McCoy (1898) 121 Cal. 55.

14.     On December 27, 1978, Lawrence and Donald Daley, recorded a grant deed of parcel 597-080-01, consisting of approximately 4.66 acres, to "the United States of America in trust for such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate," as set forth in Exhibit D hereto.

15.     The Secretary of the Interior through his subordinates designated the individual Plaintiffs and the Native American families then possessing and residing on parcel 597-080-01, as the beneficial owners thereof, by locating said individual Indians on the parcel, providing for their needs, acquiescing in their continued presence on, and use of, the parcel for more than 28 years, in building houses for them on the parcel, and in providing them with services usually accorded to Indians living on such property, and further providing strong and uncontroverted evidence of their designation as the beneficial owners of parcel 597-080-01, as a matter of law, within the meaning of the grant deed, and as set forth in Coast Indian Community v. U.S. (Fed. Cl. 1977) 550 F.2d 639, United States v. Assiniboine Tribe (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974 at 668, 724, 747, and 1479.

16.     The December 27, 1978 grant deed was recorded nearly three years before the Constitution of the Jamul Indian Village was adopted, and three years before the Congress of the United States recognized the creation of the Jamul Indian Village, as an Indian tribe under the Indian Reorganization Act of 1934. This deed was accepted by the United States on December 21, 1978, pursuant to Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. 465.

17.     Parcel 597-080-01, now known as parcel 597-080-04, was not acquired for a

tribe, leaving only the possibility under 25 U.S.C. 465 that it was purchased and taken in trust for the individual Indian Plaintiffs and the Native American families then possessing and residing on the parcel, as set forth in <u>Coast Indian Community v. U.S.</u> (Fed. Cl. 1977) 550 F.2d 639, <u>United States v. Assiniboine Tribe</u> (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 <u>Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974</u> at 668, 724, 747, and 1479. The individual Plaintiffs thereby became beneficial owners of parcel 597-080-01, now known as 597-080-04, under Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. 465.

18.     On May 9, 1981, Plaintiff WALTER J. ROSALES, Chairperson of those Indians seeking to re-organize as the VILLAGE, certified on behalf of the election board, that sixteen of twenty three registered voters adopted the VILLAGE constitution. The United States acknowledged the adoption of the constitution on July 7, 1981, and the Congress of the United States recognized the VILLAGE by publication in the Federal Register on November 24, 1982. 47 Fed. Reg. 53130, 53132 (Nov. 24, 1982).

19.     When the VILLAGE was created on May 9, 1981, under the terms of the Indian Reorganization Act of 1934, it was a landless governmental entity. To date, the United States has not set aside or created an Indian reservation for the VILLAGE. The United States Department of Interior, Bureau of Indian Affairs, August 3, 2000 response to the Plaintiffs' Freedom of Information Act (FOIA) request, confirms that the "current trust parcel was accepted into trust in 1978 for Jamul Indians of ½ degree (4.66 acres)," and that there is "no record of the 1978 trust parcel being known as the Jamul Village," as reflected in Exhibit E hereto.

20.    <u>Coast Indian Community v. U.S.</u> (Fed. Cl. 1977) 550 F.2d 639, held on nearly identical facts, that the parcel in question, "was not acquired for a tribe, leaving only the possibility under the [Indian Reorganization] Act that it was purchased for individual Indians. The deed and proclamation say nothing to contradict this. Thus, the land was taken in trust for the individual Indians." 550 F2.d 639, 651, n. 32.  This is also consistent with Governor Arnold Schwarzenegger's Legal Affairs Secretary's December 20, 2005 letter to the Jamul Indian Village. Exhibit F hereto.

21.    Subsequently, the Catholic Diocese agreed to deed a portion of the Indian Cemetery to the VILLAGE for the purpose of maintaining the road and utilities to the remainder of the Indian cemetery, as required by, and provided in, the original Coronado Beach Company deed to the Catholic Diocese. On July 27, 1982, the Roman Catholic Bishop of San Diego, successor to the Roman Catholic Bishop of Monterey and Los Angeles, a corporation sole, recorded a grant deed of a portion of parcel 597-080-02, now known as 597-080-05, consisting of approximately 1.372 acres, to "the United States of America in trust for the Jamul Indian Village," as set forth in Exhibit G hereto.  Excepted therefrom was that portion of the Coronado Beach Company land grant, now known as parcel 597-080-06, consisting of approximately .838 acres where some of the Native American human remains were interred, to which the Catholic Diocese retains title. The Catholic Diocese also explicitly reserved "to [itself and its] successors or assigns an easement for (1) utility service lines and (2) ingress and egress over the existing well-traveled road," which extends the entire length of the north edge of the 1.372 acres, and which the San Diego County tax assessor's maps continue to describe as "the Indian cemetery," as set forth in  Exhibit H hereto.

22.    By virtue of these afore-described acts, a Native American sanctified cemetery, place of worship, religious and ceremonial site, and sacred shrine, as defined by Cal. Pub. Res. Code 5097.9, have been located on the parcels now known as 597-080-04, 597-080-05, and 597-080-06.

23.    Plaintiff Walter J. Rosales was personally present when his un-named younger brother's human remains, his mother, Helen Cuero's human remains, and his son, Dean Rosales' human remains were inhumed, interred, and deposited, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on what are now known as Parcels 597-080-04 and 597-080-06.

24.    Plaintiff Karen Toggery was personally present when her mother, Marie Toggery's human remains and her son, Matthew Tinejero Toggery's human remains, were inhumed, interred and deposited, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on what are now known as Parcels 597-080-04 and 597-080-06.

25.    On or about December 10, 2005, all residents of Parcels 597-080-04 and 597-080-05, and 597-080-06, except Walter Rosales, Karen Toggery and Vivian Flores, abandoned their residences on the Parcels, and have been living continuously in other locations in San Diego County.

26.    During 2006, Plaintiffs have repeatedly put the Defendants and a faction of

individuals, many of whom are not lawful members of the Jamul Indian Village, who have contracted with an unidentified grading contractor to unlawfully build a gambling casino on the Plaintiffs' parcel, now known as 597-080-04, on written notice of Plaintiffs' beneficial ownership and control, as lineal descendants, of their deceased Native American family members' human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that for more than 100 years have been inhumed, interred and deposited on these three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

27.     Despite such written notice from the Plaintiffs, a Notice of Intent Associated with Construction Activity has been prepared for the California State Water Resources Control Board and executed on behalf of a general contractor, known as McCarthy Building Companies, Inc., indicating that an unidentified grading contractor will begin grading during January 2007, on 7.2 acres of an 8.9 acre construction site for a 14 story gambling casino and hotel, among parcels now known as 597-080-04, 597-080-05 and 597-080-06.

28.     No permit required by Title 16 U.S.C. 470cc has been posted by any federal land manager on the property for anyone to grade or excavate parcels now known as 597-080-04, 597-080-05 and 597-080-06. Nor can any such permit be granted by any federal land manager under 16 U.S.C. 470cc, without the consent of the Indian owning or having jurisdiction over such lands, which consent the Plaintiffs, who are the beneficial landowners, have not granted.

29.    Nor has the San Diego County coroner been notified by any grading contractor of the intent to excavate and/or disturb human remains or the site of any nearby area reasonably suspected to overlie adjacent human remains, as required by Cal. Health & Safety Code 7050.5; nor has the Native American Heritage Commission been notified, until now, of the existence of Native American human remains and associated Native American artifacts, grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on said parcels, as required by Cal. Health & Safety Code 7050.5.

30.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause irreparable damage to the Plaintiffs' Native American human remains, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, by knowingly and/or willfully mutilating, disinterring, wantonly disturbing, and willfully removing them without authority of law. Knowingly mutilating, disinterring, wantonly disturbing, and willfully removing such human remains without authority of law is a crime, under Cal. Health & Safety Code 7050.5, and any person willfully mutilating or disinterring any remains known to be human without authority of law is guilty of a felony, under Cal. Health & Safety Code 7052, as is anyone obtaining or possessing, or who removes with malice or wantonness, and without authority of law, any Native American artifacts or human remains from a Native American grave or cairn, pursuant to Cal. Pub. Res. Code 5097.99.

12

31.     Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will also cause irreparable damage to, and interfere with, the Plaintiffs' free expression and exercise of Native American religion as provided in the United States Constitution and the California Constitution, and shall cause severe and irreparable damage to the Plaintiffs' Native American sanctified cemetery, place of worship, religious or ceremonial site, and sacred shrines located on said parcels.

32.     Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause the Plaintiffs severe personal, physical and bodily injury, including severe emotional distress, all in excess of the jurisdictional limit of this court, subject to proof at trial. Such acts will also unduly interfere with the Plaintiffs' civil rights to due process and equal protection of the laws. Plaintiffs will be greatly and irreparably damaged by reason of Defendants' infringement and violation of these civil rights, and unless Defendants are enjoined by this court, said acts will further violate Plaintiffs' civil rights, and further irreparably harm the Plaintiffs.

33.     To prevent such wrongful conduct of the defendants as herein alleged, Plaintiffs are entitled to a temporary, preliminary and permanent injunction to prevent great and irreparable injury resulting from the infringement and violation of these personal and civil rights, from the likelihood that damages cannot properly compensate Plaintiffs for such irreparable personal harm, and that Defendants will be unable to respond in damages, and from the difficulty or impossibility to ascertain the exact amount of personal bodily injury and property damage Plaintiffs have sustained, and will in the future sustain. These ongoing and continuing injuries sustained by Plaintiffs cannot be fully compensated in damages and Plaintiffs are without an adequate remedy at law without the imposition of the requested equitable injunctive relief.

## FIRST CAUSE OF ACTION

### (For Declaratory and Injunctive Relief against all Defendants)

34.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 34, inclusive, of this complaint as though fully set forth herein.

35.     Cal. Pub. Res. Code 5097.9 provides that no public agency, and no private party using or occupying public property, or operating on public property, under a public license, permit, grant, lease, or contract made on or after July 1, 1977, shall in any manner whatsoever interfere with the free expression or exercise of Native American religion as provided in the United States Constitution and the California Constitution; nor shall any such agency or party cause severe or irreparable damage to any Native American sanctified cemetery, place of worship, religious or ceremonial site, or sacred shrine located on public property, where, as here, there is no clear and convincing showing that the public interest and necessity so require.

36.     The personal rights of the Plaintiffs, as the beneficial owners of parcels 597-080-04, 597-080-05, and 597-080-06, and the lineal descendants of their Native American ancestors, cannot be adequately protected without enjoining the United States, as trustee for their beneficial interest, to prevent grading on these parcels, in order to maintain the Plaintiffs' preferences that the Native American human remains and associated cultural items remain "in place," as set forth in Cal. Pub. Res. Code 5097.98 and 25 U.S.C. 3001-2, including but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, which have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05, and 597-080-06 over the last 100 years.

14

37.     If the United States, and its agencies, are not enjoined from allowing grading on these parcels, the Plaintiffs will continue to suffer severe and irreparable personal injury, physical and bodily injury, including severe emotional distress from the published intention of the Doe Defendant grading contractors, who have not yet been publicly identified, to knowingly and/or wilfully mutilate, disinter, wantonly disturb, willfully remove and otherwise excavate, disturb and cause severe and irreparable damage to the Plaintiffs' ancestors human remains, along with the items associated with their human remains, including but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001.

38.     Cal. Pub. Res. Code 5097.97 provides that in the event that any Native American individual, such as the individual Plaintiffs, advises the California Native American Heritage Commission that a proposed action by a public agency may cause severe or irreparable damage to a Native American sanctified cemetery, place of worship, religious or ceremonial site, or sacred shrine located on public property, or may bar appropriate access thereto by Native Americans, and the proposed action would result in such damage or interference, and the public agency fails to accept the mitigation measures recommended, an action is further authorized by Cal. Pub. Res. Code 5097.94 to prevent severe and irreparable damage to, and to assure appropriate access for Native Americans to, the Native American sanctified cemetery, place of worship, religious or ceremonial site, or sacred shrine located on public property.

39.     Cal. Pub. Res. Code 5097.94 further provides that where, as here, severe and irreparable damage will occur, appropriate access will be denied, appropriate mitigation measures are not available, and there is no clear and convincing evidence that the public interest

and necessity require otherwise, the court shall issue an injunction, to prevent severe and irreparable damage to, and to assure appropriate access for Native Americans to, the Native American sanctified cemetery, place of worship, religious or ceremonial site, or sacred shrine located on public property.  The California legislature specifically provided, in enacting the 1982 amendments to Cal. Pub. Res. Code 5097.94, that: "The purpose of the act is:  To provide protection to Native American human burials and skeletal remains from vandalism and inadvertent destruction."

40.     Similarly, Cal. Pub. Res. Code 5097.98, as amended September 30, 2006, provides that upon the discovery of Native American human remains, which may be an inhumation or cremation, and in any state of decomposition or skeletal completeness, the landowner shall ensure that the immediate vicinity, according to generally accepted cultural or archaeological standards or practices where the Native American human remains are located, is not damaged or disturbed by further development activity, so long as the lineal descendants' preferences are to preserve the Native American human remains and associated items in place, and that any items associated with the human remains that are placed or buried with the Native American human remains are to be treated in the same manner as the remains.

41.     Plaintiffs are the beneficial landowners and the lineal descendants' with ownership and control of their predecessors' human remains and Native American and associated cultural items, as set forth in Cal. Pub. Res. Code 5097.98 and 25 U.S.C. 3001-2, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99,

and 25 U.S.C. 3001, which have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06 over the last 100 years. Plaintiffs' preferences are to preserve the Native American human remains and associated cultural items in place, as set forth in Cal. Pub. Res. Code 5097.98 and 25 U.S.C. 3001-2, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001.

42.    Therefore, since the individual Plaintiffs, lineal descendants of the Native Americans whose human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06 over the last 100 years, seek to preserve these Native American human remains and associated items in place, the court is required to issue an injunction to prevent their mutilation, disinterment, removal, excavation, disturbance and severe and irreparable damage.

43.    An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights, duties and obligations in that Plaintiffs contend that Defendants are liable to Plaintiffs for the statutory, contractual, and tortious deprivations of their civil rights alleged herein, and defendants deny such liability to Plaintiffs.

44.    Plaintiffs desire a judicial determination of the respective rights of Plaintiffs and Defendants.

45.    Such a declaration is necessary and appropriate at this time so that the parties may

ascertain their rights and duties with respect to each other.

46.    Plaintiffs have been greatly and irreparably damaged by reason of said Defendants' statutory, contractual, and tortious deprivations of Plaintiffs' personal and civil rights alleged herein, and unless Defendants are enjoined by this court, they will continue the violation of Plaintiffs' rights further irreparably harming the Plaintiffs.

47.    As a result of the wrongful conduct of said defendants as herein alleged, Plaintiffs are entitled to a temporary, preliminary and permanent injunction to prevent great and irreparable injury resulting from the infringement and violation of their personal and civil rights, from the likelihood that Defendants will be unable to respond in damages, and from the difficulty or impossibility to ascertain the exact amount of personal bodily injury and damage Plaintiffs have, and will in the future, sustain. These ongoing and continuing injuries sustained by Plaintiffs cannot be fully compensated in damages and Plaintiffs are without an adequate remedy at law without the imposition of the requested equitable injunctive relief.

## SECOND CAUSE OF ACTION

### (For Declaratory and Injunctive Relief against all Defendants)

48.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 49, inclusive, of this complaint as though fully set forth herein.

49.    On December 27, 1978, Lawrence and Donald Daley, recorded a grant deed of parcel 597-080-01, consisting of approximately 4.66 acres, to "the United States of America in trust for such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate," as set forth in Exhibit D hereto.

50.    The Secretary of the Interior through his subordinates designated the individual

Plaintiffs and the Native American families then possessing and residing on parcel 597-080-01, as the beneficial owners thereof, by locating said individual Indians on the parcel, providing for their needs, acquiescing in their continued presence on, and use of, the parcel for more than 28 years, in building houses for them on the parcel, and in providing them with services usually accorded to Indians living on such property, and further providing strong and uncontroverted evidence of their designation as the beneficial owners of parcel 597-080-01, as a matter of law, within the meaning of the grant deed, and as set forth in <u>Coast Indian Community v. U.S.</u> (Fed. Cl. 1977) 550 F.2d 639, <u>United States v. Assiniboine Tribe</u> (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 <u>Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974</u> at 668, 724, 747, and 1479.

51.    Parcel 597-080-01, now known as parcel 597-080-04, was not acquired for a tribe, leaving only the possibility under 25 U.S.C. 465 that it was purchased and taken in trust for the individual Indian Plaintiffs and the Native American families then possessing and residing on the parcel, as set forth in <u>Coast Indian Community v. U.S.</u> (Fed. Cl. 1977) 550 F.2d 639, <u>United States v. Assiniboine Tribe</u> (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 <u>Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974</u> at 668, 724, 747, and 1479.  The individual Plaintiffs thereby became beneficial owners of parcel 597-080-01, now known as 597-080-04, under Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. 465.

52.    On or about December 10, 2005, all residents of Parcels 597-080-04 and 597-080-05, and 597-080-06, except Walter Rosales, Karen Toggery and Vivian Flores, abandoned their residences on the Parcels, and have been living continuously in other locations in San Diego

County.

53.     During 2006, Plaintiffs have repeatedly put the Defendants and a faction of individuals, many of whom are not lawful members of the Jamul Indian Village, who have contracted with an unidentified grading contractor to unlawfully build a gambling casino on the Plaintiffs' parcel, now known as 597-080-04, on written notice of Plaintiffs' ownership and control of the Parcel, and that Plaintiffs have not granted anyone permission for grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities on parcel 597-080-04. Defendants are also on written notice that Plaintiffs have not granted anyone permission to mutilate, disinter, remove, excavate or otherwise disturb in any way, the Plaintiffs' ancestors human remains, along with the items associated with their human remains, including but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001.

.54.     Despite such written notice from the Plaintiffs, a Notice of Intent Associated with Construction Activity has been prepared for the California State Water Resources Control Board and executed on behalf of a general contractor, known as McCarthy Building Companies, Inc., indicating that an unidentified grading contractor will begin grading during January 2007, on 7.2 acres of an 8.9 acre construction site for a 14 story gambling casino and hotel, among parcels now known as 597-080-04, 597-080-05 and 597-080-06.

55.     Grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities on the parcels now known as 597-080-04, 597-080-05 and 597-

20

080-06 will cause irreparable damage to the Plaintiffs' beneficial ownership interest in 597-080-04.

56.     Grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities on the  parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause the Plaintiffs severe personal, physical and bodily injury, including severe emotional distress, all in excess of the jurisdictional limit of this court, subject to proof at trial. Such acts will also unduly interfere with the Plaintiffs' civil rights to due process and equal protection of the laws. Plaintiffs will be greatly and irreparably damaged by reason of Defendants' infringement and violation of these property rights, and unless Defendants are enjoined by this court, said acts will further violate Plaintiffs' rights, and further irreparably harm the Plaintiffs.

57.     The property rights of the Plaintiffs, as the beneficial owners of parcels 597-080-04, 597-080-05, and 597-080-06, cannot be adequately protected without enjoining the United States, as trustee for their beneficial interest, to prevent grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities, and other forms of trespass on these parcels.

58.     If the United States, and its agencies, are not enjoined from allowing grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities on these parcels, the Plaintiffs will continue to suffer severe and irreparable injury to their property, physical and bodily injury, including severe emotional distress, from the published intention of the Doe Defendant grading contractors, who have not yet been publicly identified, to knowingly and/or wilfully grade, disturb, excavate, and otherwise cause severe and

21

irreparable damage to the Plaintiffs' property.

59.     To prevent such wrongful conduct of the defendants as herein alleged, Plaintiffs are entitled to a temporary, preliminary and permanent injunction to prevent great and irreparable injury resulting from the infringement and violation of their property rights, from the likelihood that damages cannot properly compensate Plaintiffs for such irreparable personal harm, and that Defendants will be unable to respond in damages, and from the difficulty or impossibility to ascertain the exact amount of personal bodily injury and property damage Plaintiffs have sustained, and will in the future sustain. These ongoing and continuing injuries sustained by Plaintiffs cannot be fully compensated in damages and Plaintiffs are without an adequate remedy at law without the imposition of the requested equitable injunctive relief.

60.     An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights, duties and obligations in that Plaintiffs contend that Defendants are liable to Plaintiffs for the statutory, contractual, and tortious deprivations of their property rights alleged herein, and defendants deny such liability to Plaintiffs.

61.     Plaintiffs desire a judicial determination of the respective rights of Plaintiffs and Defendants.

62.     Such a declaration is necessary and appropriate at this time so that the parties may ascertain their rights and duties with respect to each other.

63.     Plaintiffs have been greatly and irreparably damaged by reason of said Defendants' statutory, contractual, and tortious deprivations of Plaintiffs' property rights alleged herein, and unless Defendants are enjoined by this court, they will continue the violation of

22

Plaintiffs' rights further irreparably harming the Plaintiffs.

64.     As a result of the wrongful conduct of said defendants as herein alleged, Plaintiffs are entitled to a temporary, preliminary and permanent injunction to prevent great and irreparable injury resulting from the infringement and violation of their personal and civil rights, from the likelihood that Defendants will be unable to respond in damages, and from the difficulty or impossibility to ascertain the exact amount of personal bodily injury and damage Plaintiffs have, and will in the future, sustain. These ongoing and continuing injuries sustained by Plaintiffs cannot be fully compensated in damages and Plaintiffs are without an adequate remedy at law without the imposition of the requested equitable injunctive relief.

**WHEREFORE** Plaintiffs pray for judgment as follows:

1.     That the Defendants, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be temporarily, preliminarily and permanently enjoined from, and enjoined from allowing, grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, and otherwise mutilating, disinterring, removing, excavating, and disturbing in any way, any Native Americans human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06;

2.     That the United States, and its agencies, including, but not limited to, the

23

Department of Interior and Bureau of Indian Affairs, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be temporarily, preliminarily and permanently enjoined from failing to preserve "in place" any Native American human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, from mutilation, disinterment, removal, excavation, and disturbance, as required by Cal. Pub. Res. Code sections 5097.94, 5097.95, and 5097.98;

3.      That the court declare that Parcel 597-080-04 remains in trust by the United States for the individual Plaintiffs, as the designated beneficiaries of the grant deed therefore recorded in San Diego County, California, on December 27, 1978.

4.      That the United States, and its agencies, including, but not limited to, the Department of Interior and Bureau of Indian Affairs, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be temporarily, preliminarily and permanently enjoined from approving or allowing any activities on Parcel 597-080-04 that have not been agreed upon, in writing, by the Plaintiffs;

5.      That the court declare that the Doe Defendants are liable for money damages for any mutilation, disinterment, removal, excavation, and disturbance of any Native Americans human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural

patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have

been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and

597-080-06;

6.     That Plaintiffs be awarded their reasonable attorneys' fees, costs, and expenses in

this action; and

7.     That Plaintiffs be awarded such other and further relief as this court may deem

just and proper.

## JURY DEMAND

Plaintiffs hereby demand trial by jury.

Dated: January 19, 2007          **BOIES, SCHILLER & FLEXNER LLP**

 /s/William A. Isaacson_____
William A. Isaacson, Esq., D.C. Bar No. 414788
5301 Wisconsin Avenue, N.W. Ste 800
Washington, District of Columbia 20015
Tel (202) 237-2727
Fax (202_237-6131

**WEBB & CAREY**

 /s/Patrrick D. Webb_____
Patrick D. Webb for Plaintiffs
WALTER ROSALES, KAREN TOGGERY,
JAMUL INDIAN VILLAGE, ESTATE OF HELEN
CUERO, ESTATE OF DEAN ROSALES,
ESTATE OF MARIE TOGGERY, ESTATE OF
MATTHEW TOGGERY

25

# EXHIBIT A

Photographic by T. FADER Deputy Recorder

State of California
County of San Diego

... ... ... before me ... a Notary Public in and for said County and State ... personally ... ... ... ... ... described in and who executed the within instrument, as the attorney in fact of Charles B. Goell, and acknowledged to me that he subscribed the name of Charles B. Goell, thereto as principal and his own name as attorney in fact.

In Witness Whereof, I have hereunto set my hand and affixed my official seal, the day and year in this certificate first above written.

Livia B. Watkins
Notary Public in and for the County of
San Diego, State of California

Recorded at request of R. C. Sparks (S.D. Water) Sep 26, 1912 at 55 min. 6 past 10 o'clock A.M.

John H. Ferry, County Recorder
COMPARED Harold T. Angier
By W. Howard Leo, Deputy Recorder

Coronado Beach Company, a corporation of the City of San Diego, County of San Diego, State of California,
For and in consideration of the sum of One Dollar, Does Hereby Grant to the Roman Catholic Bishop of Monterey and Los Angeles, a corporation sole, of the State of California to be used for the purpose of an Indian graveyard and approved thereof, all that Real Property situated in the County of San Diego, State of California, bounded and described as follows:

Commencing at a point on the north boundary line of the South Carmel, distant 648.5 feet east from the Rancho Carmel corner No. 16; thence east along said north boundary line 388.0 feet to a point on the westerly line of County road; thence South 48° 15' east along said westerly line of County Road 262 feet to a point; thence west 578.7 feet to a point; thence south 58.1 feet to a point; thence south 86° 45' west 744.2 feet to a point; thence south 48° 15' west 58.5 feet to a point; thence south 577 feet to a point; thence west 64.2 feet to a point; thence north 231.0 feet to the point of beginning; containing 2.21 acres.

To have and to hold the above granted and described premises unto the said Grantee, his successors and assigns forever for the purpose above specified.

In Witness Whereof, said corporation has caused this deed to be signed by its Vice President and Secretary and its corporate seal to be affixed hereto, this 11th day of July 1912.
Coronado Beach Company

State of California
County of San Diego

On the 27th day of July in the year one thousand nine hundred and twelve before me, Fred E. Whitehead, a Notary Public in and for said county personally appeared W. Clayton known to me to be the Vice President, and Harry S. Price known to me to be the Secretary of the Corporation that executed the within instrument known to me to be the persons who executed the within instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the same.

Fred E. Whitehead
Notary Public in and for the County of San Diego, State of California.

Recorded at Request of Father C. Lapointe, Sep 26, 1912, at 30 Min Past 10 o'clock A. M.

John H. Leroy, County Recorder
By Harold Angier, Deputy Recorder

This Indenture made this 27th day of August 1912, Between Chase & Ludington, a Corporation duly organized, existing and doing business under and by virtue of the laws of the State of California and having its principal place of business at the City of San Diego, County of San Diego, State of California, the party of the first part, and L. May Taber party of the second part Witnesseth:—

That said party of the first part, pursuant to a resolution duly passed at a meeting of its Board of Directors held at their office on August 27th 1912, and of record in Minute Book No. 1 at page 59 et seq, for and in consideration of Ten ($10.00) Dollars Gold Coin of the United States of America to it in hand paid by said party of the second part, the receipt whereof is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto the said party of the second part, her heirs, and assigns forever, subject however to the County and State taxes of 1912 and the covenants, and conditions hereinafter named, all that certain real property situate in the City of San Diego, County of San Diego, State of California, bounded and described as follows, to wit:

Lots Nine (9) and, Twelve Block Sixty three (63) of La Jolla Park according to map thereof No. 352, filed in the office of the

EXHIBIT B

# L.S. NO. 430

MAP OF SURVEY OF

# RANCHO JAMUL

SAN DIEGO COUNTY - CALIFORNIA

Surveyed May, 1931      Scale - 1 inch = 1000 feet

3 SHEETS — SHEET 1

Total Area - 8886.77 Acres

Meridian determined by solar observation

Surveyed for G.R.Daley, San Diego, California.

Survey by Hugo Kuchmisted, Licensed Surveyor.

I hereby certify that I am a Licensed Surveyor, and that this
survey was made under my supervision as shown on this
map, and that the monuments were set as shown hereon.

*Hugo Kuchmisted*
Licensed Surveyor.

Approved this 28 day of May, 1931

*James Newey Johnson*
County Assessor of San Diego County,
State of California.

No. 29628
Filed at the request of Hugo Kuchmisted
at 03 minutes past 11:00 o'clock A.M. this 1 st day
of June, 1931

O. M. Swope
County Recorder of San Diego County, California.

By *E. Hanson*
Deputy

Note: The concrete monuments set are 12"x6"x6" with copper
center, and are marked "H.K."

Trees
S 25°10'E 26.6
S 61°20'W 39.6

Found 1 iron pipe
in stone md

N 0°55'E      5796.0



# EXHIBIT C

Frank Lachappa, upper right, a Barona Indian, inspects well tended graves at  Indian Catholic Cemetery in Jamul. One grave is that of veteran Daniel Aldamas,  lower left. Lower right is home of Indian family that has lived in area for years.

## Rabbi Attracts Youth With Rock Service

### By DIANA DIMARCO

PITTSBURGH (AP) — Rabbi Fredric S. Pomerantz is a round little man with longish red hair and a throbbing drive who looks more like a musician than a rabbi. He's both.

He worked his way through college playing drums in a band.

Now, at 31, he is associate rabbi of one of the country's largest Jewish congregations, the 1,800-family Temple Rodef Shalom. And he has set out on a course heretofore generally unheard of in Judaism.

It involved setting the traditional Hebrew prayer service to a rock beat, and organizing two coffeehouses for young people — gentile as well as Jewish.

### AIDS IN SHARING

That approach, common in Christian youth activities but still rare in Jewish worship, helps young people share mutual interests, Rabbi Pomerantz says, and adds: "It's the sharing that's important, the entertainment is secondary."

A restless, energetic man, he also is Jewish chaplain at Western Psychiatric Hospital, rabbinic advisor to the Pennsylvania Federation of Temple Youth, and originator of a free, informal education program that opened for high school students two years ago. It now also includes college students and adults.

The two coffeehouses, "The Back Door" for university students and "The Exit" for high schoolers, are open every weekend to all comers.

### NEEDS CITED

"Kids need to feel part of a group and they also need someone to show them they have responsibilities," he says.

The title of the "rock" service, Sim Shalom, means "grant us peace," and that is its basic message, says Rabbi Pomerantz, who did the up-tempo arrangement for brass, guitar, organ and drums.

"You've got to listen to the ideas and questions of the prayers," he says. "Yet if it's the beat and the music that draws you into the meaning, there's nothing wrong with that.

## JAMUL INDIAN FAMILIES

# Cemetery Houses The Living

### By ERNESTO FLORES

In 1912, when San Diego was still a part of the Roman Catholic Diocese of Monterey, about three acres of hilly land in Jamul was turned over to the church by a realty company for use as a cemetery for Indians.

To fulfill that stipulation, the church for years has buried hundreds of Indians in the cemetery. It also erected a small chapel where services for the dead are held.

That the church regards the property as simply a place of burial was confirmed by administrators of the San Diego Roman Catholic Diocese. "As far as we are concerned the land is a cemetery and it will remain that way," they said.

### SOME LIVE THERE

Actually, only a small portion of the land has been used as a burial ground. The church, for years, has allowed Indians to live on the open areas. Today about seven families make their homes on the cemetery land.

The families, who come from various tribes in the county, live under extremely poor conditions. Having no plumbing, they get their supply from a lone well pump at the bottom of a dry wash.

They have no electricity, no sewage system and no transportation except one or two dilapidated autos. Their houses are wooden shacks surrounded by piles of junk and garbage.

In spite of these problems, however, many of them express a desire to live and die there as their parents and grandparents before them.

## Younger Upholds Tax For Cable TV

SAN FRANCISCO (AP) — Atty. Gen. Evelle Young has ruled that California's 332 general law cities can build and run their own cable television systems and let citizens to fund the operation.

In the opinion requested by Senate President pro tem James Mills of San Diego, Younger said such a system is

Church authorities are not particularly happy with the activities of various groups taking an interest in the Indians at Jamul. Because of such activities, publicity has been given the plight of the Indians.

A church spokesman said he hopes the publicity about the Indians living in the cemetery will not reflect adversely on the church. He added, "we have tried our best to help them. They should do something to help themselves, too."

Mrs. Isabel Rosales, 77, is the oldest resident of the place. She said she has lived there all her life and she remembers the time when there were more Indians living there.

"Many of them are buried in that cemetery," she said pointing work-gnarled fingers to the rows of wooden crosses on a hill about 500 yards away. "Others left and didn't come back."

Mrs. Rosales' three surviving children all are married and live in other areas of the county. She lives alone. She said she has no place to go and intends to end her days there.

### WON'T MOVE

This thinking is shared by Mrs. Marie Toggery, 50, whose husband died recently. She said her three children may not think as she has, but as far as she is concerned, she is not going to live anywhere else.

Mrs. Toggery's son, Jessie, 19, wants to be a lawyer. His sister, Connie, 18, studies at Grossmont Continuation School and hopes to go to college next year. The other daughter, Karen, 17, is a student at Granite Hills high school but wants to drop out and work.

Having experienced a marginal existence all their lives, the Toggerys seem to have developed an immunity to suffering. They could even laugh at the thought of death.

Mrs. Toggery was seriously ill for some time.

"I told my mother that if she dies, we just have to bury her in the cemetery," said Jessie jocularly. Mrs. Toggery joined her daughter in laughter.

### NO EVICTION

The family's only means of income is a Veterans Administration benefit for the late Mr. Toggery, who was a veteran. Their monthly check formerly was $281, but this has been reduced to $287 for no apparent reason, said Mrs. Toggery.

With this amount they buy food, clothing and other necessities and send the children to school.

The Indians at Jamul have no consolation, however. According to church officials, the diocese has no plan to evict the families.

"Although technically they have no business being there, we can't remove them just like that," a diocesan spokesman said.

Nevertheless, officials have a few complaints. Although the San Diego Gas & Electric Co. has agreed to extend electric lines to that part of Jamul, the residents, except for one family, refuse to spend money to bring power to their homes.

### GROUPS VISIT THEM

The diocese built a small chapel on a slope of a hill. The Rev. J. Walshe Murray, pastor of St. Pius X Church in Jamul under whose jurisdiction the cemetery falls, said he officiates in most of the funeral services. The church also erected a community house which the fami-

lies use for meetings.

For years the Indian families have been left largely to their own devices. Lately, however, some concerned groups have visited them and asked about their welfare.

One such group is the Grassroot Indian Association which has the objective of "improving the living conditions of Indians in the county by peaceful and legal means."

Frank Lachappa, 22, a Barona Indian from Poway and the association's vice chairman, said his group has met in Jamul twice.

"We are a new group and our first task is to find out the condition of living in various Indian communities. That's why we come here as often as we can," he said.

Earl Ridenhour, himself a part Indian from Oklahoma and a member of the association, said the conditions in which most local Indians live "are so deplorable, we just have to do something to help them."

"a public work" and could be run as a public utility.

The state's 75 charter cities, including most major cities, were not covered by the ruling. Most cable television systems built to date have been private ventures.

Revenues for the system could come from general obligation bonds and available tax money, Younger said.



**FIRST CH... RELIGIOUS...**

3795 GEORGIA STRE... CHET CASTE...

9:30 THE WEAKNESS... AND THE STREN...

11:00 GOD POWER, T... EQUALIZER

**THE EV... PRESBYTE...** of San ... HWY, 16...

Rev... WILLIAM B LIVINGSTON...

"HEATHE... HER HA...

ADULT CLASS 9:00 AM 10...
SUNDAY SCHOOL 9:00 AM...
Morning Worship 10:30...
Church Office 10:30 Mon...

IN: EL CAJON
CALVARY BAPTIST CHURCH
10:45 a.m. ...
Rev. DAVE MARSTELLER
1:00 P.M. — BROADCAST — KECR P.M.
90 LINCOLN

Saturday, August 7/1971

## RELIGION

# Child Worship Needs Stressed In New Book

WASHINGTON (UPI) — One of the most difficult problems parents, Sunday school teachers and pastors face is making the experience of worship meaningful and rewarding for children.

Adult worship is largely oriented and makes worshipers spectators rather than participants. All too often children's worship is little more than an abridged and simplified version of adult services.



## Rabbi Attracts Youth With Rock Service

### JAMUL INDIAN FAMILIES

# Cemetery Houses The Living

EXHIBIT D

Case 1:07-cv-00162-RMC    Document 1-2    Filed 01/19/2007    Page 11 of 26

RECORDING REQUESTED BY     258

AND WHEN RECORDED MAIL TO

Bureau of Indian Affairs
Southern California Agency
5750 Division Street, Suite 201
Riverside, California 92506

78-554597
FILE/PAGE NO.
BOOK 1978
RECORDED REQUEST OF
GRANTEE

Dec 27  1  49 PM '78

OFFICIAL RECORDS
RECORDER
SAN DIEGO COUNTY, CALIF.

SURVEY
MONUMENT
PRESERVATION
CERTIF. FEE
$10.00

$5.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TAX ROLL PARCEL NO. 597-080-01

# GRANT DEED

DOCUMENTARY TRANSFER TAX $ ___-0-___
COMPUTED ON FULL VALUE OF PROPERTY CONVEYED,
OR COMPUTED ON FULL VALUE LESS LIENS AND
ENCUMBRANCES REMAINING AT TIME OF SALE
Signature of Declarant or Agent determining tax. Firm Name

THIS INDENTURE, made the _____ day of _____ 19___

BETWEEN  Donald L. Daley and Lawrence A. Daley

the part ies of the first part,

and The United States of America in trust for such Jamul Indians of one-half degree
or more Indian blood as the Secretary of the Interior may designate
the part ies of the second part,

WITNESSETH: That the said part ies of the first part,

do _____ by these presents, GRANT
for a valuable consideration _____ unto the said parties of the second part,
and to their _____ heirs and assigns forever, all th.e.. certain lots, _____ or
parcel of land, situate, lying and being in the _____ County of
San Diego _____ and State of California _____ and bounded and particularly described
as follows, to-wit:  SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

ACCEPTANCE OF CONVEYANCE BY THE UNITED STATES IS TO BE ATTACHED
HERETO AS EXHIBIT "B" AND RECORDED WITH THIS DEED.
THIS CONVEYANCE IS MADE IN ACCORDANCE WITH SECTIONS 5 AND 19 OF
THE INDIAN REORGANIZATION ACT OF JUNE 18, 1934 (48 Stat. 985 and
988; 25 U.S.C. 465 and 479) AND MADE SUBJECT TO EASEMENTS AND
RIGHTS-OF-WAY OF RECORD IN FAVOR OF THE PUBLIC OR THIRD PARTIES.

TOGETHER with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and
reversions, remainder and remainders, rents, issues and profits thereof.

TO HAVE AND TO HOLD, all and singular the said premises, together with the appurtenances, unto the said part ies of the second part,
and to their _____ heirs and assigns forever.

IN WITNESS WHEREOF, the said part ies of the first part ha ve hereunto set their _____ hand
and seal s the day and year first above written.

X _Lawrence A. Daley_
X _Donald L. Daley_
Donald L. Daley and Lawrence A. Daley

STATE OF CALIFORNIA,
County of San Diego } ss.

On December 12, 1978 _____ before me, the undersigned, a Notary Public in and for said
State, personally appeared Lawrence A. Daley and Donald L. Daley

known to me to be the person s whose name s are subscribed to the within instrument and acknowledged that they
executed the same.
WITNESS my hand and official seal.

OFFICIAL SEAL
L. D. ARTHUR
NOTARY PUBLIC
PRINCIPAL OFFICE IN
SAN DIEGO COUNTY
My Commission Expires April 9, 1982

_L. D. Arthur_
Notary Public in and for said State.

Title Order No. _____     Escrow or Loan No. _____

MAIL TAX
STATEMENTS TO
NAME          ADDRESS          ZIP

78-554597

DEED - GRANT - Wolcotts Form 778
Rev. 5-70
This standard form covers most usual problems in the field indicated. Before you use, read and make changes proper to your transaction. Consult a lawyer if you doubt the form's fitness.

260

IN REPLY REFER TO



## UNITED STATES
### DEPARTMENT OF THE INTERIOR
#### BUREAU OF INDIAN AFFAIRS
Sacramento Area Office
2800 Cottage Way
Sacramento, California 95825

ACCEPTANCE OF CONVEYANCE

The United States of America, acting through the undersigned, an
authorized representative of the Secretary of the Interior, does
hereby accept the conveyance made by Donald L. Daley and Lawrence
A. Daley in that certain Grant Deed dated December 12, 1978.
Said Grant Deed, with this Acceptance of Conveyance attached, shall
be recorded in the Official Records of San Diego County,
California.

Date: __DEC 21 1978__                    _____
                                         ACTING Area Director

Pursuant to the authority delegated
by 230 DM 1, 10 BIAM 2 (39 F.R.
32166) and 10 BIAM 3.1 (34 F.R.
637).

State of California )
                    ) SS.
County of Sacramento)

On this _21st_ day of _December_, 1978, before me, the undersigned,
a Notary Public in and for said State, personally appeared _____
_____Charlie L. Trujillo Jr._____, known to me to be the person
whose name is subscribed to the within Acceptance of Conveyance and
acknowledged to me that he executed the same for the United States
of America.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this date.

EXHIBIT "B" TO DEED FROM
DONALD L. DALEY AND
LAWRENCE A. DALEY DATED
DECEMBER 12, 1978.                       _____

_____ before me, the undersigned, a Notary Public in and for the state

State, personally appeared _____Lawrence A. Daley and Donald L. Daley_____

known to me to be the person whose names are subscribed to this within instrument and acknowledged that _____they_____
executed the same.
WITNESS my hand and official seal.                    _____
                                                      Notary Public in and for said State.

My Commission Expires April 9, 1981

Title Order No. _____                    Escrow or Loan No. _____

MAIL TAX
STATEMENTS TO _____

# EXHIBIT E



**Carmen Facio**
05/09/00 11:34 AM

To: Nancy Pierskalla/DC/BIA/DOI@BIA

cc: George Skibine/DC/BIA/DOI@BIA

Subject: Re: Gaming in San Diego

I forwarded your inquiry down to the SCA Supt. I currently have nothing on .
We'll let you know.

For several years now, Jamul has been talking about getting the contiguous property - @ one point
for a casino, and then again, just for a parking lot.

The current trust parcel was accepted into trust in 1978 for Jamul Indians of 1/2 degree (4.66
acres). They've expanded their membership, but the constitution states they have jurisdiction over
the Jamul Indian Village. I have no record of the 1978 trust parcel being known as the Jamul
Village. There was also a small parcel accepted into trust in 1982 by the SCA Supt. for the Jamul
Indian Village (1.37 acre).

Cuyapaipe has a reservation land base that there is no legal access to. They have an off-reservation
piece that is leased to the So. Calif. Indian Health Council for 50 years. There's talk that they want
the Health Council to move to another location so that Cuyapaipe can use the off-reservation tract
for gaming. This tract is about 8.7 acres. An addition to this 8.7 acres was made in 1997 (1.43
acre) & its purpose was as the site of the Pinto Home for Girls and it's also under a 50-year lease.
Of course, there's talk about putting more land in trust for Cuyapaipe for relocation of the health
facility.

# EXHIBIT F



# OFFICE OF THE GOVERNOR

August 29, 2005

*Via Facsimile & U.S. Mail*

Mr. Leo Acebedo
Chairman, Jamul Indian Village
P.O. Box 612
Jamul, California 91935

Re:    Potential Compact Violation

Dear Chairman Acebedo:

Recent newspaper accounts indicate that the Jamul Indian Village is proposing to build a 30-story casino and hotel complex on approximately four acres of its roughly six acres of trust land in San Diego County. Because to date the Tribe has not provided the Governor's Office any concrete information regarding the details of this proposed project, we have been obliged to rely upon those newspaper accounts as well as our general knowledge of the Tribe's trust lands and the adjacent surroundings. Those accounts specifically raise troublesome questions about adequate provisions for fire protection, the assurance of appropriate water quality, and the Tribe's commitment to perform the required environmental analyses, as well as the Tribe's position on the use of fee lands for a portion of its Gaming Facility.

While we are mindful that some or all of the circumstances related by the news reports may be mistakenly reported, in the absence of contrary information from the Tribe we have no basis to doubt them. If those accounts are in fact true, we are concerned that the Tribe may be in material breach of its obligation to appropriately analyze, discuss and provide for mitigation of potential adverse off-trust land impacts for the project in conformity with the requirements of section 10.8.2 of its Tribal-State Class III Gaming Compact. It further appears that advancement of the Tribe's plans for construction and operation of the proposed Gaming Facility may additionally place the Tribe in material breach of the Compact for, among other things, failure to meet its duty to "conduct Class III gaming in a manner that does not endanger the public health,

GOVERNOR ARNOLD SCHWARZENEGGER • SACRAMENTO, CALIFORNIA 95814 • (916) 445-2841

Mr. Lee Acebedo
August 29, 2005
Page 2

safety, or welfare" (Compact, section 10.1); to operate a Gaming Facility only on its Indian lands (Compact, section 4.2); failure to comply with federal water quality standards applicable in California (Compact, section 10.2(b)); and to operate only those Gaming Devices authorized by the Compact (Compact section 4.0).

In order to provide the State with assurance that the Tribe's proposal will not materially breach its Compact obligations, we invite the Tribe, through an authorized representative, to contact the Governor's Office immediately to arrange a mutually agreeable time and place for the Tribe to provide the State with all pertinent details regarding its proposal. Should the Tribe choose not to accept this invitation to inform the State of its activities and provide assurances of its intent to comply with its Compact obligations, our office will be obliged to take further appropriate action under the Compact.

Please feel free to contact Peter Siggins or Stephanie Shimazu in the Legal Affairs Office at (916) 445-0873. We look forward to your timely response.

Sincerely,

PETER SIGGINS
Legal Affairs Secretary

# EXHIBIT G

TAX ROLL PARCEL NO.
+597-080-02  Code Area #79019

GRANT DEED

DOCUMENTARY TRANSFER TAX $  0

_William H. Ginson_
TAX SIGNATURE

I, The Roman Catholic Bishop of San Diego, hereby grant to
the United States of America in trust for the Jamul Indian Village
all that land situated in the County of San Diego, California,
more particularly described as follows:

All that portion of Rancho Jamul described in Deed to the
Roman Catholic Bishop of Monterey and Los Angeles recorded September
12, 1912 in Book 567, Page 332, in the Office of the County Recorder
of San Diego County, California; EXCEPTING THEREFROM a piece of of
land described as follows: Commencing at Rancho Jamul Corner No.
16; thence N. 88°42' E., 739.37 feet to the true point of beginning
as shown on Record of Survey Map No. 8138, filed December 2, 1976
in the Office of said County Recorder; thence S. 1°18' W., 111.77';
thence S. 87°55'38" W., 65.81'; thence S. 44°51'28" W., 88.60';
thence S. 1°19'25" W., 59.80'; thence N. 88°41'06" W., 83.66';
thence N. 1°24'08" E., 239.63'; thence N. 88°42' E., 210 feet to
the True Point of Beginning, containing 0.838 acre, more or less.
The parcel granted to the Jamul Indian Village contains 1.372 acres,
more or less.

The grantor reserves to himself and his successors or assigns
an easement for (1) utility service lines and (2) ingress and
egress over the existing well-traveled road, or over any road
that subsequently is built to replace the existing one.

IN WITNESS WHEREOF, The Roman Catholic Bishop of San Diego,
grantor, herein have hereunto affixed his name this _25th_ day of
_May_, 1982.

82-229256

RECORDED IN
OFFICIAL RECORDS
OF SAN DIEGO COUNTY, CA.

1982 JUL 27  AM 9 44

VERA L. LYLE
COUNTY RECORDER

ROMAN CATHOLIC BISHOP OF SAN DIEGO
& a corporation sole,

_[signature]_
Incumbent

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF SAN DIEGO  )

On this _25th_ day of _May_, 1982, before me _Ch. Quittow_,
a Notary Public in and for said County and State, personally
appeared LEO T. MAHER, known to me to the Roman Catholic Bishop of
San Diego and to be the Incumbent of the corporation sole that
executed the within instrument and acknowledged to me that said
corporation sole executed the name.

WITNESS my hand and official seal.

_[signature]_
Notary Public in and for said County
and State

OFFICIAL SEAL
C.H. QUITTARO
NOTARY PUBLIC-CALIFORNIA
PRINCIPAL OFFICE IN
SAN DIEGO COUNTY
My Commission Expires Aug. 27, 1984

ACCEPTANCE OF CONVEYANCE BY THE UNITED STATES IS TO BE ATTACHED HERETO
AS EXHIBIT "A" AND RECORDED WITH THIS DEED. THIS CONVEYANCE IS MADE IN
ACCORDANCE WITH SECTIONS 5 and 19 OF THE INDIAN REORGANIZATION ACT OF
JUNE 18, 1934 (48 Stat. 985 and 988; 25 U.S.C. 465 and 479).

NO. 229256

82-





TAX ROLL PARCEL NO.

54

IN REPLY REFER TO:

## UNITED STATES
### DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
SOUTHERN CALIFORNIA AGENCY
5750 DIVISION STREET, SUITE 201
RIVERSIDE, CALIFORNIA 92506-3286

ACCEPTANCE OF CONVEYANCE

The United States of America, acting through the undersigned, an authorized representative of the Secretary of the Interior, in accordance with Sections 5 and 19 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 985 and 988; 25 U.S.C. 465 and 479), does hereby accept the conveyance made by The Roman Catholic Bishop of San Diego in that certain Grant Deed dated May 25, 1982.

Said Grant Deed, with this Acceptance of Conveyance attached, shall be recorded in the Official Records of San Deigo, California.

Date: July 2, 1982

Acting Superintendent
Pursuant to the authority
delegated by 230 DM 1, 10 BIAM 2
(39 F.R. 32166) and 10 BIAM 3.1
(34 F.R. 637), and Sacramento
Area Office Redelegation Order I
(43 F.R. 30131).

STATE OF CALIFORNIA )
                     ) SS.
COUNTY OF RIVERSIDE )

On this 2nd day of July, 1982, before me, the undersigned, a Notary Public in and for said State, personally appeared Frank L. Haggerty, Jr., known to me to be the person whose name is subscribed to the within Acceptance of Conveyance and acknowledged to me that he executed the same for the United States of America.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this date.

Notary Public in and for said State

EXHIBIT "A" TO DEED FROM
THE ROMAN CATHOLIC BISHOP
OF SAN DIEGO DATED May 25,
1982.

Return to:

RECORDING REQUESTED BY

MAIL TAX STATEMENT TO:
(Please print name & address)

OFFICIAL SEAL
ARLENE J. LACY
NOTARY PUBLIC
RIVERSIDE CO., CALIF.
My commission expires 10-27-83

DE. DEPT. OF THE INTERIOR
5750 DIVISION ST., SUITE 201
RIVERSIDE                CA 92506

No. 229256

ACCEPTANCE OF CONVEYANCE BY THE UNITED STATES IS TO BE ATTACHED HERETO AS EXHIBIT "A" AND RECORDED WITH THIS DEED. THIS CONVEYANCE IS MADE IN ACCORDANCE WITH SECTIONS 5 and 19 OF THE INDIAN REORGANIZATION ACT OF JUNE 18, 1934 (48 Stat. 985 and 988; 25 U.S.C. 465 and 479).

EXHIBIT H



1" = 400'
N

7-13-93

CHANGES

| BLK | OLD | NEW | YR | CUT | PR CALC |
|-----|-----|-----|-----|-----|---------|
| COD | 1 | 2 | 76 | 1101/6 | |
| | 1 | 3/4 | 79 | 4400 | |
| | 2 | 5,6,6 | 82 | 2964 | |
| | 5 | sea | 83 | 6165 | |
| | 3 | 7&8 | 84 | 1131 | |

(7)

83 (RHO)
S. 88° 18' 25" E (ROS)
RHO₁     3968.40     JAMUL

COR. 15

(24)
SHT 1

(8) AG. PR. (C)
68.16 AC

JAMUL

RHO 8765  N15° 57' E
N 27° 31' 43" E

(10) 11

(5) 14

(25)

RD
6208.9     AG. PR. (C) = AGRICULTURAL PRESERVE (CONTRACT)

BDY

LS 430 - RHO JAMUL SURVEY (SEC-10-T17S-R1E)
ROS 8756, 8961, 9173

THIS MAP WAS PREPARED FOR ASSESSMENT PURPOSES ONLY. NO LIABILITY IS ASSUMED FOR THE ACCURACY OF THE DATA SHOWN. ASSESSOR'S PARCELS MAY NOT COMPLY WITH LOCAL SUBDIVISION OR BUILDING ORDINANCES.

# EXHIBIT I

# In the United States Court of Federal Claims

No. 98-860 L
(Filed: February 1, 2006)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

WALTER ROSALES, *et al.*,                        \*
                                                 \*
                        Plaintiffs,              \*
                                                 \*
        v.                                       \*
                                                 \*
THE UNITED STATES,                               \*
                                                 \*
                        Defendant.               \*
                                                 \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

On March 19, 2004, the court stayed this case pending final resolution of the related case of *Rosales v. United States* (1:03cv1117), which is in the U.S. District Court for the District of Columbia. The parties have reported that cross motions for summary judgment await a decision in that case.

In light of the fact that this case has been stayed for a significant period of time, the parties shall file a joint status report on or before **February 15, 2006**, addressing, with specificity, whether the stay in this case should be continued. Such a discussion shall include why issues pending in this case would be affected by resolution of the case in the district court. In addition, Plaintiffs shall provide the court with a concise summary of the claims being pursued in the district court case, as compared to those pursued here. To the extent possible at this juncture, Defendant shall provide a concise summary of its defenses to Plaintiffs' claims being pursued in the district court case, as compared to its defenses in this case.

The parties shall also address how they would propose to proceed if the court were to lift the stay.

                                        s/Edward J. Damich
                                        EDWARD J. DAMICH
                                        Chief Judge

*D 07-162 RMC* (handwritten)

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

RECEIVED U.S. DISTRICT COURT

## I (a) PLAINTIFFS

Walter J. Rosales, Estate of Helen Cuero, Estate of Dean Rosales, et al.

3336Y

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Jamul
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

William A. Isaacson, Boies Schiller & Flexner, LLP
5301 Wisconsin Ave., N.W. #800 Wash. DC, 20015
(202.237.2727) - Patrick D. Webb, Webb & Carey, 401 B.
Street, Suite 306, San Diego, California 92101 (619.236.1650)

## DEFENDANTS

Unites States of America, Department of Justice, Department of the Interior, Dirk Kempthorne, et al

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

*JURY ACTION* (stamp)

CASE NUMBER   1:07CV00162

JUDGE: Rosemary M. Collyer

DECK TYPE: TRO/Preliminary Injunctio

DATE STAMP: 01/19/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 2 U.S. Government Defendant
○ 3 Federal Question (U.S. Government Not a Party)
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act
**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

◉ **D. Temporary Restraining Order/Preliminary Injunction**
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property
**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157
**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark
**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other
**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

④

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)** <br><br> ***(If pro se, select this deck)*** | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions (if Privacy Act)** <br><br> ***(If pro se, select this deck)*** | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☐ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☒ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities-Employment** <br> ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ **1 Original Proceeding**   ○ **2 Removed from State Court**   ○ **3 Remanded from Appellate Court**   ○ **4 Reinstated or Reopened**   ○ **5 Transferred from another district (specify)**   ○ **6 Multi district Litigation**   ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

25 U.S.C. 345, actions arising from allotments, 25 U.S.C. 335, extension of provisions to allotments, 25 U.S.C. 348, trust allotments and contracts

**VII. REQUESTED IN COMPLAINT**     ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     **DEMAND $** _____   Check YES only if demanded in complaint     **JURY DEMAND:**   YES ☒   NO ☐

**VIII. RELATED CASE(S) IF ANY**     (See instruction)     YES ~~☐~~   NO ☒   If yes, please complete related case form.

**DATE** 1/19/07     SIGNATURE OF ATTORNEY OF RECORD _____

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.