William A. Isaacson, Esq., D.C. Bar No. 414788
Tonya Chutkan, Esq., D.C. Bar No. 420478
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W., Ste. 800
Washington, District of Columbia 20015
Tel (202) 237-2727
Fax (202) 237-6131

Patrick D. Webb, Esq., CA State Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, CA 92101
Tel (619) 236-1650
Fax (619) 236-1283

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER J. ROSALES, ESTATE HELEN CUERO, ESTATE OF DEAN ROSALES, P.O. Box 85 Jamul, California, 91935 ) ) ) ) ) | **CASE NUMBER** 1:07 CV 00162 |
| | **JUDGE:** **Rosemary Collyer** |
| KAREN TOGGERY, ESTATE OF MARIE TOGGERY, ESTATE OF MATTHEW TOGGERY, P.O. Box 375 Jamul, California, 91935 ) ) ) ) ) | **DECK TYPE:** **Tribal Rights** |
| | **DATE STAMP:** |
| JUMAL INDIAN VILLAGE, a federally Recognized Indian tribe, P.O. Box 612, Jamul, California 91935 ) ) ) ) | **PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, ) ) | **AND REQUEST FOR ORAL HEARING BY FEBRUARY 23, 2007** |
| vs. ) ) ) | |
| UNITED STATES OF AMERICA, Department of Justice 950 Pennsylvania Avenue, NW Washington, D.C. 20530-0001, and its divisions, including, but not limited to, DEPARTMENT OF THE INTERIOR, by and through Secretary DIRK KEMPTHORNE, in his official capacity, 1849 C Street, NW, Washington, D.C. 20240, BUREAU OF INDIAN AFFAIRS, by and through Assistant Secretary of Indian Affairs, JAMES E. CASON, in his official capacity, 1849 C Street, NW, Washington D.C. 20240, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) ) | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### AND REQUEST FOR ORAL HEARING

Plaintiffs, by undersigned counsel, hereby move for a preliminary injunction, pursuant to Federal Rules of Civil Procedure, Rule 65. Given the exigencies of the circumstances, Plaintiffs further request an oral hearing within the next 10 days, pursuant to the Rules of the United States District Court for the District of Columbia, Rule 7(f).

This motion has been discussed with Assistant United States Attorneys, Alex Kriegsman, and Samantha Klein, pursuant to the Rules of the United States District Court for the District of Columbia, Rule 7(m), and in a good faith effort to determine if there is any opposition to this motion. Given that the Plaintiffs are threatened with the knowing and wilful mutilation, desecration, and disinterment of their Native American human remains, grave goods, cultural items, associated funerary and sacred objects of cultural patrimony, commencing on February 23, 2007, and that this threat was delivered by an opposing faction within the tribe on February 2, 2007, the United States has not yet determined whether it will oppose this motion or not.

For the reasons set forth in the accompanying Memorandum of Points and Authorities, and the supporting Declarations of Walter Rosales and Karen Toggery, the Plaintiffs seek a preliminary injunction against the UNITED STATES and its divisions, DEPARTMENT OF INTERIOR ("DOI"), and BUREAU OF INDIAN AFFAIRS ("BIA"), as follows:

1.      That the Defendants, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be preliminarily enjoined from any grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities, allowing any grading, excavating, operating heavy equipment, moving dirt and/or gravel,

1

or any other construction activities, on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, and otherwise mutilating, disinterring, removing, excavating, and disturbing in any way, any Native American human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06;

2.      That the United States and its agencies, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be preliminarily enjoined from allowing any grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities, on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, and otherwise allowing any mutilation, disinterment, removal, excavation, or disturbance of any Native American human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06;

3.      That the United States and its agencies, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be preliminarily enjoined from failing to preserve "in place" any Native Americans human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as

2

defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed,

interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, to

protect them from mutilation, disinterment, removal, excavation, and disturbance.

Dated: February 2, 2007                          **BOIES, SCHILLER & FLEXNER LLP**


_____

William A. Isaacson, Esq.
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W. Ste 800
Washington, District of Columbia 20015
Tel  (202) 237-2727
Fax (202) 237-6131

**WEBB & CAREY**


_____

Patrick D. Webb, Esq., Calif. Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, Calif. 92101
Tel  (619) 236-1650
Fax (619) 236-1283

Attorneys for WALTER ROSALES, KAREN
TOGGERY, JAMUL INDIAN VILLAGE, ESTATE
OF  HELEN  CUERO,  ESTATE  OF  DEAN
ROSALES,  ESTATE  OF  MARIE  TOGGERY,
ESTATE OF MATTHEW TOGGERY

William A. Isaacson, Esq., D.C. Bar No. 414788
Tonya Chutkan, Esq., D.C. Bar No. 420478
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W., Ste. 800
Washington, District of Columbia  20015
Tel (202) 237-2727
Fax (202) 237-6131


Patrick D. Webb, Esq., CA State Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, CA  92101
Tel (619) 236-1650
Fax (619) 236-1283


Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER J. ROSALES, ESTATE HELEN CUERO, ESTATE OF DEAN ROSALES, P.O. Box 85 Jamul, California, 91935 | **CASE NUMBER**    1:07 CV 00162 |
| | **JUDGE:**    **Rosemary Collyer** |
| KAREN TOGGERY, ESTATE OF MARIE TOGGERY, ESTATE OF MATTHEW TOGGERY, P.O. Box 375 Jamul, California, 91935 | **DECK TYPE:**    **Tribal Rights** |
| | **DATE STAMP:** |
| JUMAL INDIAN VILLAGE, a federally Recognized Indian tribe, P.O. Box 612, Jamul, California  91935 | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, Department of Justice 950 Pennsylvania Avenue, NW Washington, D.C.  20530-0001, and its divisions, including, but not limited to, DEPARTMENT OF THE INTERIOR, by and through Secretary DIRK KEMPTHORNE, in his official capacity, 1849 C Street, NW, Washington, D.C.  20240, BUREAU OF INDIAN AFFAIRS, by and through Assistant Secretary of Indian Affairs, JAMES E. CASON, in his official capacity, 1849 C Street, NW, Washington D.C.  20240, | |
| Defendants. | |

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    PLAINTIFFS' UNIVERSALLY CONSECRATED RIGHTS OF THE LIVING AND
      THE DEAD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.  A PRELIMINARY INJUNCTION IS REQUIRED TO PREVENT
      IRREPARABLE INJURY TO PLAINTIFFS' HUMAN REMAINS AND
      ASSOCIATED GRAVE GOODS, FUNERARY AND SACRED OBJECTS OF
      CULTURAL PATRIMONY PURSUANT TO THE CALIFORNIA AND
      FEDERAL NATIVE AMERICAN GRAVE PROTECTION AND
      REPATRIATION ACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.   A PRELIMINARY INJUNCTION IS ALSO REQUIRED TO PREVENT TRESPASS
      ON THE PLAINTIFFS' BENEFICIAL OWNERSHIP
      INTERESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.    A PRELIMINARY INJUNCTION SHALL BE ISSUED TO PREVENT THE
      POSSIBILITY OF IRREPARABLE INJURY, WHERE, AS HERE,
      PLAINTIFFS HAVE SUCH A STRONG LIKELIHOOD OF SUCCESS ON
      THE MERITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. American Civil Liberties Union
  (2004) 542 U.S. 656 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Atchison, Topeka & Santa Fe Railway Co. v. Lennen
  (10th Cir. 1981) 640 F.2d 255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers
  (9th Cir. 1978) 584 F.2d 308 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Bonnichsen v. United States
  (9th Cir.2004) 367 F.3d 864 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14, 15

Choctaw & Chicasaw Nations v. Seitz
  (10th Cir. 1951), 193 F.2d 456, *cert. denied*, 343 U.S. 919 (1952) . . . . . . . . . . . . . . . . 24

Citizen Band of Potawatomi Indian Tribe of Oklahoma v. Collier
  (10th Cir. 1998) 142 F.3d 1325, cert. denied, 525 U.S. 947 (1998) . . . . . . . . . . . . . 25, 26

City Fed. Fin'l. Corp. v. Office of Thrift Supervision
  (D.C. Cir. 1995) 58 F3d 738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Coast Indian Community v. U.S.
  (Fed. Cl. 1977) 550 F.2d 639 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Comanche Nation v. U.S.
  (W.D. Okla. 2005) 393 F.Supp.2d 1196 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Deckert v. Independence Shares Corp.
  (1940) 311 U.S. 282, 290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Estate of Burton
  (1883) 63 Cal. 36 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FDIC v. Garner
  (9th Cir. 1997) 125 F.3d 1272 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Food Comm. Int'l v. Barry
  (7th Cir. 2003) 328 F.3d 300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Gilder v. PGA Tour, Inc.
    (9th Cir. 1991) 936 F.2d 417 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

G.W.B.McDonald, Administrator v. Burton
    (1886) 68 Cal. 445 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Haitian Refugee Center, Inc. v. Christopher
    (11th Cir. 1995) 43 F.3d 1431 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Henry H. Burton v. Maria A. Burton
    (1889) 79 Cal. 490 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Burton's Estate
    (1892) 93 Cal. 459 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Fredenberg
    (D. Wis. 1946) 65 F.Supp.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Keechi v. U.S.
    (D.C.D.C. 1985) 604 F.Supp. 267 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

McDonald v. McCoy
    (1898) 121 Cal. 55 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Narragansett Tirbe fo Indians v. So. R.I. Land Dev. Corp.
    (D.R.I. 1976) 418 F.Supp. 798 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.
    (Fed. Cir. 2004) 357 F.3d 1319 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Puyallup Indian Tribe v. Port of Tacoma
    (9th Cir. 1983) 717 F.2d 1251, *cert. denied*, 465 U.S. 1049 (1984) . . . . . . . . . . . . . . . . 24

Palmquist v. Standard Acc. Ins. Co.
    (C.D. Cal. 1933) 3 F.Supp. 358 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

People v. Van Horn
    (4th Dist. 1990) 218 Cal.App.3d 1378 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Producers' Oil Co. v. U.S.
    (8th Cir. 1917) 245 F. 651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Pueblo of San Ildefonso
    (10 Cir. 1996) 103 F.3d 936 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Republic of the Philippines v. Marcos
    (2d Cir. 1986) 806 F.2d 344 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Ross-Simons of Warwick, Inc. v. Baccarat, Inc.
    (1st Cir. 1996) 102 F.3d 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

San Carlos Apache Tribe v. United States
    (D. Ariz. 2003) 272 F.Supp.2d 860 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Stanley v. University of So. Calif.
    (9th Cir. 1994) 13 F.3d 1313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Sugar Busters, LLC v. Brennan
    (5th Cir. 1999) 177 F.3d 258 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Swimming Turtle v. Board of Co. Commissioners of Miami County
    (N.D. Indiana 1977) 441 F.Supp. 374 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Tlingit and Haida Indians of Alaska v. U.S.
    (U.S. Ct. Claims 1968) 389 F.2d 778 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Topanga Press, Inc. v. City of Los Angeles
    (9th Cir. 1993) 989 F.2d 1524 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Assiniboine Tribe
    (Fed. Cl. 1970) 428 F.2d 1324 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

United States v. Board of Com'rs of Grady County
    (10th Cir. 1931) 54 F.2d 593 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Flournoy Live-Stock & Real-Estate Co.
    (D. Neb. 1895) 69 F. 886 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Pio Pico
    (1870) 27 F.Cas. 537 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Whitehorse
    (10th Cir. 1977) 555 F.2d 283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Washington v. Indiana High School Athletic Ass'n, Inc.
    (7th Cir. 1999) 181 F.3d 840 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Washoe Tribe of Nevada and California v. Greenley
    (9th Cir. 1982) 674 F.2d 816 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Weinberger v. Romero Barcelo
    (1982) 456 U.S. 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Wilson v. Watt
    (9th Cir. 1983) 703 F.2d 395 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Yankton Sioux Tribe v. United States Army Corps of Engineers
    (D.S.D. 2000) 83 F.Supp.2d 1047 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 22, 23, 24

Yankton Sioux Tribe v. United States Army Corps of Engineers
    (D.S.D. 2002) 209 F.Supp.2d 1008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Yankton Sioux Tribe v. United States Army Corps of Engineers
    (D.S.D. 2003) 258 F.Supp.2d 1027 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23


**Statutes and Rules**

16 U.S.C. 470cc . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

25 U.S.C. 461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

25 U.S.C. 3000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

25 U.S.C. 3001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

25 U.S.C. 3002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

25 U.S.C. 3009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

25 U.S.C. 3013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Cal. Health & Safety Code 7050.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 15, 17

Cal. Health & Safety Code 7052 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Cal. Pub. Res. Code 5097.9-5097.99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Cal. Pub. Res. Code 5097.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17, 18

Cal. Pub. Res. Code 5097.94 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 20

Cal. Pub. Res. Code 5097.94(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

Cal. Pub. Res. Code 5097.97 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Cal. Pub. Res. Code 5097.98 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22

Cal. Pub. Res. Code 5097.98(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Cal. Pub. Res. Code 5097.98 (d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 21

Cal. Pub. Res. Code 5097.99 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 22

Cal. Pub. Res. Code 5097.99(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. Rules of Civil Proc. 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

43 C.F.R. 10.2(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 C.F.R. 10.2(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 C.F.R. 10.2(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

43 C.F.R. 10.2(d)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Miscellaneous**

1 Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974
     at 668, 724, 747, and 1479 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

2006 Cal. Legis. Serv. Ch. 863 (A.B. 2641)(West) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Annotation, Liability for Desecration of Graves and Tombstones,
     77 A.L.R.4th 108 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

D. Brown, BURY MY HEART AT WOUNDED KNEE 1 (1971) . . . . . . . . . . . . . . . . . . . . . . . 30

Echo-Hawk, Tribal Efforts to Protect Against Mistreatment of Indian Dead:
 The Quest for Equal Protection of the Laws, 14 NARF LEGAL REV. 1-2 (1988). . . . . . 3

47 Fed. Reg. 53130, 53132 (Nov. 24, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

H. Bernard, THE LAW OF DEATH AND DISPOSAL OF THE DEAD,
 15 (2d ed. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

H.R. Rep. No. 101-877, U.S.Code Cong. & Admin. News at 4367 (1990) . . . . . . . . . . . . 14, 15

Johnson, The Bones of Their Fathers, *Denver Post*,
 Contemporary Magazine, Feb. 4, 1990, at 2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

S.Rep. No. 101-473, U.S. Code Cong. & Admin. News at 6 (1990) . . . . . . . . . . . . . . . . . . . 14, 15

Thomas, Indian Burial Rights Issues: Preservation or Desecration, Spring 1991,
 59 U.M.K.C. Law Review 747. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13, 16

## INTRODUCTION

The Plaintiffs are being immediately threatened with the knowing and wilful mutilation, desecration, and disinterment of their Native American human remains, grave goods, cultural items, associated funerary and sacred objects of cultural patrimony, commencing on February 23, 2007, which threat was delivered on February 2, 2007, by an opposing faction of Native Americans within the tribe that seek to further harass the Plaintiffs by forcibly evicting them from their homes and illegally commencing construction on 7.2 acres of an 8.9 acre construction site for a 14 story gambling casino and hotel, among the parcels known as 597-080-04, 597-080-05, and 597-080-06.

Therefore, based upon these facts, the additional facts alleged in the complaint and its exhibits, the Declarations of Plaintiffs, Walter Rosales, and Karen Toggery, and the following points and authorities, the Plaintiffs seek a preliminary injunction against the UNITED STATES and its divisions, DEPARTMENT OF INTERIOR ("DOI"), and BUREAU OF INDIAN AFFAIRS ("BIA"), as more particularly set forth in the accompanying motion.

## I.    PLAINTIFFS' UNIVERSALLY CONSECRATED RIGHTS OF THE LIVING AND THE DEAD

It is a universally held belief among Indians that if the dead or the funeral goods interred

with them are disturbed, their spirits will wander, and in the words of Walter Echo-Hawk, that

"restless spirits will bring evil to those who allowed their graves to be disturbed."[1]

> While actual practices and religious beliefs may vary widely between cultures, and even with ethnic groups, the concern for the dead and the sensibilities of the living is a universal value held by all societies in all ages.

> The sepulture of the dead has, in all ages of the world, been regarded as a religious rite. The place where the dead are deposited, in all civilized nations and many barbarous ones is regarded in some measure at least, as consecrated ground... Consequently, the normal treatment of a corpse, once it is decently buried, is to let it lie. This idea is so deeply woven into our legal and cultural fabric that it is commonplace to hear it spoken of a as a 'right.'" Thomas, Indian Burial Rights Issues: Preservation or Desecration, Spring 1991, 59 U.M.K.C. Law Review 747.

"The right to bury a corpse and to preserve its remains, is a legal right, which the courts

of law will recognize and protect. Such rights belong exclusively to the next of kin."[2]

---

[1] Johnson, The Bones of Their Fathers, *Denver Post*, Contemporary Magazine, Feb. 4, 1990, at 2.

[2] H. Bernard, THE LAW OF DEATH AND DISPOSAL OF THE DEAD, 15 (2d ed. 1979) quoting the Hon. Samuel B. Ruggles Report, as it came to be known, which became the foundation for modern American burial law and is frequently referred to, or quoted from, by almost every opinion concerning the issues of control over deceased remains. Standing to bring such a personal cause of action under either the California or Federal NAGPRA resides in the next of kin and near-relatives. Annotation, Liability for Desecration of Graves and Tombstones, 77 A.L.R.4th 108 (1990); Thomas, Indian Burial Rights Issues: Preservation or Desecration, 59 U.M.K.C. Law Review 747, 748 (Spring 1991). "American courts continue to recognize the English law of no property right in human remains." Bernard, supra, 16-18. "Rather, any recovery awarded by American courts is awarded for the injury to the feelings and emotions of the surviving family members." Thomas, supra, 748.

2

However, "After death, American Indians are not secure in their person or property as non-Indians pursue them into the grave, for various motives, in quest of 'specimens,' 'pathological material,' or just plain 'booty.' The systematic expropriation of the Indian dead has occurred on a national, as well as a local, scale over the last century, and this widespread removal of Indian bodies and grave goods is one of the most grisly and frightening problems confronting Indian people today." Echo-Hawk, Tribal Efforts to Protect Against Mistreatment of Indian Dead: The Quest for Equal Protection of the Laws, 14 NARF LEGAL REV. 1-2 (1988).

It is no less grisly or frightening for Plaintiffs, WALTER J. ROSALES, and KAREN TOGGERY, whose lineal forbears have for more than 100 years been inhumed and interred at what has been known since the days of the Mexican Dons as "Rancho Jamul" (now known as parcels 597-080-04, 597-080-05, and 597-080-06). Now they are again being threatened with knowing and wilful mutilation, desecration, and disinterment of their Native American human remains, grave goods, cultural items, associated funerary and sacred objects of cultural patrimony, in the white man's continuing avaricious pursuit of the same old 'booty,' right into the graves of their ancestors.

Plaintiffs have been provided written Notice of Intent Associated with Construction Activity, prepared for the California State Water Resources Control Board, executed by a general contractor known as McCarthy Building Companies, Inc., that grading will take place during January 2007, on 7.2 acres of an 8.9 acre construction site for a 14 story gambling casino and hotel, among the parcels now known as 597-080-04, 597-080-05, and 597-080-06.

Such grading will cause great and irreparable damage to the Plaintiffs' Native American human remains, along with the items associated with their human remains, including but not

3

limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, by knowingly and/or willfully mutilating, disinterring, wantonly disturbing, and willfully removing them from these parcels without authority of law.

Such grading will also greatly and irreparably interfere with the Plaintiffs' free expression and exercise of Native American religion as provided in the U.S. and the California Constitutions, and shall cause severe and irreparable damage to the Plaintiffs' Native American sanctified cemetery, place of worship, religious and ceremonial sites, and sacred shrines located on these parcels. It will also infringe and violate the Plaintiffs' personal civil rights, and cause the Plaintiffs severe personal, physical and bodily injury, including severe emotional distress.

Since such outrageous personal injuries and damages are without question, irreparable, and there is a strong likelihood that monetary damages alone, neither can be calculated, nor can properly compensate the Plaintiffs for such irreparable personal harm, and that some of the Defendants will be unable to respond in damages, and that the Defendants threaten to continue such mutilation, desecration and disinterment in the future, Plaintiffs are without an adequate remedy at law, without the imposition of the requested preliminary and permanent injunction against such grisly and frightening illegal conduct.

## II.    FACTUAL BACKGROUND

WALTER J. ROSALES, and KAREN TOGGERY, who are Native American residents of San Diego County of one-half or more degree of California Indian blood, are enrolled members and lawfully elected officers of the Plaintiff, JAMUL INDIAN VILLAGE (hereinafter VILLAGE), and duly authorized to file this action on behalf of the VILLAGE, which is a tribal

4

governmental entity of Kumeyaay Indians, recognized by the United States' Congress, governed

by a Constitution adopted on May 9, 1981, pursuant to the Indian Reorganization Act of 1934,

25 U.S.C. 461 et seq., and located in Jamul, California.

Plaintiff, WALTER J. ROSALES, is also a lineal descendant and son of Native

American, Helen Cuero, the personal representative of his mother's estate, the Estate of Helen

Cuero, and the lienal descendant with ownership and control of her human remains and his un-

named baby brother's human remains and Native American cultural items, as set forth in Cal.

Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001-2.[3]

Plaintiff, KAREN TOGGERY, is also a lineal descendant and daughter of Native

---

[3] 25 U.S.C. 3002 provides: "(a) Native American human remains and objects–The ownership or control of Native American cultural items which are excavated or discovered on Federal or tribal lands after November 16, 1990, shall be (with priority given in the order listed)–(1) in the case of Native American human remains and associated funerary objects, in the lineal descendants of the Native American;" Bonnichsen v. United States (9th Cir.2004) 367 F.3d 864, 875; 43 C.F.R. 10.2(b)(1) provides: "Lineal descendant means an individual tracing his or her ancestry directly and without interruption by means of the traditional kinship system of the appropriate Indian tribe or Native Hawaiian organization or by the common law system of descendance to a known Native American individual whose remains, funerary objects, or sacred objects are being claimed under these regulations." 43 C.F.R. 10.2(d)(1) provides: "Human remains means the physical remains of the body of a person of Native American ancetry." Cal. Pub. Res. Code 5097.98 (d) provides: "(1)Human remains of a Native American may be an inhumation or cremation, and in any state of decomposition or skeletal completeness. (2) Any items associated with the human remains that are placed or buried with the Native American human remains are to be treated in the same manner as the remains..." 43 C.F.R. 10.2(d)(2) provides: "Funerary objects means items that, as part of the death rite or ceremony of a culture, are reasonably believed to have been placed intentionally at the time of death or later with or near individual human remains...The term burial site means any natural or prepared physical location, whether originally below, on, or above the surface of the earth, into which, as part of the death rite or ceremony of a culture, individual human remains were deposited, and includes rock cairns or pyres which do not fall within the ordinary definition of gravesite." 43 C.F.R. 10.2(d)(4) provides: "Objects of cultural patrimony means items having ongoing historical, traditional, or cultural importance central to the Indian tribe or Native Hawaiian organization itself."

American, Marie Toggery, and the personal representative of her mother's estate, the Estate of Marie Toggery, as well as the mother of her son Matthew Tinejero Toggery, and the personal representative of the Estate of Matthew Tinejero Toggery, and a lineal descendant with ownership and control of their human remains and Native American cultural items, as set forth in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001-2.

For more than 100 years, the Native American families of which the Plaintiffs are the lineal descendants have inhumed, interred and deposited hundreds of their deceased family members' human remains, and items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

The individual Plaintiffs have personal knowledge of at least 20 Native Americans whose human remains, and items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, have been interred and deposited on three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

On September 26, 1912, J.D. Spreckel's Coronado Beach Company deeded 2.21 acres of land in Jamul, California, to the Roman Catholic Bishop of Monterey and Los Angeles, a corporate in sole of the State of California, "to be used for the purposes of an Indian graveyard and approach thereto," as set forth in Exhibit A and B hereto, and now known as parcels 597-

6

080-05 and 597-080-06. In 1912, Father LaPointe and the Roman Catholic church erected a chapel at the cemetery, and since 1956 the diocese of St. Pius Xavier has maintained the chapel, on the parcel now known as 597-080-05, for the purpose of ministering at the Indian cemetery.

From their birth, the Plaintiffs were the lineal descendants of the Native American families that have occupied and possessed that cemetery and the property contiguous to that Indian graveyard in Jamul, California, for more than 100 years, which property was owned at various times since 1831 by Mexican Governor and Don, Pio Pico, U.S. General Henry S. Burton and his widow Maria Amparo Ruiz de Burton, John D. Spreckel's Coronado Beach Company, and later by the Lawrence and Donald Daley families, and the Catholic Diocese, as reflected in Exhibits A, B, C and D hereto.[4]

During the latter part of the 1970's the Plaintiffs and their families negotiated a gift of that certain property of which they were in possession from the Daley families. The Daley families agreed to convey title to the land then occupied by the Plaintiffs' families to the United States in trust for the explicit benefit of those half-blood Jamul Indians then occupying the property. The Daley families specifically agreed to this form of conveyance in order to provide a place for the Plaintiffs and their families to live in perpetuity, and to provide a place protected by the United States as a trustee to protect the living and the dead against all forms of alienation, trespass, desecration, mutilation, disinterment, and any other infringement.

On December 27, 1978, Lawrence and Donald Daley, recorded a grant deed of parcel 597-080-01, consisting of approximately 4.66 acres, to "the United States of America in trust for

---

[4] See also, United States v. Pio Pico (1870) 27 F.Cas. 537; Estate of Burton (1883) 63 Cal. 36; G.W.B.McDonald, Administrator v. Burton (1886) 68 Cal. 445; Henry H. Burton v. Maria A. Burton (1889) 79 Cal. 490; In re Burton's Estate (1892) 93 Cal. 459; and McDonald v. McCoy (1898) 121 Cal. 55.

such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate," as set forth in Exhibit D hereto.

The Secretary of the Interior through his subordinates designated the individual Plaintiffs and the Native American families then possessing and residing on parcel 597-080-01, as the beneficial owners thereof, by locating said individual Indians on the parcel, providing for their needs, acquiescing in their continued presence on, and use of, the parcel for more than 28 years, in building houses for them on the parcel, and in providing them with services usually accorded to Indians living on such property, and further providing strong and uncontroverted evidence of their designation as the beneficial owners of parcel 597-080-01, as a matter of law, within the meaning of the grant deed, and as set forth in Coast Indian Community v. U.S. (Fed. Cl. 1977) 550 F.2d 639, United States v. Assiniboine Tribe (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974 at 668, 724, 747, and 1479.

The December 27, 1978 grant deed was recorded nearly three years before the Constitution of the Jamul Indian Village was adopted, and three years before the Congress of the United States recognized the creation of the Jamul Indian Village, as an Indian tribe under the Indian Reorganization Act of 1934. This deed was accepted by the United States on December 21, 1978, pursuant to Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. 465.

Parcel 597-080-01, now known as parcel 597-080-04, was not acquired for a tribe, leaving only the possibility under 25 U.S.C. 465 that it was purchased and taken in trust for the individual Indian Plaintiffs and the Native American families then possessing and residing on the parcel, as set forth in Coast Indian Community v. U.S. (Fed. Cl. 1977) 550 F.2d 639, United States v. Assiniboine Tribe (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 Opinions of the

8

Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974 at 668, 724, 747,

and 1479. The individual Plaintiffs thereby became beneficial owners of parcel 597-080-01,

now known as 597-080-04, under Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C.

465.

On May 9, 1981, Plaintiff WALTER J. ROSALES, Chairperson of those Indians seeking

to re-organize as the VILLAGE, certified on behalf of the election board, that sixteen of twenty

three registered voters adopted the VILLAGE constitution. The United States acknowledged the

adoption of the constitution on July 7, 1981, and the Congress of the United States recognized

the VILLAGE by publication in the Federal Register on November 24, 1982. 47 Fed. Reg.

53130, 53132 (Nov. 24, 1982).

When the VILLAGE was created on May 9, 1981, under the terms of the Indian

Reorganization Act of 1934, it was a landless governmental entity.  To date, the United States

has not set aside or created an Indian reservation for the VILLAGE. The United States

Department of Interior, Bureau of Indian Affairs, August 3, 2000 response to the Plaintiffs'

Freedom of Information Act (FOIA) request, confirms that the "current trust parcel was accepted

into trust in 1978 for Jamul Indians of ½ degree (4.66 acres)," and that there is "no record of the

1978 trust parcel being known as the Jamul Village," as reflected in Exhibit E hereto.

Coast Indian Community v. U.S. (Fed. Cl. 1977) 550 F.2d 639, held on nearly identical

facts, that the parcel in question, "was not acquired for a tribe, leaving only the possibility under

the [Indian Reorganization] Act that it was purchased for individual Indians. The deed and

proclamation say nothing to contradict this. Thus, the land was taken in trust for the individual

Indians." 550 F2.d 639, 651, n. 32. This is also consistent with Governor Arnold

Schwarzenegger's Legal Affairs Secretary's December 20, 2005 letter to the Jamul Indian

9

Village. Exhibit F hereto.

Subsequently, the Catholic Diocese agreed to deed a portion of the Indian Cemetery to the VILLAGE for the purpose of maintaining the road and utilities to the remainder of the Indian cemetery, as required by, and provided in, the original Coronado Beach Company deed to the Catholic Diocese. On July 27, 1982, the Roman Catholic Bishop of San Diego, successor to the Roman Catholic Bishop of Monterey and Los Angeles, a corporation sole, recorded a grant deed of a portion of parcel 597-080-02, now known as 597-080-05, consisting of approximately 1.372 acres, to "the United States of America in trust for the Jamul Indian Village," as set forth in Exhibit G hereto. Excepted therefrom was that portion of the Coronado Beach Company land grant, now known as parcel 597-080-06, consisting of approximately .838 acres where some, but not all, of the Native American human remains were interred, to which the Catholic Diocese retains title. The Catholic Diocese also explicitly reserved "to [itself and its] successors or assigns an easement for (1) utility service lines and (2) ingress and egress over the existing well-traveled road," which extends the entire length of the north edge of the 1.372 acres, and which the San Diego County tax assessor's maps continue to describe as "the Indian cemetery," as set forth in Exhibit H hereto.

By virtue of these afore-described acts, a Native American sanctified cemetery, place of worship, religious and ceremonial site, and sacred shrine, as defined by Cal. Pub. Res. Code 5097.9, have been located on the parcels now known as 597-080-04, 597-080-05, and 597-080-06.

Plaintiff Walter J. Rosales was personally present when his un-named younger brother's human remains, his mother, Helen Cuero's human remains, and his son, Dean Rosales' human remains, were inhumed, interred, and deposited, along with the items associated with their

10

human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on what are now known as Parcels 597-080-04 and 597-080-06.

Plaintiff Karen Toggery was personally present when her mother, Marie Toggery's human remains and her son, Matthew Tinejero Toggery's human remains, were inhumed, interred and deposited, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on what are now known as Parcels 597-080-04 and 597-080-06.

On or about December 10, 2005, all residents of Parcels 597-080-04 and 597-080-05, and 597-080-06, except Walter Rosales, Karen Toggery and Vivian Flores, abandoned their residences on the Parcels, and have been living continuously in other locations in San Diego County.

During 2006, Plaintiffs have repeatedly put the Defendants and a faction of individuals, many of whom are not lawful members of the Jamul Indian Village, who have contracted with a grading contractor to unlawfully build a gambling casino on the Plaintiffs' parcel, now known as 597-080-04, on written notice of Plaintiffs' ownership and control, as lineal descendants, of their deceased Native American family members' human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that for more than 100 years have been inhumed, interred and deposited on these three parcels of land, originally known as 597-080-01 and 597-080-02,

11

and now as 597-080-04, 597-080-05, and 597-080-06.

Despite such written notice from the Plaintiffs, a Notice of Intent Associated with Construction Activity has been prepared for the California State Water Resources Control Board and executed on behalf of a general contractor, known as McCarthy Building Companies, Inc., indicating that grading will take place during January 2007, on 7.2 acres of an 8.9 acre construction site for a 14 story gambling casino and hotel, among parcels now known as 597-080-04, 597-080-05 and 597-080-06.

No permit required by Title 16 U.S.C. 470cc has been posted by any federal land manager on the property for anyone to grade or excavate parcels now known as 597-080-04, 597-080-05 and 597-080-06. Nor can any such permit be granted by any federal land manager under 16 U.S.C. 470cc, without the consent of the Indian owning or having jurisdiction over such lands, which consent the Plaintiffs, who are the beneficial landowners, have not granted.

Nor has the San Diego County coroner been notified by any grading contractor of the intent to excavate and/or disturb human remains or the site of any nearby area reasonably suspected to overlie adjacent human remains, as required by Cal. Health & Safety Code 7050.5; nor has the Native American Heritage Commission been notified, until now, of the existence of Native American human remains and associated Native American artifacts, grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on said parcels, as required by Cal. Health & Safety Code 7050.5.

12

III.   **A PRELIMINARY INJUNCTION IS REQUIRED TO PREVENT IRREPARABLE INJURY TO PLAINTIFFS' HUMAN REMAINS AND ASSOCIATED GRAVE GOODS, FUNERARY AND SACRED OBJECTS OF CULTURAL PATRIMONY PURSUANT TO THE CALIFORNIA AND FEDERAL NATIVE AMERICAN GRAVE PROTECTION AND REPATRIATION ACTS**

California citizens, whether Native American or not, have long been recognized to have

common law personal injury claims for any desecration, mutilation or disinterment of their

forbears human remains, grave goods, cultural items, associated funerary and sacred objects of

cultural patrimony.  Palmquist v. Standard Acc. Ins. Co. (C.D. Cal. 1933) 3 F.Supp. 358, 360.

> 'A surviving spouse, entitled to the custody and possession of a deceased person for the purposes of preservation and burial, may maintain an action...And it is believed that the weight of authority sustains the proposition that mental suffering is an element of damages in an action to recover for the wrongful mutilation or destruction of a dead human body, where it is the direct proximate and natural result of the wrongful act, irrespective of any actual pecuniary damages, although wantonness or wilfulness may not be shown.' 8 R.C.L. 23 [and where] [i]t involves the personal feelings of the plaintiff, [d]amages are not capable of exact measurement.  Id.

> "[R]ecovery awarded by American courts is awarded for the injury to the feelings and emotions of the surviving family members." Thomas, Indian Burial Rights Issues: Preservation or Desecration, 59 UMKC Law Review 747, 748 (Spring 1991).

Theses common law personal injury rights have been further expanded and statutorily

codified in both the federal Native American Grave Protection and Repatriation Act,

("NAGPRA"), 25 U.S.C. 3000 et seq., and the California Native American Grave Protection and

Repatriation Act, Cal. Pub. Res. Code 5097.9-99. Each act provides a separate and independent

set of rights and obligations for those who own and control Native American human remains,

grave goods, cultural items, associated funerary and sacred objects of cultural patrimony that

dovetail with the common law protection of the deceased and their funerary objects from

mutilation, desecration and disinterment by landowners, lineal descendants, third parties with

13

and without knowledge of the human remains, both on and off publicly held property, like parcels 597-080-04, 597-080-05 and 597-080-06. For example, the federal act extends the common law protection to Native American cultural items on federally held lands, 25 U.S.C. 3002, while the California statute extends the common law protection of non-Native American dignities to Native American graves and cemeteries on both public and private lands. Cal. Pub. Res. Code 5097.94(b).

For more than a decade these Native American Protection and Repatriation Acts, have been held to expand the long recognized common law personal injury claims and create a private right of action for declaratory and injunctive relief to redress all forms of mutilation, desecration and disinterment by any landowners, lineal descendants, and third parties with and without knowledge of the human remains, in violation of these acts, both on and off publicly held property. <u>Bonnichsen v. United States</u> (9th Cir.2004) 367 F.3d 864, 873-4, <u>Pueblo of San Ildefonso</u> (10 Cir. 1996) 103 F.3d 936, 938, and <u>San Carlos Apache Tribe v. United States</u> (D. Ariz. 2003) 272 F.Supp.2d 860, 886.

The Federal Native American Grave Protection and Repatriation Act, NAGPRA, was enacted with two main goals: to respect the burial traditions of modern-day American Indians and to protect the dignity of the human body after death. "NAGPRA was intended to benefit modern American Indians by sparing them the indignity and resentment that would be aroused by the despoiling of their ancestors' graves...See H.R. Rep. No. 101-877, U.S.Code Cong. & Admin. News at 4367, 4369 (1990)...NAGPRA was also intended to protect the dignity of the human body after death by ensuring that Native American graves and remains be treated with respect. See S.Rep. No. 101-473, at 6 (1990)('The Committee believes that human remains must at all times be treated with dignity and respect.'); H.R.Rep. No. 101-877, U.S.Code Cong. &

14

Admin.News at 4367, 4372 (1990)('Some Indian representatives testified that the spirits of their

ancestors would not rest until they are returned to their homeland...')" <u>Bonnichsen v. United

States</u> (9th Cir.2004) 367 F.3d 864, 876.

> The NAGPRA represents the culmination of decades of struggle by Native
> American tribal governments and people to protect against grave desecration. <u>San
> Carlos Apache Tribe v. United States</u> (D. Ariz. 2003) 272 F.Supp.2d 860, 886,
> citing <u>Yankton Sioux Tribe v. United States Army Corps of Engineers</u> (D.S.D.
> 2000) 83 F.Supp.2d 1047, 1055, citing Jack F. Trope and Walter R. Echo-Hawk,
> The Native American Graves Protection and Repatriation Act: Background and
> Legislative History, 24 Ariz. L.J. 35, 36 (1992).

The federal NAGPRA, 25 U.S.C. 3013, provides: "The United States district courts shall

have jurisdiction over any action brought by any person alleging a violation of this chapter (of

NAGPRA) and shall have the authority to issue such orders as may be necessary to enforce the

provisions of this chapter." 25 U.S.C. 3009 further provides: "Nothing in this chapter shall be

construed to–(3) deny or otherwise affect access to any court; (4) limit any procedural or

substantive right which may otherwise be secured to individuals or Indian tribes or Native

Hawaiian organizations; or (5) limit the application of any State...law..."

The California Native American Grave Protection and Repatriation Act, NAGPRA, Cal.

Pub. Res. Code 5097.94, is broader than the federal NAGPRA, and extends to Indians all

dignities and requirements afforded non-Indians directly under Cal. Pub. Res. Code 5097.9-99

and Cal. Health & Safety 7050.5. The California NAGPRA is one of the few statutes that

extends the protection of human remains including, but not limited to grave goods, cultural

items, associated funerary objects, sacred objects, and objects of cultural patrimony, to

beneficially owned lands, like that of the Plaintiffs here. Cal. Pub. Res. Code 5097.94(b);

Thomas, supra, at 765, fn. 254. In enacting the 1982 amendments to the California Native

American Grave Protection and Repatriation Act, NAGPRA, Cal. Pub. Res. Code 5097.94, the

15

California legislature specifically provided that: "The purpose of the act is: To provide protection to Native American human burials and skeletal remains from vandalism and inadvertent destruction."

Cal. Pub. Res. Code 5097.94 provides that where, as here, severe and irreparable damage will occur, appropriate access will be denied, appropriate mitigation measures are not available, and there is no clear and convincing evidence that the public interest and necessity require otherwise, the court shall issue an injunction, to prevent severe and irreparable damage to, and to assure appropriate access for Native Americans to the Native American sanctified cemetery, place of worship, religious or ceremonial site, or sacred shrine located on public property.

Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause irreparable damage to the Plaintiffs' Native American human remains, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, by knowingly and/or willfully mutilating, disinterring, wantonly disturbing, and willfully removing them without authority of law. Grading these parcels will also deny the Plaintiffs appropriate access to the Native American sanctified cemetery, and the religious and ceremonial burial sites located on the public property, now known as parcels 597-080-04, 597-080-05 and 597-080-06.

Knowingly mutilating, disinterring, wantonly disturbing, and willfully removing such human remains without authority of law is a crime, under Cal. Health & Safety Code 7050.5, and any person willfully mutilating or disinterring any remains known to be human without authority of law is guilty of a felony, under Cal. Health & Safety Code 7052, as is anyone obtaining or possessing, or who removes with malice or wantonness, and without authority of law, any Native

16

American artifacts or human remains from a Native American grave or cairn, pursuant to Cal.

Pub. Res. Code 5097.99.

Cal. Health & Safety Code 7052 provides:

Every person who willfully mutilates, disinters, removes from the place of interment, ...any remains known to be human, without authority of law, is guilty of a felony.

Cal. Health & Safety Code 7050.5 provides:

Every person who knowingly mutilates or disinters, wantonly disturbs, or willfuly removes any human remains in or from any location other than a dedicated cemetery without authority of law is guilty of a misdemeanor, except as provided in Section 5097.99 of the Public Resources Code.

Cal. Pub. Res. Code 5097.99(b) provides:

Any person who knowingly or willfully obtains or possesses any Native American artifacts or human remains which are taken from a Native American grave or cairn after January 1, 1988, except as otherwise provided by law or in accordance with an agreement reached pursuant to subdivision (1) of Section 5097.94 or pursuant to Section 5097.98, is guilty of a felony which is punishable by imprisonment in the state prison.

Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will also cause

irreparable damage to, and interfere with, the Plaintiffs' free expression and exercise of Native

American religion as provided in the United States Constitution and the California Constitution,

and shall cause severe and irreparable damage to the Plaintiffs' Native American sanctified

cemetery, place of worship, religious or ceremonial site, and sacred shrines located on said

parcels.

Cal. Pub. Res. Code 5097.9 provides:

No public agency, and no private party using or occupying public property, or operating on public property, under a public license, permit, grant, lease, or contract made on or after July 1, 1977, shall in any manner whatsoever interfere with the free expression or exercise of Native American religion as provided in the United States Constitution and the California Constitution; nor shall any such

17

agency or party cause severe or irreparable damage to any Native American sanctified cemetery, place of worship, religious or ceremonial site, or sacred shrine located on public property, except on a clear and convincing showing that the public interest and necessity so require.

Should the United States and its agencies allow the grading of parcels now known as 597-080-04, 597-080-05 and 597-080-06, severe personal, physical and bodily injury, including severe emotional distress will be caused to the Plaintiffs and irreparable damage will be caused to their sanctified cemetery. Moreover, allowing such grading will also interfere with the Plaintiffs' free expression and exercise of their Native American religious rites of burial. Such acts will also unduly interfere with the Plaintiffs' civil rights to due process and equal protection of the laws. Plaintiffs will be greatly and irreparably damaged by reason of Defendants' infringement and violation of these civil rights, and unless Defendants are enjoined by this court, said acts will further violate Plaintiffs' civil rights, and further irreparably harm the Plaintiffs.

To prevent such wrongful conduct of the defendants as herein alleged, Plaintiffs are entitled to a temporary, preliminary and permanent injunction to prevent great and irreparable injury resulting from the infringement and violation of these personal and civil rights, from the likelihood that damages cannot properly compensate Plaintiffs for such irreparable personal harm, and that Defendants will be unable to respond in damages, and from the difficulty or impossibility to ascertain the exact amount of personal bodily injury and property damage Plaintiffs have sustained, and will in the future sustain. These ongoing and continuing injuries sustained by Plaintiffs cannot be fully compensated in damages and Plaintiffs are without an adequate remedy at law without the imposition of the requested equitable injunctive relief.

The personal rights of the Plaintiffs, as the beneficial owners of the property and the lineal descendants of their Native American ancestors, cannot be adequately protected without

enjoining the United States, as trustee for their beneficial interest, from allowing grading on these parcels. This action is further brought to enjoin the United States and its agencies from allowing any disturbance of the Plaintiffs' preferences that the Native American human remains and associated cultural items remain "in place," as set forth in Cal. Pub. Res. Code 5097.98 and 25 U.S.C. 3001-2, including but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, which have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05, and 597-080-06 over the last 100 years.

If the United States, and its agencies, as the trustees for the Plaintiffs, are not enjoined from allowing grading on these parcels, the Plaintiffs will continue to suffer severe and irreparable personal injury, physical and bodily injury, including severe emotional distress from the published intention of the Doe Defendant grading contractors, who have not yet been publicly identified, to knowingly and/or wilfully mutilate, disinter, wantonly disturb, willfully remove and otherwise excavate, disturb and cause severe and irreparable damage to the Plaintiffs' ancestors human remains, along with the items associated with their human remains, including but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001.

Cal. Pub. Res. Code 5097.97 provides that in the event that any Native American individual, such as the individual Plaintiffs, advises the California Native American Heritage Commission that a proposed action by a public agency may cause severe or irreparable damage to a Native American sanctified cemetery, place of worship, religious or ceremonial site, or sacred shrine located on public property, or may bar appropriate access thereto by Native

19

Americans, and the proposed action would result in such damage or interference, and the public

agency fails to accept the mitigation measures recommended, an action to prevent such severe

and irreparable damage is authorized and an **injunction shall be issued** by the court to prevent

severe and irreparable damage to, and to assure appropriate access for Native Americans to the

Native American sanctified cemetery, place of worship, religious or ceremonial site, or sacred

shrine located on public property, pursuant to Cal. Pub. Res. Code 5097.94.

Cal. Pub. Res. Code 5097.97 provides:

> In the event that any Native American...individual advises the [Native American
> Heritage] commission that a proposed action by a public agency may cause severe
> or irreparable damage to a Native American sanctified cemetery, place of
> worship, religious or ceremonial site, or sacred shrine located on public property,
> or may bar appropriate access thereto by Native Americans, the commission shall
> conduct an investigation as to the effect of the proposed action.

Cal. Pub. Res. Code 5097.94 provides:

> The commission shall have the...dut[y]: (g) to bring an action to prevent severe and
> irreparable damage to, or assure appropriate access for Native Americans to, a Native
> American sanctified cemetery, place of worship, religious or ceremonial site, or sacred
> shrine located on public property, pursuant to 5097.97. If the court finds that severe and
> irreparable damage will occur or that appropriate access will be denied, and appropriate
> mitigation measures are not available, it shall issue an injunction, unless it finds, on clear
> and convincing evidence, that the public interest and necessity require otherwise.

Similarly, Cal. Pub. Res. Code 5097.98, as amended September 30, 2006, provides that

upon the discovery of Native American human remains, which may be an inhumation or

cremation, and in any state of decomposition or skeletal completeness, the landowner shall

ensure that the immediate vicinity, according to generally accepted cultural or archaeological

standards or practices where the Native American human remains are located, is not damaged or

disturbed by further development activity, so long as the lineal descendants' preferences are to

preserve the Native American human remains and associated items "in place," and that any items

20

associated with the human remains that are placed or buried with the Native American human remains are to be treated in the same manner as the remains.

In enacting the most recent amendments to Cal. Pub. Res. Code 5097.98, 2006 Cal. Legis. Serv. Ch. 863 (A.B. 2641)(West), "The Legislature finds and declares all of the following: (a) Private and public lands in California may contain the remains of ancestors to contemporary California Native Americans...(d) It is the intent of the Legislature, in enacting this bill, to accomplish the following: (1) Encourage landowners to consider preservation or avoidance of California Native American human remains in place, whenever feasible."

Cal. Pub. Res. Code 5097.98(b) now provides:

Upon the discovery of Native American remains, the landowner shall ensure that the immediate vicinity, according to generally accepted cultural or archaeological standards or practices, where the Native American human remains are located, is not damaged or disturbed by further development activity until the **landowner** has discussed and conferred, as prescribed in this section, with the most likely **descendents** (sic) regarding...(1) the descendents (sic) preferences for treatment [which] may include the following: ...(B)Preservation of Native American human remains and associated items *in place.* (emphasis added).

Cal. Pub. Res. Code 5097.98(d) provides:

(1) Human remains of a Native American may be an inhumation or cremation, and in any state of decomposition or skeletal completeness. (2) Any items associated with the human remains that are placed or buried with the Native American human remains are to be treated in the same manner as the remains...

Here, Plaintiffs are both the beneficial landowners and the lineal descendants. Plaintiffs' express preferences are to preserve the Native American human remains and associated cultural items "in place," as the lineal descendants' with ownership and control of their predecessors' human remains and Native American and associated cultural items, as set forth in Cal. Pub. Res. Code 5097.98 and 25 U.S.C. 3001-2, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal.

21

Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, which have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06 over the last 100 years.

People v. Van Horn (4th Dist. 1990) 218 Cal.App.3d 1378, 1398, upheld summary judgment for plaintiff's application for a permanent mandatory injunction requiring defendants to stop violating Cal. Pub. Res. Code 5097.99, and to protect the associated grave goods, Native American artifacts, and metates, wrongfully removed from an Indian grave.

The trilogy of Yankton Sioux Tribe v. United States Army Corps of Engineers (D. S.D. 2000) 83 F.Supp.2d 1047, 1060, (D.S.D. 2002) 209 F.Supp.2d 1008, 1021-22, and (D.S.D. 2003) 258 F.Supp.2d 1027, 1032-5, granted preliminary prohibitory and mandatory injunctions to protect human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, finding the plaintiff had no adequate alternative remedy and requiring that the status quo be preserved.

In the Yankton trilogy, as here, the graves at the White Swan Church cemetery dated to 1869. The official church records at Greenwood, S.D. show that the first Indian was buried in the cemetery in 1874. The Episcopal Chapel of St. Phillip was reserved for religious purposes in 1894. However, affidavits evidenced that the Yankton Sioux have buried their dead in the area of the church, though not necessarily on the cemetery site, since before the graveyard was founded, since at least 1838. In 1949 the United States condemned the property containing the cemetery to construct Fort Randall Dam and Lake Francis Case. However, the Army Corps of Engineers failed to properly protect the bodies in the cemetery.

Due to construction of the Fort Randall Dam, and Corps' management of the Lake, the land on which the cemetery sits is now covered by lake water for a part of every year. The

22

Corps' adjustment of the water levels is designed to serve the multiple purposes set forth in the

Flood Control Act of 1944, including flood control, irrigation, power supply, navigation, and

recreation. The winter and spring increase in the water level allows the Corps to generate

approximately 150 gigawatt hours of electric power. In 1966, after the Fort Randall Dam had

created Lake Francis Case, 35-40 of the graves were exposed, dug into, and bones were scattered

on the ground around nine of the graves. In 1990, a Corps park ranger and two fisherman again

found bones, and other skeletal remains, exposed caskets, casket parts and other scattered

fragments scattered along the shoreline of the lake. By 1999, the Corps observed seven skulls

and other human bones, including femurs, hipbones, and ribs, and counted 25-30 exposed

graves, including additional exposed caskets, some of which also contained bones, at the site.

In deciding to issue the preliminary injunctions enjoining any excavation, building or

other construction activities on the subject property, the Court found: (1) a significant threat of

irreparable harm to the plaintiffs, due to exposure of human remains or loss of remains or

funerary objects; (2) the balance of harm clearly in favor of the plaintiffs; (3) the probable

success on the merits of the claims under NAGPRA; and (4) the public interest, as expressed by

the legislature in adopting NAGPRA, required issuance of the injunctions.

> Under [NAGPRA] and the regulations, the Tribe has a clear right to the protection
> of human remains of which its members are the likely descendants and defendants
> have a clear duty to protect those remains. There is no alternative remedy which
> could adequately compensate the Tribe for the loss or destruction of those
> remains. Yankton, supra, 83 F.Supp.2d 1047, 1060.

Therefore, since the individual Plaintiffs, are the undisputed lineal descendants of the

Native Americans whose human remains, and the items associated with their human remains,

including, but not limited to grave goods, cultural items, associated funerary objects, sacred

objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99,

23

and 25 U.S.C. 3001, have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06 over the last 100 years, and seek to preserve these Native American human remains and associated items "in place," the court is similarly required to issue an injunction to prevent the Defendants from allowing their mutilation, disinterment, removal, excavation, disturbance and severe and irreparable damage.

## IV.    A PRELIMINARY INJUNCTION IS ALSO REQUIRED TO PREVENT TRESPASS ON THE PLAINTIFFS' BENEFICIAL OWNERSHIP INTERESTS

The federal courts routinely grant temporary, preliminary and permanent injunctions to protect Native American beneficial owners from trespass on the land held in trust for them by the United States. For example, in U.S. v. Whitehorse (10th Cir. 1977) 555 F.2d 283, 288, the Tenth Circuit granted an injunction to prevent the defendant sheep company from trespassing by grazing its sheep on Indian trust lands.

> Ownership by Indian title, although merely a possessory right of use and occupancy and, therefore, less than full fee simple ownership, is the complete beneficial ownership based on the right of perpetual and exclusive use and occupancy. The value of land held by Indian title is the same as that held in fee simple... Tlingit and Haida Indians of Alaska v. U.S. (U.S. Ct. Claims 1968) 389 F.2d 778, 782.

[I]t is now firmly established that the Indian title is equivalent to beneficial ownership." In re Fredenberg (D. Wis. 1946) 65 F.Supp.4, 6. See also, Choctaw & Chicasaw Nations v. Seitz (10th Cir. 1951), 193 F.2d 456, cert. denied, 343 U.S. 919 (1952); Puyallup Indian Tribe v. Port of Tacoma (9th Cir. 1983) 717 F.2d 1251, cert. denied, 465 U.S. 1049 (1984); Narragansett Tirbe fo Indians v. So. R.I. Land Dev. Corp. (D.R.I. 1976) 418 F.Supp. 798.

Beneficial ownership is often protected by a preliminary injunction to preserve the status quo, pending final determination of ownership. See for e.g., the injunction freezing the Marcoses assets pending final determination of their beneficial ownership of the subject properties.

Republic of the Philippines v. Marcos (2d Cir. 1986) 806 F.2d 344, 354. "A court is authorized

to impose a preliminary injunction on assets which were controlled by a party, even if that party

did not expressly own or possess those assets." FDIC v. Garner (9th Cir. 1997) 125 F.3d 1272,

1280-81.

In Comanche Nation v. U.S. (W.D. Okla. 2005) 393 F.Supp.2d 1196, 1211, the Western

Dist. of Oklahoma granted a preliminary and permanent injunction enjoining the U.S. from

allowing any activities on the parcel for which the Comanche Nation had not given consent.

There, the court found that the Comanche Nation had both a substantial likelihood of prevailing

on the merits and would suffer irreparable harm to its "beneficial title" to the parcel, as set out in

Citizen Band of Potawatomi Indian Tribe of Oklahoma v. Collier (10th Cir. 1998) 142 F.3d 1325,

cert. denied, 525 U.S. 947 (1998), since there were "questions going to the merits... so serious,

substantial, difficult and doubtful as to make the issue ripe for litigation," if the Comanche trust

property were transferred to the Fort Sill Apache tribe to build a Class III gaming casino without

Comanche consent. Id., at 1212. Therein the court specifically found: "that it is in the interest of

the public to have the jurisdictional issues resolved prior to the commencement of the class III

gaming activities on the subject property," Id., at 1211, and that "[e]ntry of a preliminary

injunction will simply maintain the status quo between the parties." Id., at 1211.

In Keechi v. U.S. (D.C.D.C. 1985) 604 F.Supp. 267, the court denied a motion to dismiss

an injunction action like this to clear the Native American's beneficial title to trust land held for

him by the U.S. There "[t]he land [was] thus held by the United States as trustee and is 'not

subject to alienation or encumbrance by [the Indian beneficiary], except with the consent of the

United States Government.'" Id., at 270. Similarly, a permanent injunction was granted,

enjoining Indiana from assessing and collecting taxes on Swimming Turtle's trust land, after

25

independent bases for federal jurisdiction were found under 28 U.S.C. Sections 1331, federal question, 1337, commerce, 1343, civil rights, 1353, and 25 U.S.C. 345, actions on allotments. Swimming Turtle v. Board of Co. Commissioners of Miami County (N.D. Indiana 1977) 441 F.Supp. 374, 377.

An injunction was granted to a Kiowa Indian in U.S. v. Board of Com'rs of Grady County (10th Cir. 1931) 54 F.2d 593, 594, against the maintenance of a three-eighths of a mile long ditch on his trust land, which was receiving back water from the Washita river, "where the natural flow of waters was so increased in volume and velocity...as to destroy three acres and injure six acres of the land." There, "the equity powers of the court were properly invoked on the ground that only an injunction is an adequate remedy for the continuing injuries to the allotment which would require a multiplicity of suits at law." Id., at 595. Similarly, the Eighth Circuit granted an injunction to restrain the state of Oklahoma's lessees from operating oil and gas leases in the Cimarron River bed, while the beneficial ownership of the Creek Tribe of Indians was fully litigated. Producers' Oil Co. v. U.S. (8th Cir. 1917) 245 F. 651, 652-3.

In Washoe Tribe of Nevada and California v. Greenley (9th Cir. 1982) 674 F.2d 816, two Nevada state officials were enjoined from enforcing state hunting laws and regulations against the Washoe Indians, hunting on their trust land. "The lands were never part of a reservation [as here], but rather were public domain prior to their allotment...these lands were allotted to individual Indians to be held in trust by the United States for their sole use and benefit." Id., at 817, fn. 1. There, the injunction enjoined allowing anyone not a beneficial owner of the trust property from entering on, trespassing upon, or using, the trust property.

Finally, as set forth in U.S. v. Flournoy Live-Stock & Real-Estate Co. (D. Neb. 1895) 69 F. 886, 894: "Having assumed the duty of securing the use and occupancy of these lands to the

26

[Omaha and Winebago] Indians, and being charged with the duty of enforcing the provisions of

the acts of congress forbidding all alienations of the lands...the government of the United States,

through the executive branch thereof, has the right to invoke the aid of the courts, by mandatory

injunction and other proper process, to compel parties wrongfully in possession of the lands held

in trust by the United States for the Indians to yield the possession thereof, and to restrain such

parties from endeavoring to obtain or retain the possession of these lands in violation of law."

Therefore, since the Plaintiffs are undisputably the beneficial owners of parcel 897-080-

04, which has been held in trust for their exclusive benefit for the last 28 years by the United

States, the court must also grant a temporary, preliminary and permanent injunction enjoining

the United States, and its agencies, from allowing any grading, excavating, operating heavy

equipment, moving dirt and/or gravel, or any other construction activities, on parcel 597-080-04,

for which the Plaintiffs have not given their consent.

## V.    A PRELIMINARY INJUNCTION SHALL BE ISSUED TO PREVENT THE POSSIBILITY OF IRREPARABLE INJURY, WHERE, AS HERE, PLAINTIFFS HAVE SUCH A STRONG LIKELIHOOD OF SUCCESS ON THE MERITS

The basis for preliminary and permanent injunctive relief in the federal courts under

F.R.C.P. Rule 65 has always been irreparable injury and the inadequacy of legal remedies.

Weinberger v. Romero Barcelo (1982) 456 U.S. 305, 312; Stanley v. University of So. Calif.

(9th Cir. 1994) 13 F.3d 1313, 1320. In this circuit the courts utilize the so-called 'traditional

test,' which requires that plaintiff establish the following four factors:

(1) A *likelihood of success* on the merits;

(2) A *substantial threat* that plaintiff will suffer *irreparable injury* if the injunction is

27

denied;

(3) The balance of hardships favors the plaintiff, because the threatened injury outweighs any damage the injunction might cause to defendant ; and

(4) The injunction will not disserve the public interest.

City Fed. Fin'l. Corp. v. Office of Thrift Supervision (D.C. Cir. 1995) 58 F3d 738, 746; National Steel Car, Ltd. v. Canadian Pac. Ry., Ltd. (Fed. Cir. 2004) 357 F.3d 1319, 1324–1335; Sugar Busters, LLC v. Brennan (5th Cir. 1999) 177 F.3d 258, 265; City Fed. Fin'l. Corp. v. Office of Thrift Supervision, supra, 58 F.3d at 746—"If arguments for one factor are particularly strong, an injunction may issue even if arguments in other areas are rather weak."

Under any formulation, to obtain a preliminary injunction, plaintiffs must show that they are 'likely' to prevail on the merits. Ashcroft v. American Civil Liberties Union (2004) 542 U.S. 656, 665; Haitian Refugee Center, Inc. v. Christopher (11th Cir. 1995) 43 F.3d 1431, 1432; Ross-Simons of Warwick, Inc. v. Baccarat, Inc. (1st Cir. 1996) 102 F.3d 12, 16—'likelihood of success' is 'the main bearing wall' of the traditional test.

Plaintiffs need not show positively they will prevail on the merits. A *reasonable probability* of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief. Gilder v. PGA Tour, Inc. (9th Cir. 1991) 936 F.2d 417, 422; Atchison, Topeka & Santa Fe Railway Co. v. Lennen (10th Cir. 1981) 640 F.2d 255, 261. According to some courts, a 'likelihood of success' exists if the party seeking the injunctive relief shows that it has a *better than negligible* chance of succeeding on the merits. Washington v. Indiana High School Athletic Ass'n, Inc. (7th Cir. 1999) 181 F.3d 840, 846.

For example, Alaskan natives sought a preliminary injunction against termination of

28

general assistance payments from the Bureau of Indian Affairs. They established a 'fair chance' of success on their claim that such termination was illegal. This minimal showing was adequate for a preliminary injunction since the burden on the government would be minor and the balance of hardships tipped sharply in plaintiffs' favor. Wilson v. Watt (9th Cir. 1983) 703 F.2d 395, 398–400.

When plaintiffs suffer "substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." Ross-Simons of Warwick, Inc. v. Baccarat, Inc. (1st Cir. 1996) 102 F.3d 12, 18. The legal remedy need not be wholly ineffectual. Rather, it "must be seriously deficient as compared to the harm suffered." Food Comm. Int'l v. Barry (7th Cir. 2003) 328 F.3d 300, 304.

Irreparable injury and probability of success 'are not two separate tests, but merely 'extremes of a single continuum.' Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers (9th Cir. 1978) 584 F.2d 308, 315. Thus, the required degree of irreparable harm decreases as the probability of success increases. Where there is a strong probability of success on the merits, the moving party need demonstrate only that he or she will suffer a degree of hardship that outweighs the hardship facing the opposing party. See Topanga Press, Inc. v. City of Los Angeles (9th Cir. 1993) 989 F.2d 1524, 1528.

A preliminary injunction may also be granted to preserve a fund or property as to which the parties have conflicting claims so that it may be the subject of a final decree in the case. See Deckert v. Independence Shares Corp. (1940) 311 U.S. 282, 290.

## VI.    CONCLUSION

Plaintiffs join with Tecumseh of the Shawnees, in reminding the court of the many once powerful tribes of Native Americans, like the Pequot, the Narragansett, and the Mohican, "that

29

have vanished before the avarice and the oppression of the White Man, as snow before a summer

rain," and request as did Tecumseh, that they never be forced to: "...give up our homes, our

country bequeathed to us by the Great Spirit, nor the graves of our dead and everything that is

dear and sacred to us!"[5]

Therefore, for the foregoing reasons the Court is required to issue a temporary,

preliminary and permanent injunction to preserve the status quo and prevent the threatened

irreparable trespass, mutilation, desecration, and disinterment of Plaintiffs' human remains, and

associated grave goods, funerary and sacred objects of cultural patrimony, as follows:

1.     That the Defendants, and their officers, agents, servants, employees and attorneys

and all persons in active concert with them, or any of them, be preliminarily enjoined from any

grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other

construction activities, allowing any grading, excavating, operating heavy equipment, moving

dirt and/or gravel, or any other construction activities, on the parcels now known as 597-080-04,

597-080-05 and 597-080-06, and otherwise mutilating, disinterring, removing, excavating, and

disturbing in any way, any Native American human remains, and the items associated with their

human remains, including, but not limited to grave goods, cultural items, associated funerary

objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code

5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the

parcels now known as 597-080-04, 597-080-05 and 597-080-06;

2.     That the United States and its agencies, and their officers, agents, servants,

employees and attorneys and all persons in active concert with them, or any of them, be

---

[5] Quoted in D. Brown, BURY MY HEART AT WOUNDED KNEE 1 (1971).

preliminarily enjoined from allowing any grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities, on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, and otherwise allowing any mutilation, disinterment, removal, excavation, or disturbance of any Native American human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06;

3.      That the United States and its agencies, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be preliminarily enjoined from failing to preserve "in place" any Native Americans human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and

31

597-080-06, to protect them from mutilation, disinterment, removal, excavation, and disturbance.

Dated: February 2, 2007                              **BOIES, SCHILLER & FLEXNER LLP**

_____

William A. Isaacson, Esq.
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W. Ste 800
Washington, District of Columbia 20015
Tel  (202) 237-2727
Fax (202) 237-6131

**WEBB & CAREY**

_____

Patrick D. Webb, Esq., Calif. Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, Calif. 92101
Tel  (619) 236-1650
Fax (619) 236-1283

Attorneys for WALTER ROSALES, KAREN
TOGGERY,  JAMUL INDIAN VILLAGE,
ESTATE OF HELEN CUERO, ESTATE OF
DEAN ROSALES, ESTATE OF MARIE
TOGGERY, ESTATE OF MATTHEW TOGGERY

William A. Isaacson, Esq., D.C. Bar No. 414788
Tonya Chutkan, Esq., D.C. Bar No. 420478
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W., Ste. 800
Washington, District of Columbia  20015
Tel (202) 237-2727
Fax (202) 237-6131


Patrick D. Webb, Esq., CA State Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, CA  92101
Tel (619) 236-1650
Fax (619) 236-1283


Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER J. ROSALES, ESTATE HELEN CUERO, ESTATE OF DEAN ROSALES, P.O. Box 85 Jamul, California, 91935 | ) ) ) ) |
| | ) |
| KAREN TOGGERY, ESTATE OF MARIE TOGGERY, ESTATE OF MATTHEW TOGGERY, P.O. Box 375 Jamul, California, 91935 | ) ) ) ) ) |
| | ) |
| JUMAL INDIAN VILLAGE, a federally Recognized Indian tribe, P.O. Box 612, Jamul, California  91935 | ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) |
| vs. | ) ) |
| | ) |
| UNITED STATES OF AMERICA, Department of Justice 950 Pennsylvania Avenue, NW Washington, D.C.  20530-0001, and its divisions, including, but not limited to, DEPARTMENT OF THE INTERIOR, by and through Secretary DIRK KEMPTHORNE, in his official capacity, 1849 C Street, NW, Washington, D.C.  20240, BUREAU OF INDIAN AFFAIRS, by and through Assistant Secretary of Indian Affairs, JAMES E. CASON, in his official capacity, 1849 C Street, NW, Washington D.C.  20240, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) ) |

**CASE NUMBER**      1:07 CV 00162

**JUDGE:**              **Rosemary Collyer**

**DECK TYPE:**       **Tribal Rights**

**DATE STAMP:**


DECLARATION OF WALTER ROSALES
IN SUPPORT OF PLAINTIFFS' MOTION
FOR **PRELIMINARY INJUNCTION**

I, WALTER J. ROSALES declare:

1.      I have personal knowledge of the matters set forth herein and if called upon as a witness I would and could competently testify thereto.

2.      I am a Native American resident of San Diego County of one-half or more degree of California Indian blood, and am an enrolled member and lawfully elected officer of the Plaintiff, JAMUL INDIAN VILLAGE (hereinafter VILLAGE), and duly authorized to file this action on behalf of the VILLAGE, which is a tribal governmental entity of Kumeyaay Indians, recognized by the United States' Congress, governed by a Constitution adopted on May 9, 1981, pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. 461 et seq., and located in Jamul, California.

3.      I am also a lineal descendant and son of Native American, Helen Cuero, the personal representative of my mother's estate, the Estate of Helen Cuero, and a lienal descendant with ownership and control of her human remains and my un-named baby brother's human remains and Native American cultural items, as set forth in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001-2.

4.      For nearly 100 years, the Native American families of which I am a lineal descendant have inhumed, interred and deposited hundreds of their deceased family members' human remains, and items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, on three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

5.      I have personal knowledge that at least 20 Native Americans whose human

1

remains, and items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, have been interred and deposited on three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

6.     Following my un-named baby brother's death at childbirth in 1948 his human remains, and items associated with his human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, were buried near our house, in a private and confidential location, on what is now known as parcel 597-080-04.

7.     I was also personally present in 1995 when, following my mother, Helen Cuero's passing and cremation, her human remains were inhumed, interred, and deposited, along with the items associated with her human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, in private and confidential locations across nearly all of what are now known as Parcels 597-080-04 and 597-080-06.

8.     I was also personally present in August 2006 when, following my son, Dean Rosales' untimely passing and cremation, his human remains were inhumed, interred, and deposited, along with the items associated with his human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, in private and confidential locations across what are now known as Parcels 597-080-04 and 597-080-06.

9.     On September 26, 1912, J.D. Spreckel's Coronado Beach Company deeded 2.21

2

acres of land in Jamul, California, to the Roman Catholic Bishop of Monterey and Los Angeles, a corporate in sole of the State of California, "to be used for the purposes of an Indian graveyard and approach thereto," as set forth in Exhibits A and B hereto, and now known as parcels 597-080-05 and 597-080-06.

10.    From my birth, I have been a lineal descendant of the Native American families that have occupied and possessed that cemetery and the property contiguous to that Indian graveyard in Jamul, California, for more than 100 years, which private property was owned at various times since 1831 by Mexican Governor and Don, Pio Pico, U.S. General Henry S. Burton and his widow Maria Amparo Ruiz de Burton, John D. Spreckel's Coronado Beach Company, and later by the Lawrence and Donald Daley families, and the Catholic Diocese, as reflected in Exhibits A, B, C and D hereto.

11.    During the latter part of the 1970's, I and my family negotiated a gift of that certain property of which we were in possession from the Daley families and the Catholic Diocese. The Daley families agreed to convey title to the land then occupied by my family to the United States in trust for the explicit benefit of those half-blood Jamul Indians then occupying the property. The Daley families specifically agreed to this form of conveyance in order to provide a place for I and my family to live in perpetuity, and to provide a place protected by the United States as a trustee to protect the living and the dead against all forms of alienation, trespass, desecration, mutilation, disinterment, and any other infringement.

12.    On December 27, 1978, Lawrence and Donald Daley, recorded a grant deed of parcel 597-080-01, consisting of approximately 4.66 acres, to "the United States of America in trust for such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate," as set forth in Exhibit D hereto.

3

13.    I and my family, who were then possessing and residing on parcel 597-080-01, now known as 597-080-04, were designated by the Secretary of the Interior through his subordinates, as the beneficial owners thereof, by locating us on the parcel, providing for our needs, acquiescing in our continued presence on, and use of, the parcel for more than 28 years, in building and/or providing houses for us on the parcel, and in providing us with services usually accorded to Indians living on such property, and further providing strong and uncontroverted evidence of our designation as the beneficial owners of parcel 597-080-01, now known as 5907-080-04, as a matter of law, within the meaning of the grant deed, and as set forth in <u>Coast Indian Community v. U.S.</u> (Fed. Cl. 1977) 550 F.2d 639, <u>United States v. Assiniboine Tribe</u> (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 <u>Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974</u> at 668, 724, 747, and 1479.

14.    The December 27, 1978 grant deed was recorded nearly three years before the Constitution of the Jamul Indian Village was adopted, and three years before the Congress of the United States recognized the creation of the Jamul Indian Village, as an Indian tribe under the Indian Reorganization Act of 1934. This deed was accepted by the United States on December 21, 1978, pursuant to Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. 465, as reflected on Exhibit C.   Parcel 597-080-01, now known as parcel 597-080-04, was not acquired for a tribe.

15.    On May 9, 1981, I was Chairperson of those Indians seeking to re-organize as the VILLAGE, and certified on behalf of the election board, that sixteen of twenty three registered voters adopted the VILLAGE constitution. The United States acknowledged the adoption of the constitution on July 7, 1981, and the Congress of the United States recognized the VILLAGE by publication in the Federal Register on November 24, 1982. 47 Fed. Reg. 53130, 53132 (Nov. 24,

.4

1982).

16.    When the VILLAGE was created on May 9, 1981, under the terms of the Indian

Reorganization Act of 1934, it was a landless governmental entity. To date, the United States

has not set aside or created an Indian reservation for the VILLAGE. The United States

Department of Interior, Bureau of Indian Affairs, August 3, 2000 response to our Freedom of

Information Act (FOIA) request, confirms that the "current trust parcel was accepted into trust in

1978 for Jamul Indians of ½ degree (4.66 acres)," and that there is "no record of the 1978 trust

parcel being known as the Jamul Village," as reflected in Exhibit E hereto.

17.    On or about December 20, 2005 we received a copy of Governor Arnold

Schwarzenegger's Legal Affairs Secretary's letter to the Jamul Indian Village. Exhibit F hereto.

18.    The Catholic Diocese agreed to deed a portion of the Indian Cemetery to the

VILLAGE for the purpose of maintaining the road and utilities to the remainder of the Indian

cemetery, as required by, and provided in, the original Coronado Beach Company deed to the

Catholic Diocese. On July 27, 1982, the Roman Catholic Bishop of San Diego, successor to the

Roman Catholic Bishop of Monterey and Los Angeles, a corporation sole, recorded a grant deed

of a portion of parcel 597-080-02, now known as 597-080-05, consisting of approximately 1.372

acres, to "the United States of America in trust for the Jamul Indian Village," as set forth in

Exhibit G hereto. Excepted therefrom was that portion of the Coronado Beach Company land

grant, now known as parcel 597-080-06, consisting of approximately .838 acres where some of

the Native American human remains were interred, to which the Catholic Diocese retains title.

The Catholic Diocese also explicitly reserved "to [itself and its] successors or assigns an

easement for (1) utility service lines and (2) ingress and egress over the existing well-traveled

road," which extends the entire length of the north edge of the 1.372 acres, and which the San

Diego County tax assessor's maps continue to describe as "the Indian cemetery," as set forth in Exhibit H hereto.

19.    By virtue of these afore-described acts, I and my family, along with our now recognized tribe, have located a Native American sanctified cemetery, place of worship, religious and ceremonial site, and sacred shrine, as defined by Cal. Pub. Res. Code 5097.9, on the parcels now known as 597-080-04, 597-080-05, and 597-080-06.

20.    On or about December 10, 2005, all of the then residents of Parcels 597-080-04 and 597-080-05, and 597-080-06, except myself, Karen Toggery and Vivian Flores, abandoned their residences on these parcels, and have been living continuously in other locations in San Diego County.

21.    Between December 18, 2005 and before October 9, 2006, I authorized our lawyer to put the Defendants and a faction of individuals, many of whom are not lawful members of the Jamul Indian Village, who have contracted with a grading contractor to unlawfully build a gambling casino on our parcel, now known as 597-080-04, on written notice of my ownership and control, as a lineal descendant, of my deceased Native American family members' human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, that for more than 100 years have been inhumed, interred and deposited on these three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

22.    Despite such written notice from me, a Notice of Intent Associated with Construction Activity has been prepared for the California State Water Resources Control Board

and executed on behalf of a general contractor, known as McCarthy Building Companies, Inc., indicating that grading will take place during January 2007, on 7.2 acres of an 8.9 acre construction site for a 14 story gambling casino and hotel, among parcels now known as 597-080-04, 597-080-05 and 597-080-06.

23.    No permit required by Title 16 U.S.C. 470cc has been posted by any federal land manager on the property for anyone to grade or excavate parcels now known as 597-080-04, 597-080-05 and 597-080-06.  Nor can any such permit be granted for anyone to grade or excavate by any federal land manager under 16 U.S.C. 470cc, since I am one of the Indian beneficial owners of 597-080-04, and have not granted any consent for anyone to grade or excavate on said parcel.

24.    Nor to my knowledge has the San Diego County coroner been notified by any grading contractor of the intent to excavate and/or disturb human remains or the site of any nearby area reasonably suspected to overlie adjacent human remains, as required by Cal. Health & Safety Code 7050.5; nor to my knowledge has the Native American Heritage Commission been notified, until now, of the existence of Native American human remains and associated Native American artifacts, grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, on said parcels, as required by Cal. Health & Safety Code 7050.5.

25.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause irreparable damage to my family's Native American human remains, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, by knowingly and/or willfully mutilating,

7

disinterring, wantonly disturbing, and willfully removing them without authority of law.

26.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will also cause irreparable damage to, and interfere with, my free expression and exercise of my religious beliefs, protected by the United States Constitution and the California Constitution, and shall cause severe and irreparable damage to the sanctified cemetery, place of worship, religious or ceremonial site, and sacred shrines located on said parcels.

27.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause me severe personal, physical and bodily injury, including severe emotional distress, all in excess of the jurisdictional limit of this court. Such acts will also unduly interfere with my civil rights to due process and equal protection of the laws. I will be greatly and irreparably damaged by reason of Defendants' infringement and violation of these civil rights, and unless Defendants are enjoined by this court, said acts will further violate my civil rights, and further irreparably harm me. These ongoing and continuing injuries cannot be fully compensated in damages and I am without an adequate remedy at law without the imposition of the requested equitable injunctive relief.

28.    I have been informed and believe that I am required by Cal. Pub. Res. Code 5097.98, as amended September 30, 2006, as the beneficial landowner and the lineal descendant in control of my families' human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, that have been interred and deposited on the three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06, to protect their Native American human remains,

8

whether an inhumation or cremation, and in any state of decomposition or skeletal completeness, and that I, as the beneficial landowner, shall ensure that the immediate vicinity, according to generally accepted cultural or archaeological standards or practices where the Native American human remains are located, is not damaged or disturbed by further development activity, so long as it is my preference as a lineal descendant to preserve the Native American human remains and associated items "in place," and that any items associated with the human remains that are placed or buried with the Native American human remains are to be treated in the same manner as the remains.

29.    It is my preference, as a lineal descendant of my departed family members, to preserve their Native American human remains and associated cultural items "in place," since I am one of the lineal descendants with ownership and control of my predecessors' human remains and Native American and associated cultural items, as set forth in 25 U.S.C. 3001-2, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, which have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06 over nearly the last 100 years.

9

30.    I have been harassed in retaliation for asserting my rights to protect my lineal forbears from the mutilation, desecration and disinterment caused by grading the subject parcels to construct a 14 story gambling casino and hotel. I have been deprived of my entitled share of federal benefits and revenue sharing due to my opposition to any grading of the subject parcels. I therefore have strong evidence that I will be further harassed without the requested temporary, preliminary and permanent injunctive relief requested.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 19th day of January 2007 in Jamul, California.

_Walter J. Rosales_
Walter Rosales

10

William A. Isaacson, Esq., D.C. Bar No. 414788
Tonya Chutkan, Esq., D.C. Bar No. 420478
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W., Ste. 800
Washington, District of Columbia 20015
Tel (202) 237-2727
Fax (202) 237-6131

Patrick D. Webb, Esq., CA State Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, CA 92101
Tel (619) 236-1650
Fax (619) 236-1283

Attorneys for Plaintiffs

### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER J. ROSALES, ESTATE HELEN CUERO, ESTATE OF DEAN ROSALES, P.O. Box 85 Jamul, California, 91935 ) ) ) ) ) | **CASE NUMBER**    1:07 CV 00162 |

WALTER J. ROSALES, ESTATE )
HELEN CUERO, ESTATE OF DEAN )
ROSALES, P.O. Box 85 Jamul, California, )
91935 )
                                     )
KAREN TOGGERY, ESTATE OF MARIE )
TOGGERY, ESTATE OF MATTHEW )
TOGGERY, P.O. Box 375 Jamul, )
California, 91935 )
                                     )
JUMAL INDIAN VILLAGE, a federally )
Recognized Indian tribe, P.O. Box 612, )
Jamul, California 91935 )
                                     )
          Plaintiffs, )
                                     )
vs. )
                                     )
UNITED STATES OF AMERICA, )
Department of Justice )
950 Pennsylvania Avenue, NW )
Washington, D.C. 20530-0001, )
and its divisions, including, but not limited )
to, DEPARTMENT OF THE INTERIOR, )
by and through Secretary DIRK )
KEMPTHORNE, in his official capacity, )
1849 C Street, NW, )
Washington, D.C. 20240, )
BUREAU OF INDIAN AFFAIRS, by and )
through Assistant Secretary of Indian )
Affairs, JAMES E. CASON, in his official )
capacity, 1849 C Street, NW, Washington )
D.C. 20240, )
                                     )
          Defendants. )

**CASE NUMBER**     1:07 CV 00162

**JUDGE:**     **Rosemary Collyer**

**DECK TYPE:**     **Tribal Rights**

**DATE STAMP:**

**DECLARATION OF KAREN TOGGERY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, KAREN TOGGERY, declare:

1.    I have personal knowledge of the matters set forth herein and if called upon as a witness I would and could competently testify thereto.

2.    I am a Native American resident of San Diego County of one-half or more degree of California Indian blood, and am an enrolled member and lawfully elected officer of the Plaintiff, JAMUL INDIAN VILLAGE (hereinafter VILLAGE), and duly authorized to file this action on behalf of the VILLAGE, which is a tribal governmental entity of Kumeyaay Indians, recognized by the United States' Congress, governed by a Constitution adopted on May 9, 1981, pursuant to the Indian Reorganization Act of 1934, 25 U.S.C. 461 et seq., and located in Jamul, California.

3.    I am also a lineal descendant and daughter of Native American, Marie Toggery, the personal representative of my mother's estate, the Estate of Marie Toggery, and a lienal descendant with ownership and control of her human remains and my son Matthew Tinejero Toggery's human remains and Native American cultural items, as set forth in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001-2.

4.    For nearly 100 years, the Native American families of which I am a lineal descendant have inhumed, interred and deposited hundreds of their deceased family members' human remains, and items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, on three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

5.    I have personal knowledge that at least 20 Native Americans whose human remains, and items associated with their human remains, including, but not limited to grave goods, cultural

1

items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, have been interred and deposited on three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

6.  Following my mother's death 1998 her human remains, and items associated with his human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, were buried near our house, in a private and confidential locations, on what is now known as parcels 597-080-04, 597-080-05 and 597-080-06.

7.  I was also personally present in 2004 when, following my son, Matthew Tinejero Toggery's passing, his human remains were inhumed, interred, and deposited, along with the items associated with his human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, in private and confidential locations on what are now known as Parcels 597-080-04, 597-080-05, and 597-080-06.

8.  On September 26, 1912, J.D. Spreckel's Coronado Beach Company deeded 2.21 acres of land in Jamul, California, to the Roman Catholic Bishop of Monterey and Los Angeles, a corporate in sole of the State of California, "to be used for the purposes of an Indian graveyard and approach thereto," as set forth in Exhibits A and B hereto, and now known as parcels 597-080-05 and 597-080-06.

9.  From my birth, I have been a lineal descendant of the Native American families that have occupied and possessed that cemetery and the property contiguous to that Indian graveyard in

2

Jamul, California, for more than 100 years, which private property was owned at various times since 1831 by Mexican Governor and Don, Pio Pico, U.S. General Henry S. Burton and his widow Maria Amparo Ruiz de Burton, John D. Spreckel's Coronado Beach Company, and later by the Lawrence and Donald Daley families, and the Catholic Diocese, as reflected in Exhibits A, B, C and D hereto.

10.    During the latter part of the 1970's, my family negotiated a gift of that certain property of which we were in possession from the Daley families and the Catholic Diocese. The Daley families agreed to convey title to the land then occupied by my family to the United States in trust for the explicit benefit of those half-blood Jamul Indians then occupying the property. The Daley families specifically agreed to this form of conveyance in order to provide a place for I and my family to live in perpetuity, and to provide a place protected by the United States as a trustee to protect the living and the dead against all forms of alienation, trespass, desecration, mutilation, disinterment, and any other infringement.

11.    On December 27, 1978, Lawrence and Donald Daley, recorded a grant deed of parcel 597-080-01, consisting of approximately 4.66 acres, to "the United States of America in trust for such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate," as set forth in Exhibit D hereto.

12.    My family, who was then possessing and residing on parcel 597-080-01, now known as 597-080-04, was designated by the Secretary of the Interior through his subordinates, as the beneficial owners thereof, by locating us on the parcel, providing for our needs, acquiescing in our continued presence on, and use of, the parcel for more than 28 years, in building and/or providing houses for us on the parcel, and in providing us with services usually accorded to Indians living on such property, and further providing strong and uncontroverted evidence of our designation as the

3

beneficial owners of parcel 597-080-01, now known as 5907-080-04, as a matter of law, within the meaning of the grant deed, and as set forth in <u>Coast Indian Community v. U.S.</u> (Fed. Cl. 1977) 550 F.2d 639, <u>United States v. Assiniboine Tribe</u> (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 <u>Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974</u> at 668, 724, 747, and 1479.

13.    The December 27, 1978 grant deed was recorded nearly three years before the Constitution of the Jamul Indian Village was adopted, and three years before the Congress of the United States recognized the creation of the Jamul Indian Village, as an Indian tribe under the Indian Reorganization Act of 1934. This deed was accepted by the United States on December 21, 1978, pursuant to Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. 465, as reflected on Exhibit C.   Parcel 597-080-01, now known as parcel 597-080-04, was not acquired for a tribe.

14.    On May 9, 1981, Walter Rosales was Chairperson of those Indians seeking to re-organize as the VILLAGE, and certified on behalf of the election board, that sixteen of twenty three registered voters adopted the VILLAGE constitution. The United States acknowledged the adoption of the constitution on July 7, 1981, and the Congress of the United States recognized the VILLAGE by publication in the Federal Register on November 24, 1982. 47 Fed. Reg. 53130, 53132 (Nov. 24, 1982).

15.    When the VILLAGE was created on May 9, 1981, under the terms of the Indian Reorganization Act of 1934, it was a landless governmental entity.  To date, the United States has not set aside or created an Indian reservation for the VILLAGE. The United States Department of Interior, Bureau of Indian Affairs, August 3, 2000 response to our Freedom of Information Act (FOIA) request, confirms that the "current trust parcel was accepted into trust in 1978 for Jamul

4

Indians of ½ degree (4.66 acres)," and that there is "no record of the 1978 trust parcel being known as the Jamul Village," as reflected in Exhibit E hereto.

16.    On or about December 20, 2005 we received a copy of Governor Arnold Schwarzenegger's Legal Affairs Secretary's letter to the Jamul Indian Village. Exhibit F hereto.

17.    The Catholic Diocese agreed to deed a portion of the Indian Cemetery to the VILLAGE for the purpose of maintaining the road and utilities to the remainder of the Indian cemetery, as required by, and provided in, the original Coronado Beach Company deed to the Catholic Diocese. On July 27, 1982, the Roman Catholic Bishop of San Diego, successor to the Roman Catholic Bishop of Monterey and Los Angeles, a corporation sole, recorded a grant deed of a portion of parcel 597-080-02, now known as 597-080-05, consisting of approximately 1.372 acres, to "the United States of America in trust for the Jamul Indian Village," as set forth in Exhibit G hereto. Excepted therefrom was that portion of the Coronado Beach Company land grant, now known as parcel 597-080-06, consisting of approximately .838 acres where some of the Native American human remains were interred, to which the Catholic Diocese retains title. The Catholic Diocese also explicitly reserved "to [itself and its] successors or assigns an easement for (1) utility service lines and (2) ingress and egress over the existing well-traveled road," which extends the entire length of the north edge of the 1.372 acres, and which the San Diego County tax assessor's maps continue to describe as "the Indian cemetery," as set forth in Exhibit H hereto.

18.    By virtue of these afore-described acts, I and my family, along with our now recognized tribe, have located a Native American sanctified cemetery, place of worship, religious and ceremonial site, and sacred shrine, as defined by Cal. Pub. Res. Code 5097.9, on the parcels now known as 597-080-04, 597-080-05, and 597-080-06.

19.    On or about December 10, 2005, all of the then residents of Parcels 597-080-04 and 597-080-05, and 597-080-06, except myself, Karen Toggery and Vivian Flores, abandoned their residences on these parcels, and have been living continuously in other locations in San Diego County.

20.    Between December 18, 2005 and before October 9, 2006, I authorized our lawyer to put the Defendants and a faction of individuals, many of whom are not lawful members of the Jamul Indian Village, who have contracted with a grading contractor to unlawfully build a gambling casino on our parcel, now known as 597-080-04, on written notice of my ownership and control, as a lineal descendant, of my deceased Native American family members' human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, that for more than 100 years have been inhumed, interred and deposited on these three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

21.    Despite such written notice from me, a Notice of Intent Associated with Construction Activity has been prepared for the California State Water Resources Control Board and executed on behalf of a general contractor, known as McCarthy Building Companies, Inc., indicating that grading will take place during January 2007, on 7.2 acres of an 8.9 acre construction site for a 14 story gambling casino and hotel, among parcels now known as 597-080-04, 597-080-05 and 597-080-06.

22.    No permit required by Title 16 U.S.C. 470cc has been posted by any federal land manager on the property for anyone to grade or excavate parcels now known as 597-080-04, 597-

6

080-05 and 597-080-06. Nor can any such permit be granted for anyone to grade or excavate by any federal land manager under 16 U.S.C. 470cc, since I am one of the Indian beneficial owners of 597-080-04, and have not granted any consent for anyone to grade or excavate on said parcel.

23.    Nor to my knowledge has the San Diego County coroner been notified by any grading contractor of the intent to excavate and/or disturb human remains or the site of any nearby area reasonably suspected to overlie adjacent human remains, as required by Cal. Health & Safety Code 7050.5; nor to my knowledge has the Native American Heritage Commission been notified, until now, of the existence of Native American human remains and associated Native American artifacts, grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, on said parcels, as required by Cal. Health & Safety Code 7050.5.

24.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause irreparable damage to my family's Native American human remains, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, by knowingly and/or willfully mutilating, disinterring, wantonly disturbing, and willfully removing them without authority of law.

25.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will also cause irreparable damage to, and interfere with, my free expression and exercise of my religious beliefs, protected by the United States Constitution and the California Constitution, and shall cause severe and irreparable damage to the sanctified cemetery, place of worship, religious or ceremonial site, and sacred shrines located on said parcels.

7

26.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause me severe personal, physical and bodily injury, including severe emotional distress, all in excess of the jurisdictional limit of this court. Such acts will also unduly interfere with my civil rights to due process and equal protection of the laws. I will be greatly and irreparably damaged by reason of Defendants' infringement and violation of these civil rights, and unless Defendants are enjoined by this court, said acts will further violate my civil rights, and further irreparably harm me. These ongoing and continuing injuries cannot be fully compensated in damages and I am without an adequate remedy at law without the imposition of the requested equitable injunctive relief.

27.    I have been informed and believe that I am required by Cal. Pub. Res. Code 5097.98, as amended September 30, 2006, as the beneficial landowner and the lineal descendant in control of my families' human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, that have been interred and deposited on the three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06, to protect their Native American human remains, whether an inhumation or cremation, and in any state of decomposition or skeletal completeness, and that I, as the beneficial landowner, shall ensure that the immediate vicinity, according to generally accepted cultural or archaeological standards or practices where the Native American human remains are located, is not damaged or disturbed by further development activity, so long as it is my preference as a lineal descendant to preserve the Native American human remains and associated items "in place," and that any items associated with the human remains that are placed or buried with the Native American human remains are to be treated in the same manner as the remains.

8

28.    It is my preference, as a lineal descendant of my departed family members, to preserve their Native American human remains and associated cultural items "in place," since I am one of the lineal descendants with ownership and control of my predecessors' human remains and Native American and associated cultural items, as set forth in 25 U.S.C. 3001-2, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. 5097.9-5097.99, and 25 U.S.C. 3001, which have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06 over nearly the last 100 years.

29.    [Unused]

9

30.    I have been harassed in retaliation for asserting my rights to protect my lineal forbears from the mutilation, desecration and disinterment caused by grading the subject parcels to construct a 14 story gambling casino and hotel. I have had my mdedical benefits with the So. Indian Health Clinic severely restricted, and I have been deprived of my entitled share of federal benefits and revenue sharing due to my opposition to any grading of the subject parcels. I therefore have strong evidence that I will be further harassed without the requested temporary, preliminary and permanent injunctive relief requested.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 19th day of January 2007 in Jamul, California.

Karen Toggery

William A. Isaacson, Esq., D.C. Bar No. 414788
Tonya Chutkan, Esq., D.C. Bar No. 420478
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W., Ste. 800
Washington, District of Columbia 20015
Tel (202) 237-2727
Fax (202) 237-6131

Patrick D. Webb, Esq., CA State Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, CA 92101
Tel (619) 236-1650
Fax (619) 236-1283

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER J. ROSALES, ESTATE HELEN CUERO, ESTATE OF DEAN ROSALES, P.O. Box 85 Jamul, California, 91935 ) ) ) ) ) | **CASE NUMBER**   1:07 CV 00162 |
| | **JUDGE:**   **Rosemary Collyer** |
| KAREN TOGGERY, ESTATE OF MARIE ) TOGGERY, ESTATE OF MATTHEW ) TOGGERY, P.O. Box 375 Jamul, ) California, 91935 ) ) | **DECK TYPE:**   **Tribal Rights** |
| | **DATE STAMP:** |
| JUMAL INDIAN VILLAGE, a federally ) Recognized Indian tribe, P.O. Box 612, ) Jamul, California 91935 ) ) | **DECLARATION OF PATRICK D. WEBB IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| UNITED STATES OF AMERICA, ) Department of Justice ) 950 Pennsylvania Avenue, NW ) Washington, D.C. 20530-0001, ) and its divisions, including, but not limited ) to, DEPARTMENT OF THE INTERIOR, ) by and through Secretary DIRK ) KEMPTHORNE, in his official capacity, ) 1849 C Street, NW, ) Washington, D.C. 20240, ) BUREAU OF INDIAN AFFAIRS, by and ) through Assistant Secretary of Indian ) Affairs, JAMES E. CASON, in his official ) capacity, 1849 C Street, NW, Washington ) D.C. 20240, ) ) | |
| Defendants. ) ) | |

I, PATRICK D. WEBB, declare:

1.     I am an attorney licensed to practice law before all the courts of the State of California, and a shareholder and employee of Webb & Carey, A.P.C.., and counsel for Plaintiffs. I have personal knowledge of the matters set forth herein and if called upon as a witness I would and could competently testify thereto.

2.     On February 2, 2007, I was told by members of the faction of Native Americans, that oppose my clients' claims in this action and oppose their claims to be the lawfully elected leaders of the Jamul Indian Village, and their counsel, that they intended to evict Walter Rosales and Karen Toggery on February 23, 2007, in order to commence grading on Parcel 597-080-04 as soon as they were removed from the premises, as previously reported in the San Diego Union on January 18, 2007, page B1.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 2nd day of February 2007 in San Diego, California.

/s/ Patrick D. Webb
Patrick D. Webb

1

William A. Isaacson, Esq., D.C. Bar No. 414788
Tonya Chutkan, Esq., D.C. Bar No. 420478
**BOIES, SCHILLER & FLEXNER LLP**
5301 Wisconsin Avenue, N.W., Ste. 800
Washington, District of Columbia  20015
Tel (202) 237-2727
Fax (202) 237-6131


Patrick D. Webb, Esq., CA State Bar No. 82857
**WEBB & CAREY**
401 B Street, Suite 306
San Diego, CA  92101
Tel (619) 236-1650
Fax (619) 236-1283

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER J. ROSALES, ESTATE HELEN CUERO, ESTATE OF DEAN ROSALES, P.O. Box 85 Jamul, California, 91935 )<br><br>KAREN TOGGERY, ESTATE OF MARIE TOGGERY, ESTATE OF MATTHEW TOGGERY, P.O. Box 375 Jamul, California, 91935 )<br><br>JUMAL INDIAN VILLAGE, a federally Recognized Indian tribe, P.O. Box 612, Jamul, California  91935 )<br><br>Plaintiffs, )<br><br>vs. )<br><br>UNITED STATES OF AMERICA, Department of Justice 950 Pennsylvania Avenue, NW Washington, D.C.  20530-0001, and its divisions, including, but not limited to, DEPARTMENT OF THE INTERIOR, by and through Secretary DIRK KEMPTHORNE, in his official capacity, 1849 C Street, NW, Washington, D.C.  20240, BUREAU OF INDIAN AFFAIRS, by and through Assistant Secretary of Indian Affairs, JAMES E. CASON, in his official capacity, 1849 C Street, NW, Washington D.C.  20240, )<br><br>Defendants. ) | **CASE NUMBER**    1:07 CV 00162<br><br>**JUDGE:**              **Rosemary Collyer**<br><br>**DECK TYPE:**      **Tribal Rights**<br><br>**DATE STAMP:**<br><br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

DEPARTMENT OF INTERIOR ("DOI"), and BUREAU OF INDIAN AFFAIRS ("BIA"), are hereby preliminarily enjoined, as follows:

1.      That the Defendants, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be preliminarily enjoined from any grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities, allowing any grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities, on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, and otherwise mutilating, disinterring, removing, excavating, and disturbing in any way, any Native American human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06;

2.      That the United States and its agencies, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be preliminarily enjoined from allowing any grading, excavating, operating heavy equipment, moving dirt and/or gravel, or any other construction activities, on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, and otherwise allowing any mutilation, disinterment, removal, excavation, or disturbance of any Native American human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04,

597-080-05 and 597-080-06;

      3.     That the United States and its agencies, and their officers, agents, servants, employees and attorneys and all persons in active concert with them, or any of them, be preliminarily enjoined from failing to preserve "in place" any Native Americans human remains, and the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, to protect them from mutilation, disinterment, removal, excavation, and disturbance.

Dated: _____

 

                                          _____

                                          United States District Judge