# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER J. ROSALES, ESTATE OF<br>HELEN CUERO, ESTATE OF DEAN<br>ROSALES, P.O. Box 85, Jamul,<br>California, 91935 | **CASE NUMBER:**   1:07-cv-00162 |
| KAREN TOGGERY, ESTATE OF MARIE<br>TOGGERY, ESTATE OF MATTHEW<br>TOGGERY, P.O. Box 375, Jamul,<br>California, 91935 | **JUDGE:**   Judge Rosemary M. Collyer<br><br>**DECK TYPE:**   Tribal Rights<br><br>**DATE STAMP:** |
| JAMUL INDIAN VILLAGE, a federally<br>recognized Indian tribe, P.O. Box 612<br>Jamul, California, 91935 | |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA,<br>DEPARTMENT OF THE INTERIOR, by<br>and through DIRK KEMPTHORNE,<br>in his official capacity, | |
| BUREAU OF INDIAN AFFAIRS, by<br>and through Assistant Secretary of<br>Indian Affairs, JAMES E. CASON. | |
| Defendants. | |

## DEFENDANTS' MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404(a), Defendants respectfully move this Court to transfer this case to the United States District Court for the Southern District of California. There is no appreciable connection between this case and the District of Columbia and, for the reasons stated in the accompanying Memorandum of Law in Support of Motion to Transfer Venue, the matter should be transferred to the United States District Court for the Southern District of California.

This motion has been discussed with counsel for Plaintiffs, pursuant to Local Rule 7(m) of the United States District Court for the District of Columbia.  Plaintiffs' counsel stated that they would not consent to this motion.

February 9, 2007.

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
SAMANTHA KLEIN
ALEX KRIEGSMAN
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division

By:     /s/ Alex Kriegsman_____
        Alex Kriegsman
        Trial Attorney
        United States Department of Justice
        Natural Resources Section
        P.O. Box 663
        Washington, D.C.  20044-0663
        Tel: (202) 305-3022
        Facsimile: (202) 305-0506

        Of Counsel:
        Tobias Halvarson, Attorney-Advisor
        U.S. Department of the Interior
        1849 C Street, N.W.
        Washington, D.C.  20240
        Tel: (202) 208-6930
        Facsimile: (202) 219-1791

        ATTORNEYS FOR DEFENDANTS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WALTER J. ROSALES, ESTATE OF )
HELEN CUERO, ESTATE OF DEAN )
ROSALES, P.O. Box 85, Jamul, )
California, 91935 )
  )
KAREN TOGGERY, ESTATE OF MARIE )
TOGGERY, ESTATE OF MATTHEW )
TOGGERY, P.O. Box 375, Jamul, )
California, 91935 )
  )
JAMUL INDIAN VILLAGE, a federally )
recognized Indian tribe, P.O. Box 612 )
Jamul, California, 91935 )
  )
        Plaintiffs, )
  )
        v. )
  )
UNITED STATES OF AMERICA, )
DEPARTMENT OF THE INTERIOR, by )
and through DIRK KEMPTHORNE, )
in his official capacity, )
  )
BUREAU OF INDIAN AFFAIRS, by )
and through Assistant Secretary of )
Indian Affairs, JAMES E. CASON. )
  )
        Defendants. )
_____)

**CASE NUMBER:**   1:07-cv-00162

**JUDGE:**   Judge Rosemary M. Collyer

**DECK TYPE:**   Tribal Rights

**DATE STAMP:**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE

February 9, 2007.

        Respectfully submitted,

        MATTHEW J. MCKEOWN
        Acting Assistant Attorney General
        SAMANTHA KLEIN
        ALEX KRIEGSMAN
        Trial Attorneys

United States Department of Justice
Environment and Natural Resources Division

By:     */s/ Alex Kriegsman*_____
        Alex Kriegsman
        Trial Attorney
        United States Department of Justice
        Natural Resources Section
        P.O. Box 663
        Washington, D.C.  20044-0663
        Tel: (202) 305-3022
        Facsimile: (202) 305-0506

        Of Counsel:
        Tobias Halvarson, Attorney-Advisor
        U.S. Department of the Interior
        1849 C Street, N.W.
        Washington, D.C.  20240
        Tel: (202) 208-6930
        Facsimile: (202) 219-1791

        ATTORNEYS FOR DEFENDANTS

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE**

**PRELIMINARY STATEMENT**

Plaintiffs, residents of San Diego County, California, claim to be members of the federally-recognized tribe of the Jamul Indian Village (the "Tribe"), and bring this action seeking declaratory and injunctive relief.[1]  Plaintiffs' Complaint alleges that their family members' human remains and related items are located on three parcels of land in San Diego County, California.  Complaint ¶ 9.  Plaintiffs further allege that other parties are planning to build a casino on this land, and that a notice of intent of construction activity has been prepared for the California State Water Resources Control Board and executed on behalf of a California contractor.  ¶ 27.

Plaintiffs' Complaint alleges two counts.  The first count alleges violations of California state law.  The second count alleges that Plaintiffs are the beneficial owners of the land at issue and that third parties will be trespassing on this land.  The nature of the ownership of the land at issue has been previously litigated in the district court for the Southern District of California.  In 2001, these same Plaintiffs filed an action in the Southern District of California making nearly identical claims regarding beneficial ownership of one of the parcels at issue here – identified as 597-080-04.  And on February 14, 2002, that court issued an order finding that this parcel is held in trust for the beneficial use of the Tribe, and not for any individuals, including Plaintiffs.  See Rosales v. United States, 01-cv-951, Feb. 14, 2002, Slip Op. at 13-14, attached as Exhibit E.  The Ninth Circuit, in an unpublished decision, affirmed, holding that the action brought by the individual plaintiffs must be dismissed for failure to join the Tribe as a necessary and

---

[1]Plaintiffs also purport to bring this action on behalf of the Tribe.

indispensable party, because, among other things, the individual plaintiffs were not the Tribe, and claims regarding beneficial ownership could not be decided in the absence of the Tribe.  See Rosales v. United States, 73 Fed.Appx. 913, 914, 2003 WL 21920015 (9th Cir. 2003).

Plaintiffs allege that the planned construction activity will cause irreparable damage to Plaintiffs' family members' human remains and ask this Court to enjoin Defendants from "failing to preserve in place" these remains.  ¶ 30, Prayer for Relief ¶ 2.  Plaintiffs also ask this Court to enjoin Defendants from allowing any construction activity on the land.  Prayer for Relief ¶¶ 1, 2.  Plaintiffs further ask that this Court declare that one parcel, identified as 597-080-04, remains in trust by the United States for Plaintiffs' benefit.  Prayer ¶ 3.  Because the Southern District of California is the more appropriate venue for this action, Defendants respectfully move this Court to transfer venue to that district.

28 U.S.C. section 1404(a) gives district courts broad discretion to transfer an action to another federal forum when the action may have been brought originally in the other forum and the other forum is more appropriate in light of the convenience of the parties and witnesses and the interests of justice.  Such a transfer is appropriate here.  Plaintiffs are residents of the Southern District of California (¶ 1), the Tribe that Plaintiffs claim to belong to is located in the Southern District of California (id.), and the parcels of land at issue are located in the Southern District of California (¶¶ 9-11).  In addition, Plaintiffs' counsel, Patrick Webb, is located in the Southern District California, and Plaintiffs' Complaint is based, in large part, on California law.  ¶¶ 2, 5, 9, 10, 23, 24, 26, 29-31, 35-42, 53.  And there are several officials from Defendant Bureau of Indian Affairs ("BIA"), with knowledge of the underlying facts of Plaintiffs' claims,

-2-

who are located in California.[2]  On the contrary, the Complaint does not allege any particular

connection between this case, or the requested relief, and the District of Columbia.  Neither

Plaintiffs, the parcels at issue, or any potential witnesses are located in Washington, D.C.

## ARGUMENT

### I.     Transfer of this Case to the Southern District of California Is Appropriate under 28 U.S.C. § 1404.

28 U.S.C. § 1404(a) affords the Court wide discretion to determine the appropriate venue

of a case based on the plaintiff's claims and the issues to be litigated.

> (a) For the convenience of the parties and witnesses, in the interest of justice, a
> district court may transfer any civil action to any other district or division where it
> might have been brought.

Section 1404(a) is intended to facilitate transfer of actions to a more appropriate federal

forum.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981); Van Dusen v. Barrack, 376

U.S. 612, 616 (1964).  In general, a district court acting pursuant to 28 U.S.C. § 1404(a) may

transfer an action to another federal forum if two requirements are met.  First, as a threshold

matter, the proposed transferee district must be one in which the action might have been brought

originally.  See DeLoach v. Phillip Morris Companies, 132 F. Supp. 2d 22, 24 (D.D.C. 2000).

Second, the Court must then decide, in the exercise of its discretion, whether the transfer is

warranted.  In making the determination whether transfer is warranted, the statute requires the

Court to examine three factors: (1) the convenience of the parties; (2) the convenience of the

witnesses; and (3) the interests of justice.  The Court has "broad discretion" to order transfer

---

[2]James Fletcher, Superintendent of the Southern California Agency is in Riverside, California;
and Clay Gregory, Regional Director for the Pacific Region and Dan Hall, Regional
Archaeological Director are in Sacramento, California.

under this standard.  In re Scott, 709 F.2d 717, 720 (D.C. Cir. 1983).  See also Norwood v.

Kirkpatrick, 349 U.S. 29 (1955).  An analysis of the Section 1404(a) factors demonstrate that

transfer to the Southern District of California is appropriate here.

### A.    The Transferee Forum in the Southern District of California Is One Where the Case Could Have Been Brought.

A "threshold consideration" in determining the appropriateness of transfer under

§ 1404(a) is whether the action "might have been brought" in the transferee district.  Nichols v.

U.S. Bureau of Prisons, 895 F. Supp. 6, 8 (D.D.C. 1995); see also Van Dusen, 376 U.S. at 616

(transfer power is expressly limited by the clause restricting transfer to those districts in which

the action "might have been brought").  This element is certainly satisfied in this case because

Plaintiffs are residents of the Southern District of California and the parcels of land that are

identified in Plaintiffs' Complaint are situated in the Southern District of California.  28 U.S.C. §

1391(b) and (e).

### B.    Transfer to the Southern District of California Is in the Interests of Justice.

This case should be transferred to the Southern District of California in the interests of

justice.  "[J]ustice requires that such localized controversies be decided at home."  Citizen

Advocates for Responsible Expansion (I-Care) v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983)

(granting motion to transfer), 790 F. Supp. 311, 324 (D.D.C. 1991) (the interest in having local

controversies decided locally is compelling); Harris v. Republic Airlines, 699 F. Supp. 961, 963

(D.D.C. 1988) (transfer to District of Minnesota warranted where circumstances giving rise to

dispute were centered in Minnesota and there was no nexus between the facts of the case and the

District of Columbia).  Similarly, the parcels of land giving rise to the present dispute are located

-4-

in California. In addition, Plaintiffs' lawsuit is based, in large part, on California law. ¶¶ 2, 5, 9, 10, 23, 24, 26, 29-31, 35-42, 53. Moreover, the parties alleged to be the trespassing parties – over which Plaintiffs ask the Court to require the United States to take action against – are also located in California. ¶¶ 1, 9, 26-27.

Where a case predominantly implicates interests in another state and the current venue is one with which the affected citizens have little to no connection, the Court has found the local interest compelling and ordered transfer. For example, in Shawnee Tribe v. United States, 298 F. Supp. 2d 21 (D.D.C. 2002), at issue was whether or not portions of a military reservation, designated as surplus property by the General Services Administration, were reservation land subject to transfer to Interior to be held in trust for the Tribe. The Court decided that the lawsuit's transfer from the District of Columbia to the United States District Court in Kansas was appropriate, stating that "the most persuasive factor favoring transfer . . . is the local interest in deciding a sizable local controversy at home." Id. at 26. Central to the Court's opinion was that judicial allocation of the subject property would directly impact counties and neighborhoods in that vicinity of Kansas and implicate considerable economic, political, and environmental interests. Id.

In Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82 (D.D.C. 2004), the plaintiff sought venue in the District of Columbia of a dispute involving twenty-one parcels of land in Utah. There, the Court concluded that National Environmental Policy Act considerations were localized interests that "directly touch[ed] local citizens." Id. at 88. The Court granted the Government's transfer motion, stating that "[i]t makes sense that these alleged consequences would be most particularly felt in Utah, and thus that the courts of Utah would have a clear

interest in resolving the dispute." <u>Id.</u> (citing <u>Trout Unlimited v. United States Department of Agriculture</u>, 944 F. Supp. 13, 20 (D.D.C. 1996)).  Here, the ramifications and considerations resulting from review in the District of Columbia would impact California lands and citizens and will not affect lands or citizens of the District of Columbia.

It is also appropriate for this Court to consider laws and regulations implicated in this case which are specific in their application to California.  <u>See</u> <u>Shawnee Tribe</u>, 298 F. Supp. 2d at 27; <u>Southern Utah Wilderness Alliance</u>, 315 F. Supp. 2d at 82.  Again, Plaintiffs' Complaint is largely based on California law.  ¶¶ 2, 5, 9, 10, 23, 24, 26, 29-31, 35-42, 53.  And Plaintiffs have previously litigated the issue of beneficial ownership of these parcels in the Southern District of California.  <u>See</u> Exhibit E.

**C.    Transfer to the Southern District of California Will Serve the Convenience of the Parties and Witnesses.**

Although Plaintiffs have retained local counsel in Washington, D.C., Plaintiffs' lead attorney, Patrick Webb, is located in the Southern District of California.  Plaintiffs are all residents of the Southern District of California, and the Jamul Indian Village is in the Southern District of California.  ¶¶ 1, 9.  Presumably, litigation in the Southern District of California is decidedly more convenient for Plaintiffs.  As set forth above, several BIA officials are located in California.  And the United States is fully prepared to litigate this matter in the Southern District of California.  Furthermore, the state of California and its political subdivisions responsible for the California statutory provisions in issue here are within the jurisdiction of the Southern District of California.  It should also be noted that Plaintiffs have filed a related action against San Diego County and the San Diego County Sheriff's Office in California state court.  <u>See</u>

Exhibit F.  Finally, as noted above, the headquarters of the federally recognized leadership of the Tribe is located in the Southern District of California.  ¶¶ 1, 9.  Thus, in regard to the convenience of the parties (and in the interests of justice), transfer of this case to the Southern District of California is appropriate.

## II.     Plaintiffs' Choice of Forum Is Entitled to Little, If Any, Deference.

While the movant bears the burden of demonstrating that transfer is warranted, when a plaintiff chooses a forum that is not its home – as is the case here – the plaintiff's choice of forum is entitled to far less deference than the choice of a home forum.  See Piper Aircraft Co., 454 U.S. at 255-56; Shawnee Tribe, 298 F. Supp. 2d at 24-25 (The deference that may ordinarily be due a plaintiff's choice of forum is substantially lessened where suit was brought in the plaintiff's non-home forum and transfer is sought to the forum where the plaintiff resides.)

The United States District Court's deference principles in the District of Columbia apply equally to tribal plaintiffs as they do to any non-Indian plaintiff.  See Shawnee Tribe v. United States, 298 F. Supp. 2d 21, 25 (D.D.C. 2002).  See also, e.g., Santee Sioux Tribe of Nebraska v. National Indian Gaming Commission, Civ. No. 99-528, Slip op. at 6-7 (D.D.C. Apr. 19, 1999) ("[W]here, as here, the plaintiff does not reside in the chosen district, and defendant seeks to transfer the case to plaintiff's home forum, the traditional deference to a plaintiff's choice of forum is substantially lessened"), attached as Exhibit A; Cheyenne Arapaho v. Reno, Civ. No. 98-CV-065 (RMU), Slip op. at 3-4 ( D.D.C. Sept. 9, 1998) (plaintiff argued, in opposing transfer, that the federal agencies involved were both headquartered in Washington, D.C.; "Under 1404(a), the court accords insignificant weight to the location of federal agencies and counsel" and, "in cases that touch the affairs of many people, there are reasons for holding the trial in their

view and reach rather than in remote parts of the country where they can learn by report only."), attached as Exhibit B; <u>Mescalero-Apache Tribe v. Janet Reno and Bruce Babbitt</u>, Civ. No. 96-115, Slip op. at 5 (D.D.C. Feb. 5, 1996) (the court is "is to give [plaintiff's choice of forum] significantly less deference when plaintiff files a lawsuit in a foreign forum"), attached as Exhibit C; <u>Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States</u>, Civ. No. 01-1042, Slip op. at 4, 6 (D.D.C. July 11, 2001) (transferring case to the plaintiff tribe's home forum in Wisconsin; plaintiff's choice of forum held less weight  "because the plaintiffs lack any connection to their forum of choice; they do not reside here; and the forum has no particular connection to the specific matter at hand"), attached as Exhibit D.

Based on the foregoing factors, Plaintiffs' decision to file the action in the District of Columbia is entitled to little, if any, deference.  Plaintiffs are located in the Southern District of California.  Furthermore, as discussed above, the subject matter of this litigation is significantly connected to the Southern District of California.  The District of Columbia has no meaningful ties to, or interest in, this litigation.  Accordingly, transfer to the Southern District of California is appropriate.

## **CONCLUSION**

For the reasons set forth above, Defendants' motion for transfer this action to the Southern District of California should be granted.

February 9, 2007.

Respectfully submitted,
MATTHEW J. MCKEOWN
Acting Assistant Attorney General

-8-

SAMANTHA KLEIN
ALEX KRIEGSMAN
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division

By:     */s/ Alex Kriegsman*
Alex Kriegsman
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-3022
Facsimile: (202) 305-0506

Of Counsel:
Tobias Halvarson, Attorney-Advisor
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C.  20240
Tel: (202) 208-6930
Facsimile: (202) 219-1791

ATTORNEYS FOR DEFENDANTS

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WALTER J. ROSALES, ESTATE OF    )    **CASE NUMBER:**   1:07-cv-00162
HELEN CUERO, ESTATE OF DEAN    )
ROSALES, P.O. Box 85, Jamul,    )
California, 91935    )    **JUDGE:**    Judge Rosemary M. Collyer
    )
KAREN TOGGERY, ESTATE OF MARIE )    **DECK TYPE:**    Tribal Rights
TOGGERY, ESTATE OF MATTHEW    )
TOGGERY, P.O. Box 375, Jamul,    )    **DATE STAMP:**
California, 91935    )
    )
JAMUL INDIAN VILLAGE, a federally    )
recognized Indian tribe, P.O. Box 612    )
Jamul, California, 91935    )
    )
        Plaintiffs,    )
    )
      v.    )
    )
UNITED STATES OF AMERICA,    )
DEPARTMENT OF THE INTERIOR, by    )
and through DIRK KEMPTHORNE,    )
in his official capacity,    )
    )
BUREAU OF INDIAN AFFAIRS, by    )
and through Assistant Secretary of    )
Indian Affairs, JAMES E. CASON.    )
    )
        Defendants.    )
_____)

**O R D E R**

Pursuant to the Court's review of briefing by the parties on Defendants' motion to transfer venue, **IT IS HEREBY ORDERED** that Defendants' motion is granted. This case shall be transferred to the District Court for the Southern District of California.

      **ORDERED** this _____ Day of _____ 2007.


_____              _____
                                               ROSEMARY M. COLLYER
                                             United States District Judge

February 9, 2007.

                                         Respectfully submitted,

                                         MATTHEW J. MCKEOWN
                                         Acting Assistant Attorney General
                                         SAMANTHA KLEIN
                                         ALEX KRIEGSMAN
                                         Trial Attorneys
                                         United States Department of Justice
                                         Environment and Natural Resources Division

                       By:      _/s/ Alex Kriegsman_____
                                         Alex Kriegsman
                                         Trial Attorney
                                         United States Department of Justice
                                         Natural Resources Section
                                         P.O. Box 663
                                         Washington, D.C.  20044-0663
                                         Tel: (202) 305-3022
                                         Facsimile: (202) 305-0506

                                         Of Counsel:
                                         Tobias Halvarson, Attorney-Advisor
                                         U.S. Department of the Interior
                                         1849 C Street, N.W.
                                         Washington, D.C.  20240
                                         Tel: (202) 208-6930
                                         Facsimile: (202) 219-1791

                                         ATTORNEYS FOR DEFENDANTS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SANTEE SIOUX TRIBE OF NEBRASKA,     :
                                    :
              Plaintiff,            :
                                    :
        v.                          :   Civil Action No. 99-528 (GK)
                                    :
NATIONAL INDIAN GAMING COMMISSION,  :
                                    :
              Defendant.            :
                                    :

FILED

APR 1 9 1999

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

MEMORANDUM OPINION

Plaintiff, Santee Sioux Tribe of Nebraska ("the Tribe"), has brought suit in this Court challenging the constitutionality of various provisions of the Indian Gaming Regulatory Act ("IGRA" or "the Act"), 25 U.S.C. § 2701-2721 (1994).  In addition to seeking a declaratory judgment, the Tribe seeks to enjoin enforcement of a final Order of Closure of the National Indian Gaming Commission ("NIGC or "the Commission") which would close its Ohiya Casino in the State of Nebraska.  Defendant, the NIGC, has moved to transfer the case to the United States District Court for the District of Nebraska, where extensive court and appellate proceedings relating to this Casino have already taken place, and where contempt proceedings are ongoing.  Plaintiff opposes the transfer.

Upon consideration of Defendant's Motion, Plaintiff's Opposition, Defendant's Reply, the applicable case law, and the entire record herein, for the reasons discussed below, Defendant's

EXHIBIT A

Motion to Transfer is **granted.**

## I. Statutory Background

In 1988, Congress enacted the Indian Gaming Regulatory Act which was designed to "provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal government." 25 U.S.C. § 2701(5)(1994).

The Act divides gaming into three categories. Class III gaming, which is the category at issue in this case, includes banking card games, dice games, roulette, dog racing, horse racing, lotteries, and electronic and electro-mechanical facsimiles of games of chance. 25 U.S.C. § 2703 (6)-(8)(1994).[1] Under the statute, such Class III gaming activities are lawful on tribal lands only if they are, inter alia, "located in a state that permits such gaming for any purpose by any person, organization, or entity;" and operated in accordance with the provisions of a Tribal-State compact entered into by the Indian tribe and the state in which the tribe is located. 25 U.S.C. § 2710(d)(1)(1994).

When a tribe becomes interested in operating Class III gaming activities, it is required under the statute to initiate the process by requesting the State to enter into negotiations, and the State is required "to negotiate with the Indian tribe in good faith to enter into such a compact". 25 U.S.C. § 2710(d)(3)(A)(1994).

---

[1] The Class III gaming operated by the Tribe consisted of video slot, poker, and blackjack machines.

If the State fails to negotiate in good faith, the Act provided that the tribe could sue the State in federal district court; the Act also provided various statutory remedies designed to bring the state and the tribe to a final tribal-state compact so that the tribe could satisfy the requirements of IGRA and conduct lawful gaming activities. 25 U.S.C. §§ 2710(d)(7)(A) and (B)(1994).

In 1997, the Supreme Court ruled that Congress lacked the authority to abrogate a State's Eleventh Amendment immunity from suit and that Section 2710(d)(7)(A) of IGRA was therefore unconstitutional. <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 49 (1996). The practical consequence of this ruling was to leave Indian tribes without recourse to the courts if they were unable, because of bad faith negotiations on the part of the State, to conclude the statutorily required Tribal-State compact. Without the existence of such a Tribal-State compact, the tribes would be unable to obtain permission from the Commission to operate gaming facilities.

II.  Procedural History

Plaintiff is a federally recognized tribe whose reservation is entirely situated within the State of Nebraska. In February 1993, the Tribe began a long period of negotiations with the State of Nebraska to conclude a Tribal-State compact for the conduct of Class III gaming on the Tribe's reservation. Ultimately, the negotiations failed, and there was evidence before the Commission that would "tend to suggest that the Governor did not negotiate in

3

good faith". Pl.'s Ex. 1 at 14.[2]  In February 1996, the Tribe opened its Ohiya Casino, a gaming facility with Class III gaming devices.

In February 1996, the Tribe also filed an action in the U.S. District Court for the District of Nebraska against the State of Nebraska and its Governor, pursuant to IGRA § 2710(d)(7)(A)(i), alleging bad-faith negotiations by the State.  That suit was dismissed on grounds of Eleventh Amendment immunity under Seminole. Santee Sioux Tribe v. State of Nebraska, 121 F.3d 427 (8th Cir. 1997).

Thereafter, the Chairman of the NIGC issued a "Notice of Violation" stating that the Tribe's operation of certain Class III games in the absence of the requisite Tribal-State compact violated 25 U.S.C. § 2710(b).  Despite voicing "serious concerns about the fairness" of the Tribal-State negotiation process, and recognizing the Tribe's critical need for revenues generated by operation of the Casino, the Chairman concluded on May 2, 1996, that the "NIGC does not have the authority to address issues related to the process by which tribal-state compacts are negotiated" and that he had "no choice but to order the closure of the Class III gaming activity presently being conducted". 25 C.F.R. §~573.6(11)(1996). The Tribe closed the Casino on May 5, 1996, only to reinitiate gaming activities several months later.

---

[2]The Commission did not hold, as Plaintiff misrepresents in its papers, "that the evidence demonstrated" that Nebraska failed to negotiate in good faith". Pl.'s Mem. Opposing Def.'s Mot. to Transfer at 3 n1. The Court does not appreciate such a gross exaggeration, not to say misstatement, of the record.

Thereafter, much procedural maneuvering ensued before the Commission and in federal court, the details of which are set out at great length in the parties' papers. Ultimately, after many proceedings before Chief Judge William G. Cambridge of the United States District Court for the District of Nebraska, on appeal, the Eighth Circuit held that the United States could seek civil injunctive relief against the Tribe under Nebraska's nuisance law, pursuant to 18 U.S.C. § 1166. It also ruled that because the gaming machines in question were illegal under Nebraska law and the State could not therefore compact for them even if it chose to negotiate in good faith, that it need not reach the issue of whether all provisions of the IGRA related to compacting are unconstitutional. The Supreme Court denied Plaintiff's petition for a writ of certiorari. <u>United States v. Santee Sioux Tribe of Nebraska</u>, 135 F.3d 558, 565-566 (1998), <u>cert. denied</u>, 119 S. Ct. 48 (1998).

On October 15, 1998, the Eighth Circuit issued a mandate to the District Court to enter an "order enjoining the Tribe's operation of class III gaming devices and enforcing the Chairman's closure order." On November 24, 1998, the District Court issued the mandated order. Plaintiff did not close the Ohiya Casino. On February 1, 1999, the District Court found the Plaintiff in contempt of court for continuing to operate the Casino, and fined it $3000 per day for each day the gaming facility continued to remain open. The Ohiya Casino remains open.

On March 1, 1999, the Tribe filed the present action which it

5

styles as an administrative appeal under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., from the Final Order of the NIGC, seeking a declaration that the law upon which that Final Order is predicated, the IGRA, is unconstitutional.

## III. Analysis

Defendant has moved to transfer this case to the United States District Court for the District of Nebraska under 28 U.S.C. § 1404(a)(1993), which provides that:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

Defendant concedes that it bears the burden of establishing that transfer is proper and serves the purposes of § 1404(a) "to prevent the waste `of time, energy and money' and `to protect litigants, witnesses and the public against unnecessary inconvenience and expense. . . .'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Airline Pilots Ass'n. V. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987).

A threshold question under § 1404(a) is whether the action may have been brought in Nebraska. The Tribe concedes, as it must, that the case could have been brought in the District of Nebraska.

The Court is well aware that, ordinarily, a plaintiff's choice of forum is entitled to substantial weight and deference. Environmental Crimes Project v. EPA, 928 F. Supp. 1, 2 (D.D.C. 1995). However, where, as here, the Plaintiff does not reside in the chosen jurisdiction, and Defendant seeks to transfer the case

to Plaintiff's home forum, the traditional deference to a plaintiff's choice of forum is substantially lessened. <u>Citizen Advocates for Responsible Expansion v. Dole</u>, 561 F. Supp. 1238, 1239 (D.D.C. 1983).

The parties very much dispute whether the convenience of the parties and witnesses will be served by trying this case in the District of Columbia or Nebraska. There is no question that Plaintiff's reservation is located within the District of Nebraska, that all the gaming activities in question are also located there, and that both sides have experienced and knowledgeable counsel in both jurisdictions. Therefore, the Court does not find that the convenience of counsel and parties is a factor that is persuasive one way or the other.

If witnesses are required to testify, then it is clear that the witnesses reside in or near the State of Nebraska and their convenience would be served by litigating the case there. However, Plaintiff maintains that this case is solely an administrative appeal from a final determination of the NIGC pursuant to the APA and, therefore, only the administrative record will be placed in the evidence. On the record as it stands now, this appears to be the case. If so, there would be no inconvenience to Defendant, who is located in Washington, D.C., in litigating the summary judgment motions here rather than in the District Court in Nebraska.

However, there are three compelling reasons which fully justify transferring the case to the District Court in Nebraska.

First, the Defendant is correct that the interests of justice

7

will best be served by transferring the case to the District Court
in Nebraska.    As the Supreme Court explained in applying the
doctrine of <u>forum non conveniens</u> in <u>Gulf Oil v. Gilbert</u>, 330 U.S.
501, 509 (1947):

> In cases which touch the affairs of many persons, there
> is reason for holding the trial [or motions hearing] in
> their view and reach rather than in remote parts of the
> country where they can learn of it by report only.    There
> is a local interest in having localized controversies
> decided at home.

While there is some truth to Plaintiff's argument that in this
day of computers and virtually instantaneous communications,
<u>Gilbert</u> is far less persuasive than it was fifty years ago.
However, the federal courts do not allow cameras or tape recorders
in courtrooms, there is intense local interest in this controversy,
and there is a significant benefit to allowing those whose lives
will be most immediately affected by the outcome of litigation, as
well as the local media, to physically attend the proceedings which
will determine that outcome.    There is no substitute for personally
observing, watching and evaluating the judge who presides, hearing
the quality of the arguments, and getting a first-hand impression
of whether the proceeding is being handled with the appropriate
fairness and seriousness.    Furthermore, the members of this
District Court have repeatedly honored this principle by
transferring cases involving Indian gaming controversies back to
the state in which the controversy and the gaming were located.
See <u>Towns of Ledyard, N. Stonington, and Preston, Conn. v. United
States</u>, Civ. No. 95-0880, slip op. at 4-5 (D.D.C. May 31, 1995);
<u>Apache Tribe of the Mescalero Reservation v. Reno</u>, Civ. No. 96-115,

8

slip op. (D.D.C. Feb. 5, 1996); <u>Cheyenne-Arapaho Tribe of Okla. v.</u> <u>Reno</u>, Civ. No. 98-065, slip op. (D.D.C. Sept. 8, 1998); and <u>Citizen</u> <u>Advocates for Responsible Expansion. Inc. v. Dole</u>, 561 F. Supp. 1238, 1240 (D.D.C. 1983).

Second, transfer of this case will avoid the waste of judicial resources and the very real possibility of inconsistent results. There is no question that Chief Judge Cambridge, who has presided over this litigation for close to three years, is intimately familiar with the facts, the extensive procedural history, and the applicable law. Obviously, it would be a waste of the parties' time and energy as well as of precious judicial resources to litigate a closely related case before a newly assigned judge, as opposed to Chief Judge Cambridge.

Third, and most persuasive of all, it is perfectly clear that Plaintiff is attempting to forum-shop and avoid the consequences of having lost its case before the Eighth Circuit after having raised the same Constitutional arguments which it raises here. That court squarely rejected these arguments:

> The Tribe argues that because of the Supreme Court's determination in <u>Seminole Tribe</u> that, Congress was not empowered to authorize lawsuits by Indian tribes against states that fail to negotiate in good faith for a tribal-state compact, all provisions of the IGRA are unconstitutional. We decline to address this argument given our conclusion that, under the IGRA, the State is not required to negotiate for gambling that is illegal under Nebraska law. . . . As we already have determined, the class III gambling activities in which the Tribe is engaged are illegal under Nebraska law, ruling out any duty on the part of the State to negotiate a compact with the Tribe for such gambling. <u>United States v. Santee</u> <u>Sioux Tribe of Nebraska</u>, 135 F.2d at 565-566.

Thus, Plaintiff is asking this Court to render a ruling which would squarely conflict with the ruling of the Eighth Circuit. That was not the intent of the drafters of Section 1404(a):

> The transfer provisions in the U.S. Code, which grew out of the common law doctrine of forum non conveniens, were in part intended to prevent forum shopping. <u>Cheeseman v. Carey</u>, 485 F. Supp. 203, 214-214 (S.D.N.Y. 1980). This Court cannot find that it is in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled and the choice of forum may well dictate the outcome of the case. <u>Schmid Lab., Inc. v. Hartford Accident and Indem. Co.</u>, 654 F. Supp. 734, 737 (D.D.C. 1986).

For all the foregoing reasons, the Defendant's Motion to Transfer is granted.


April 16, 1999
Date

Gladys Kessler
United States District Court Judge


10

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FILED**

**SEP - 9 1998**

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

CHEYENNE-ARAPAHO TRIBE
OF OKLAHOMA,
ET AL.,

            Plaintiffs,

       v.

JANET RENO, ATTORNEY GENERAL
OF THE UNITED STATES,
DEPARTMENT OF JUSTICE,
ET AL.,

           Defendants.

Civil Action No.:98-CV-065 (RMU)

Document Nos.: 2, 6, 15, 17, 18, 19, 21
28, 31 & 32

## O R D E R

### Granting The Defendants' Motion to Transfer

This matter comes before the court on the defendants' motion to transfer this action to the United States District Court for the Northern District of Oklahoma. Upon consideration of the parties' submissions and the entire record, the court grants the defendants' motion to transfer. The convenience of the parties and potential witnesses in addition to the interests of justice dictate that the action be litigated in Oklahoma.

## I. BACKGROUND

The plaintiffs[1] reside in the state of Oklahoma and operate gambling casinos on Indian lands. The plaintiffs operate various types of gambling devices including the MegaMania machine, which is the subject of the present action. On December 30, 1997, the United States

---

[1]    The plaintiffs in this case include the Cheyene-Arapaho Tribe of Oklahoma Gaming Commission, which filed suit on behalf of the Cheyene-Arapaho Tribe of Oklahoma, the Chickasaw Nation of Oklahoma, and The Choctaw Nation of Oklahoma.

**EXHIBIT B**

Attorney for the Northern District of Oklahoma ("U.S. Attorney") obtained warrants to seize approximately 285 MegaMania gambling devices and related equipment located on Indian lands in the Northern and Eastern Districts of Oklahoma. The next day, the U.S. Attorney filed a complaint for forfeiture *in rem* against the plaintiffs ("the Enforcement Action") to seize the MegaMania gambling devices and related equipment. The seizure of the equipment was spurred by a finding by Senior District Judge H. Dale Cook and Magistrate Judge Payne in the Northern District of Oklahoma that there is probable cause to believe that the MegaMania machine is an illegal class III gambling device under the Johnson Act, 15 U.S.C. §§ 1171-1178.

On January 5, 1998, Multimedia, the maker of the MegaMania machine, and the Seneca-Cayuga Tribe of Oklahoma filed an action in the U.S. District Court for the Northern District of Oklahoma ("Oklahoma Action") seeking: (1) declaratory judgment that the MegaMania is a permissible Class II gaming device; and (2) a stay of enforcement activity during the pendency of the lawsuit. Subsequently, on January 12, 1998, the plaintiffs filed a declaratory judgment action in this court ("D.C. Action") requesting similar relief as in the Oklahoma Action. Then, on January 15, 1998, Judge Kern consolidated the Oklahoma action into the Enforcement Action. At present, the defendants seek to transfer this action to the Northern District of Oklahoma claiming that the profound public interest in Oklahoma regarding the classification of the MegaMania machine, the convenience of the parties and witnesses, and the interests of justice warrant such a transfer.

## II. DISCUSSION

The defendants seek to transfer this case to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a), which provides that a district court may transfer any civil action to any other district or division where it may have been brought for the convenience of the parties and witnesses and for the interests of justice. The defendants bear the burden of establishing that the transfer of the action is proper. See Airline Pilots Ass'n v. Eastern Air Lines, 672 F. Supp. 525, 526 (D.D.C. 1987). Section 1404(a) vests the court broad discretion to adjudicate motions to transfer on a case-by-case basis. See Van Dusen v. Barrack, 376 U.S. 612, 622 (1964). Thus, a threshold determination under § 1404(a) is whether the action may have been brought in Oklahoma.

2

The venue statute, 28 U.S.C. § 1391(e), states that venue is proper in the judicial district in which a substantial part of the events giving rise to the claim occurred, or where a substantial part of property that is the subject of the action is situated. Here, venue could be proper in Oklahoma because the case involves governmental action that will impact the tribe's gambling operation in that state. See Martin-Trigona v. Meister, 668 F. Supp. 1, 4 (D.D.C. 1987). Furthermore, the events giving rise to this controversy occurred in Oklahoma and the property affected is also located there. Thus, under § 1391, venue is proper in the Northern District of Oklahoma.

Next, the court determines whether the case should be transferred based on the convenience of the parties and witnesses and the interests of justice. Of course, deference should be given to the plaintiffs' choice of forum. See Air Line Pilots Ass'n, 672 F. Supp. at 526. The court, however, may give the plaintiffs' choice of forum significantly less deference if the activities surrounding the controversy have little, if any, contact with the selected forum. See Armco Steel Co., L.P. v. CSX Corp., 790 F. Supp. 311, 324 (D.D.C. 1991); see also Martin-Trigona, 668 F. Supp. at 3. In the instant case, the plaintiffs are citizens domiciled in the State of Oklahoma and the MegaMania machines at issue are similarly located in Oklahoma. The Multimedia corporation, the maker of the MegaMania devices, has its headquarters in Tulsa, Oklahoma. All the individuals associated with the MegaMania machines and the records pertaining thereto are located in Oklahoma. The U.S. Attorney's office that filed the enforcement action is also located in Oklahoma. Moreover, a consolidated case with identical issues as the present action is currently pending in the Northern District of Oklahoma. Thus, these facts compel a determination that a transfer of venue is appropriate.

The plaintiffs, however, argue that this case should be litigated in this jurisdiction because the U.S. Department of Justice ("DOJ") and the National Indian Gaming Commission ("NIGC"), the government agency charged with regulating Indian gaming, both have their headquarters in Washington, D.C. This argument is unpersuasive. Under § 1404(a), the court accords insignificant, if any weight, to the location of federal agencies and counsel. See e.g., Armco Steel Co., 790 F. Supp. at 324. The significance here is the location of potential non-party witnesses and the events that form the basis of this controversy, the majority of which are located in

3

Oklahoma. Therefore, for the convenience of the parties and the potential witnesses, this action should be transferred to Oklahoma.

The court further concludes that the interests of justice favor the transfer of this case to Oklahoma. The interests of justice are furthered by avoiding unnecessary expense to the public through duplicative use of judicial resources. See Continental Grain Co. v. Barge, FBL-585, 364 U.S. 19, 26 (1960). See Also Martin-Trigona, 668 F. Supp. at 3 (the interests of justice are better served when a case is transferred to the district where related actions are pending). As mentioned above, a consolidated action involving the same issues in the present action, the classification of the MegaMania machines, is currently pending in the Northern District of Oklahoma. The DOJ is a party in both the present action and in the current litigation in Oklahoma. Therefore, this action must be transferred to the Northern District of Oklahoma in order to avoid inconsistent judgments or duplicative litigation.

In addition, the interests of justice are promoted when a localized controversy is resolved locally where concerned citizens may closely follow the proceedings. See Citizen Advocates For Responsible Expansion, Inc. v. Dole, 561 F. Supp. 1238, 1240 (D.D.C. 1983). In cases that touch the affairs of many people, there are reasons for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. See Gulf Oil v. Gilbert, 330 U.S. 501, 509 (1947). The issues surrounding the classification of the MegaMania machines affect Indian tribes that operate casinos and companies that manufacture gambling devices within the state. Therefore, it is clear that the interests of justice will be better served if the resolution of this case occurs in Oklahoma.

Next, the plaintiffs argue that if the case is litigated in this jurisdiction, where the DOJ has its national headquarters, the DOJ will be bound by the judgment nationwide. This argument is meritless. Under the doctrine of offensive and defensive collateral estoppel, both parties are bound by the final judgment of a case regardless of where the case is tried. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329-31 (1979). Therefore, both parties are estopped from resurrecting identical issues in another jurisdiction. See id. In fact, contrary to the plaintiffs' assertion, as discussed above, the interests of justice are better served if the action is litigated in Oklahoma.

4

Finally, the plaintiffs argue that it would serve the interests of justice to litigate the action before this court because the court has familiarity with the MegaMania gaming device. This argument is similarly without merit. Although the court had exposure to the MegaMania device when it entertained evidentiary presentations in <u>Diamond Game Enterprises v. Janet Reno</u>, - - F. Supp. --, 1998 WL 345041 (D.D.C. June 23, 1998), the court may require additional evidentiary and oral hearings to fashion an informed opinion on the classification of the MegaMania device. Furthermore, the plaintiffs fail to explain why another federal judge in Oklahoma would be unable to determine the classification of the MegaMania gaming device even when that judge does not have previous knowledge of the device. In short, the court finds that the plaintiffs fail to demonstrate the interests of justice are better served by litigating this action in the District of Columbia. Therefore, the court transfers the above-captioned action to the U.S. District Court for the Northern District of Oklahoma.

Accordingly, it is this 8th day of September, 1998,

**ORDERED** that the defendants' motion to transfer the above-captioned action to the U.S. District Court for the District of Oklahoma be and is hereby **GRANTED**; it is

**FURTHER ORDERED** that the defendants' motion for leave to file a supplement to the motion to transfer be and is hereby **GRANTED** nunc pro tunc; it is

**ORDERED** that the defendants' motion for leave to file amended reply in support of defendants' motion to transfer be and is hereby **GRANTED** nunc pro tunc; it is

**FURTHER ORDERED** that the motion to intervene filed by Viejas (Baron Long) Group of Capitan Grande Band of Mission Indians of the Viejas Reservation ("the Viejas Group") be and is hereby **DENIED** without prejudice. The Viejas Group may resurrect its motion to intervene consistent with the order of the transferee court; it is

**ORDERED** that the Viejas Group's motion for leave to file plaintiffs' supplemental opposition to defendants' motion to dismiss be and is hereby **DENIED** without prejudice; it is

**FURTHER ORDERED** that the motion to intervene filed by the Cabazon Band of Mission be and is hereby **DENIED** without prejudice. The Cabazon Band may resurrect its motion to intervene consistent without the order of the transferee court; it is

**ORDERED** that the motion to intervene filed by Shoalwater Indian Tribe be and is hereby **DENIED** without prejudice. The Shoalwater Indian Tribe may resurrect its motion to intervene consistent with the order of the transferred court; it is

**FURTHER ORDERED** that the Shoalwater Indian Tribe's motion for leave to file memorandum in opposition to defendant's motion to transfer be and is hereby **DENIED** without prejudice; it is

**ORDERED** that the defendants' motion to stay proceedings be and is hereby **DENIED** as moot; and it is

**FURTHER ORDERED** that the defendants' motion for a protective order be and is hereby **DENIED** without prejudice. The defendants' may resurrect this motion with the transferee court.

**SO ORDERED.**

Ricardo M. Urbina
United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

The Apache Tribe of the Mescalero
Reservation,

          Plaintiff,        :     Civil Action No.: 96-115

        v.

Janet Reno, Attorney General, Bruce    :     Document No.:
Babbitt, Secretary of the Interior,
          Defendants.

### Order

### Denying Plaintiff's Motion for a Temporary Restraining Order and Granting Defendants' Motion to Transfer

This matter comes before the court upon plaintiff's motion for a temporary restraining order and defendants' opposition thereto; defendants' motion to transfer this action to the United States District Court for the District of New Mexico; and plaintiff's opposition thereto. After careful consideration of the pleadings and the entire record herein, the court concludes that a temporary restraining order shall not be imposed because the movant has failed to establish that it will suffer irreparable injury; or that the public interest will be furthered by the granting of injunctive relief. Accordingly, plaintiff's motion for a temporary restraining order is denied.

In addition, the court concludes that defendants' motion to transfer shall be granted because the present action could have been brought in New Mexico and the interests of the parties and of potential witnesses; as well as the interest of justice dictate that the action be heard in that forum.

## EXHIBIT C

## I. Background

Plaintiff, the Apache Tribe of the Mescalero Reservation ("Tribe"), resides in the state of New Mexico. The tribe operates the Casino Apache, a gambling enterprise located within the reservation. The Tribe owns and operates various types of gambling equipment. The casino and the gambling equipment are the subject of the present action. According to the tribe it is legally conducting gambling activities pursuant to a compact, it and other tribes reached with the Governor of New Mexico, Gary Johnson and subsequently approved by the Secretary of the Interior. This compact, however, was found to have no legal effect as a matter of state law by the New Mexico Supreme Court. State ex rel. Clark v. Johnson, 904 P.2d 11 (1995). That Court also found that all electronic gaming devices, slot machines and casino-style gaming are unlawful in the state of New Mexico. Citation Bingo, Ltd. v. Otten, No. 22,736 (N.M. Nov. 29, 1005). As a result, in December 1995, the United States Attorney for the District of New Mexico, advised ten New Mexico Tribes, that the gambling activities they were conducting were illegal in the state of New Mexico and were not the proper subject of a compact and thus in violation of federal criminal law.

The United States Attorney then advised the tribes, including plaintiff, that if they did not cease their gambling operations withing thirty days, complaints in civil forfeiture would be filed against them. As a result, nine of the tribes filed suit in New Mexico against the present defendants as well as the United States Attorney for the District of New Mexico and the United States. The parties in that suit reached a stipulation in which the Tribes agreed to close their casinos if the court in New Mexico found their enterprises to be illegal. The United States Attorney agreed not to initiate any criminal proceedings or forfeiture actions against the Tribes. Plaintiff, however, is not a party to the suit pending in New Mexico; it decided to proceed in this jurisdiction.

Plaintiff requests that the court issue a temporary restraining order that would prevent the defendants from taking any action which might interfere with plaintiff's gambling operation, including, but not limited to, the institution of any civil action to enjoin or to declare unlawful the Tribe's operation or to cause a forfeiture of any gambling device utilized in said operation.

2

Furthermore, the Tribe seeks to prevent the initiation of any criminal prosecution of any person associated with the Casino Apache.

## II. Discussion

## A. Temporary Restraining Order

A party seeking a temporary restraining order must establish that: (1) it has a substantial likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) the public interest will be furthered by the injunction. Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1208 (D.C.Cir. 1989); see also Foundation on Economic Trends v. Heckler, 756 F.2d 143, 151 (D.C.Cir. 1985); Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir. 1977). After balancing the four factors, the court concludes that plaintiff has failed to establish that it will suffer irreparable harm if injunctive relief is not granted; or that the public interest will be furthered by the issuance of the temporary restraining order. The court finds it unnecessary to make explicit findings with respect to the other two elements since irreparable harm and the furtherance of a public interest have not been sufficiently established. The court notes, however, the substantial difficulty the plaintiff must overcome in order to succeed on the underlying merits of this case.

In order to establish irreparable harm justifying injunctive relief, a plaintiff must establish injury that is certain, great, and actual, not theoretical. Wisconsin Gas Co. v. Federal Energy Regulatory Commissions, 758 F.2d 669, 674 (D.C.Cir. 1985). The injury must be imminent, creating a "clear and present" need for equitable relief to prevent irreparable harm. Id. (internal citations omitted). Injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time." Connecticut v. Massachusetts, 282 U.S. 660, 674 (1931). Plaintiff must establish that the irreparable injury is likely to occur. The movant must therefore provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future. Wisconsin Gas. Co., 758

3

F.2d at 674. Finally, the plaintiff must show that the alleged harm will directly result from the action which he or she seeks to enjoin. Id. Plaintiff has not made the requisite showing.

It is clear from the pleadings submitted by the parties for the court's consideration that the only threatened action is the filing of a civil forfeiture complaint by the government. Thus, plaintiff's reference to the United States Attorney's intention to close the casino and to seek forfeiture of the Tribe's gambling devices is not dispositive since it must be evaluated in light of the fact that in order to carry out the threatened action, the government would have to avail itself of civil forfeiture procedures. There are adequate remedies in civil forfeiture of which the plaintiff can avail itself. "The basis for injunctive relief in the federal courts has always been irreparable harm *and* inadequacy of legal remedies." Sampson v. Murray, 415 U.S. 61, 88 (1974) (emphasis supplied). Moreover, the United States Attorney in New Mexico does not intend the immediate seizure of any gambling equipment machines.[1] Further, the defendants have represented in the pleadings that they do not intend to interfere in any way with the casino's operations prior to the entry of a judgment of forfeiture in the District of New Mexico. Consequently, the court fails to see any imminent and irreparable harm to the interests of the Tribe. Finally, since the court is granting defendant's motion to transfer this action to the United States District Court for the District of New Mexico, plaintiff is free to seek injunctive relief in that forum.[2]

---

[1] Plaintiff requests that the court enjoin the defendants from instituting any criminal proceedings against any individual associated with Casino Apache. This is not an appropriate subject for the court to entertain. Newman v. United States, 382 F.2d 479, 480 (D.C.Cir. 1967); see also Shoshone-Bannok Tirbes v. Reno, 56 F.3d 1476, 1480 (D.C.Cir. 1995). Moreover, it is unlikely that any such proceedings will go forward prior to the court in New Mexico resolving the issue of the legality of the gambling operations.

[2] Plaintiff's argument regarding the public interest is premised on its position vis-a-vis the alleged irreparable harm that is to occur if injunctive relief is not granted. Consequently, the court does not credit it for the same reasons that plaintiff's position on the irreparable harm prong of the standard for the granting of a temporary restraining order fails.

4

## B. Transfer

The defendants seek to transfer this case to the state of New Mexico pursuant to 28 U.S.C. § 1404 (a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The defendants bear the burden of establishing that the transfer of this action is proper. Airline Pilots Ass'n v. Eastern Air Lines, 672 F.Supp. 525, 526 (D.D.C. 1987); Int'l Brotherhood of Painters & Allied Trades Union v. Best Painting & Sandblasting Co., 621 F.Supp. 906, 907 (D.D.C. 1985). Section 1404 (a) vests "discretion in the district court to adjudicate motions to transfer according to 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organizations, Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). The threshold determination under § 1404 (a) is whether the action might have been brought in New Mexico.

Plaintiff bases its claims on federal question jurisdiction, and venue is proper in New Mexico because the case involves governmental action that will impact the Tribe's gambling operation which is located there. See Martin-Trigona v. Meister, 668 F.Supp. 1, 4 (D.D.C. 1987). The venue statute, 28 U.S.C. § 1391 (e), holds that venue is proper in the "judicial district in which...a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." It is clear that the events giving rise to the claim have occurred in New Mexico and that the property being affected is similarly located there.

Accordingly, the court's inquiry proceeds to the issue of whether the case should be transferred based on the convenience of the parties, the convenience of the witnesses, and the interest of justice. The court is aware of the deference that should be given to plaintiff's choice of forum. Air Line Pilots Ass'n, 672 F.Supp. at 526 (internal citations omitted). However, the court is to give this factor significantly less deference when plaintiff files a law suit in a foreign forum, as plaintiff itself concedes. Martin-Trigona, 668 F.Supp. at 3. Plaintiff and its gambling

5

operation are located in New Mexico. All the individuals associated with the casino and the records pertaining thereto are located in New Mexico; the United States Attorney who is investigating the casino is also located there and any civil forfeiture actions will be brought in that jurisdiction. Plaintiff's reference to the fact that its lead counsel is located in the District of Columbia is immaterial. Under § 1404 (a), the court accords insignificant, if any, weight to the location of counsel. Armco Steel Co., L.P. v. CSX Corp., 790 F.Supp. 311, 324 (D.D.C. 1991). Consequently, for the convenience of the parties and the potential witnesses, this action should be transferred to New Mexico.

The court further concludes that the interest of justice favors the transfer of this case to New Mexico. As previously referenced above, an action is currently pending in New Mexico which involves the same issues of law as this action; the fundamental issue being the legality of casino gambling in New Mexico and the concomitant ability of ten Indian tribes to conduct gambling operations in that state.[3] The action in New Mexico involves the same defendants as those in this case. In addition, the two actions present similar factual backgrounds, claims and requests for relief. "A prime factor to be considered is whether the issues in both actions are substantially the same and whether their determination rests upon the same factual matters." National Union Fire Ins. v. R.H. Weber Exploration, 605 F.Supp. 1299, 1303 (S.D.N.Y. 1985). Further, any forfeiture proceeding, which plaintiff presently seeks to enjoin, would be undertaken by the prosecutorial authorities in New Mexico. Finally, the resolution of this dispute will involve, to a large extent, the interpretation of the law of New Mexico. Accordingly, if this case was transferred to New Mexico, it could be consolidated with the one currently pending there, thereby saving judicial resources and costs. See Continental Grain Co. v. FBI-585, 364 U.S. 19,

---

[3]    The plaintiff points out that in the case pending in New Mexico the plaintiff Tribes and the government entered into a stipulation that would prevent the latter from engaging in any action which would impede the operation of the plaintiffs' operations. Plaintiff refused to enter into this stipulation at its own prerogative. Accordingly, plaintiff's strategic decision to not enter into the agreement cannot serve as a basis for preventing the transfer of the case. Had it entered into the agreement, plaintiff would have been accorded exactly the same relief it now seeks in this jurisdiction.

6

26 (1960). Consolidation would also avoid the possibility of inconsistent results.

Moreover, the resolution of this controversy, which both sides acknowledge involve issues very important to the local community, will have an exclusively local effect. Thus,

> in cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.

Gulf Oil v. Gilbert, 330 U.S. 501, 509 (1947). The parties have both represented that the issues of gambling in New Mexico has produced intense interest among the people of that state. The citizens of New Mexico will be in a better position to observe the course of litigation which will intimately affect them at a more proximate and convenient forum.

Accordingly, it is this ⸏ of February 1996,

**ORDERED** that plaintiff's motion for a temporary restraining order be and is hereby denied; and it is

**FURTHER ORDERED** that defendants' motion to transfer this action to the United States District Court for the District of New Mexico be and is hereby granted.

**SO ORDERED.**

Ricardo M. Urbina
United States District Judge

Copies Sent To:

Phyllis A. Dow
AUSA
P.O. Box 607
Albuquerque, New Mexico 87103

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAC COURTE OREILLES BAND OF
LAKE SUPERIOR CHIPPEWA
INDIANS OF WISCONSIN, *et al.*,

    Plaintiffs,

    v.

UNITED STATES OF AMERICA, *et al.*,

    Defendants.

Civil Action No. 01-1042
HHK/DAR

**FILED**

**AUG 1 6 2002**

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM ORDER

    This matter was referred to the undersigned for determination of federal defendants' and the State of Wisconsin and Governor Scott McCallum's Motions to Transfer (Docket Nos. 8 and 9). Plaintiffs filed their opposition (Docket No. 12) and replies in support of the motions to transfer were filed by the federal defendants (Docket No. 19) and by the State of Wisconsin and Governor Scott McCallum (Docket Nos. 17, 18). After consideration of the motions, the opposition and the replies thereto, and of the relevant case law, the undersigned will grant the motions to transfer.

## INTRODUCTION

    Plaintiffs, three Wisconsin Indian tribes ("Wisconsin Tribes"), filed the instant action in this Court for a declaratory judgment that the gubernatorial concurrence requirement in §20(b)(1)(A) of the Indian Gaming Regulatory Act, 25 U.S.C. §2719(b)(1)(A), is unconstitutional and a breach of trust by Congress, and seek a remand to the Secretary of the Interior requiring her to complete the trust application for the Wisconsin Tribes. This controversy stems from the administrative process used by the State of Wisconsin in deciding whether certain Indian tribes could open a casino on trust land in the state. In 1993, the Wisconsin Tribes submitted to the Bureau of Indian Affairs-Midwest Regional Office, an

**EXHIBIT D**

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                                                   2

application for the acquisition and fee-to-trust transfer of the St. Croix Meadows Racing Facility

located in Hudson, St. Croix County, Wisconsin. Defendant's Motion to Transfer at 3. The

Midwest Regional Office reviewed the application and submitted a favorable recommendation to

the BIA-Central Office on November 15, 1994. On July 14, 1995, the Deputy Assistant

Secretary-Indian Affairs ("Deputy AS-IA") determined that the proposed gaming establishment

would be detrimental to the surrounding community and raised additional concerns about the

potential impact on the environment. Id. at 4. As a result, the Deputy AS-IA declined to exercise

his discretion to take the land into trust. Id.

On September 15, 1995, the Wisconsin Tribes filed suit in the United States District

Court for the Western District of Wisconsin challenging the Department's denial. In December,

1999, the parties entered a settlement agreement in which the court retained jurisdiction over the

enforcement of the settlement. Id. at 5. Also in 1995, the Department agreed to vacate the denial

of the application and resume consideration of the Wisconsin Tribes application. On January 25,

2001, the Deputy Commissioner of Indian Affairs for the BIA transmitted a favorable

recommendation on Wisconsin Tribes' application to the Assistant Secretary of Indian Affairs.

On February 20, 2001, the acting AS-IA issued a two-part determination and findings of fact

which included the finding that the proposed gaming establishment was in the best interests of

the Wisconsin Tribes and their members and not detrimental to the surrounding community. The

acting AS-IA sought the concurrence of the Governor of Wisconsin ("Governor"); however, the

Governor has since refused to concur in the determination. Id. at 6.

For the purposes of deciding the instant motions, it is not necessary to go into great detail

about the intersection of the two statutes, 25 U.S.C. § 465 and §20 of 25 U.S.C. § 2719, that are

at the heart of this constitutional challenge. The applicable administrative procedure requires

that the Tribes obtain the concurrence of both the Secretary and the Governor of the Wisconsin in

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                                    3

order to construct a casino. The Wisconsin Tribes argue that the concurrence requirement is unconstitutional.

The federal defendants request a transfer on the grounds that the Western District of Wisconsin is a forum in which this action could have been brought; that convenience to the parties and witnesses would be served by transferring the case; and that the interests of justice would be served by avoiding the waste of judicial resources and the possibility of conflicting results; and the specific claims brought here are of a local nature. See Federal Defendants' Motion to Transfer at 7, 8, 10-13.

The State of Wisconsin and Governor Scott McCallum have also requested that this action be transferred to the Western District of Wisconsin. Their arguments are virtually identical to those asserted by the federal defendants. They argue that the case could have been brought in the Wisconsin; that plaintiffs' case has no nexus to the District of Columbia; that the Western District of Wisconsin is convenient for the parties and the potential witnesses; and that this controversy has a compelling local interest. See Memorandum in Support of Motion to Transfer by the State of Wisconsin and Governor Scott McCallum at 8-10, 15.

Plaintiffs, in their opposition, contend that this suit is merely a facial challenge to a statutory provision having national application; that it will require no witnesses, evidence, or trial; and that this circuit has a unique familiarity with the legal issues at hand. See Plaintiffs' Opposition to Motions to Transfer ("Opposition") at 1-2.

Both the federal defendants, and the State of Wisconsin and Governor Scott McCallum, filed replies in support of the motions to transfer in which they argue that the impact of this case is local in nature; the choice of forum by plaintiffs should be afforded little deference; this district is no more capable of resolving this dispute than the Western District of Wisconsin; and the inconvenience of the Wisconsin defendants of litigating this case in the District of Columbia

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                                         4

is much greater than that of the federal defendants who have already requested a transfer. See
Reply Memorandum in Support of Federal Defendants' Motion to Transfer at 1, 3 and 6; Reply
Memorandum in Support of Motion to Transfer by the State of Wisconsin and Governor Scott
McCallum at 1-2.


## DISCUSSION

A district court may transfer any civil action to any other district or division where the
action may have been brought if the transfer serves the convenience of the parties and witnesses,
and is in the interests of justice. See 28 U.S.C. §1401(a). The moving party bears a heavy
burden of establishing that plaintiff's choice of forum is inappropriate. Thayer/Patricof
Education Funding v. Pryor Resources, Inc., 196 F.Supp.2d 21, 31 (D.D.C. 2002). Additionally,
a court has broad discretion to determine where the proper balance lies and whether a case should
be transferred. Id. (citing Rhee Bros., Inc. v. Seoul Shik Poom, Inc., 869 F.Supp. 31, 33-34
(D.D.C. 1994)). Normally, the plaintiff's choice of forum is a paramount consideration in any
determination of a transfer request. Sheraton Operating Corp. v. Just Corporate Travel, 984
F.Supp. 22, 25 (D.D.C. 1997). However, the choice of forum is not afforded great deference
when the plaintiff is a foreigner to that forum. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-
256 (1981); see also Shapiro, Lifschitz & Schram, P.C. v. R.E. Hazard, Jr., 24 F.Supp.2d 66, 71
(D.D.C. 1998).

The parties do not dispute that the Western District of Wisconsin, the location of the land
at issue in this constitutional challenge, is a proper forum for the suit to be brought.
Consequently, the initial requisite in a motion to transfer is satisfied. 28 U.S.C. §1401(a). The
next two considerations require this court assess whether the transfer would serve the
convenience of the parties and witnesses and the interests of justice. Id. In making those

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                    5

assessments, courts in this circuit may consider a number of public and private interests

including: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in

favor of the defendants; (2) the defendant's choice of forum; (3) whether the claims arose

elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to

the extent that the witnesses may actually be unavailable for trial in one of the fora; (6) the ease

of access to sources of proof; (7) the transferee's familiarity with the governing laws; (8) the

relative congestion of the calendars of the potential transferee and transferor courts; and (9) the

local interest in deciding local controversies at home. Shapiro, 24 F.Supp. at 71 (citing Trout

Unlimited v. Dep't of Agric., 944 F.Supp. 13, 16 (D.D.C. 1996)).

      The consideration of the convenience to the parties and witnesses and the availability of

evidence does not yield a strong preference for either district. While it is true, as defendants

observe, that plaintiffs' home forum is in the State of Wisconsin, it also appears true, at this point

in the litigation, that there will be few, if any, witnesses to be called and little evidence to be

offered. Since the plaintiffs have chosen the District of Columbia, then their convenience is not

an issue. Since the federal defendants have offices within this district, they cannot reasonably

assert that this district is overly inconvenient for them. The State of Wisconsin and the Governor

will be inconvenienced to some extent if argument is required in this case. However, this

inconvenience is somewhat mitigated by their decision to intervene in this matter which had

already been filed in this district, and the likelihood that the case will be decided through written

motions and limited oral argument. Consequently, the convenience of the parties and witnesses,

and the availability of evidence, are not controlling considerations. However, the undersigned

must also take into account that if any witnesses are needed, those few witnesses are located in

Wisconsin.

| Post-It™ brand fax transmittal memo 7671 | | # of pages ▶ | 1 |
|---|---|---|---|
| To Ed Passarell: | From John Greene | | |
| Co. | Co. | | |
| Dept. | Phone # | | |
| Fax # 202/305-0506 | Fax # 608/266-2350 | | |

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                                    6

The final consideration requires the court to assess the issue of whether the transfer is in "the interests of justice." This concept gives all parties the opportunity to argue the relative benefits of having this litigation proceed in their forum of choice. 28 U.S.C. §1401(a). As previously discussed, it is the practice of the courts to grant great deference to the decision of the plaintiffs in their forum choice. This deference, however, holds less weight in this instance because the plaintiffs lack any connection to their forum of choice; they do not reside here; and the forum has no particular connection to the specific matter at hand. See Greater Yellowstone Coalition v. Bosworth, 180 F.Supp.2d 124, 128 (D.D.C. 2001)(citations omitted). Plaintiffs discuss at length the national significance of the claims presented here; however, federal jurisdiction is limited to cases and controversies, and this case concerns Indian tribes from Wisconsin claiming that the Governor of Wisconsin yields constitutionally impermissible power in deciding what development is permissible on land within the State of Wisconsin. The only connection to this forum happens to be that the law was passed by the United States Congress. This connection, however, is too attenuated to be given any meaningful effect; the consequence would be that all challenges to federal statutes would eventually be brought in the District of Columbia, because that is where the federal laws are passed. This result is clearly untenable.

Having discussed the shortcomings in the traditional analysis of deferring to the choice of the plaintiffs, the Court must also consider whether any considerations counsel for transfer. As has been previously discussed, convenience does not seem to be a persuasive issue; however, since all of the parties either reside in or have offices in the State of Wisconsin, a transfer may be somewhat more convenient. Next, the public interest in having local issues decided locally can not be easily dismissed. See Armco Steel Co. v. CSX Corp., 790 F.Supp. 311, 324 (D.D.C. 1991). This public consideration counsels strongly in favor of transfer, especially when coupled with plaintiffs' lack of ties to their forum of choice. Another public consideration, that plaintiff

Lac Courte Oreilles Band, *et al.* v. United States of America, *et al.*                    7

may be forum shopping, also counsels for transfer. Although the undersigned makes no finding as to the issue of forum shopping, the court finds unpersuasive plaintiff's argument that this district has developed a particular expertise in this area of the law, or necessarily would be any more or less likely to find a federal statute unconstitutional.

In sum, the undersigned finds the private and public considerations and interests of justice best served by transferring this case to the Western District of Wisconsin. Its local nature, and the parties' ties to that community, dictate such a conclusion. Plaintiffs are unable to establish any real ties to their forum of choice, other than their assumption that the chances of success are greater here. Consequently, in this Court's discretion, the case should be transferred.

## CONCLUSION

It is, therefore, this 16th day of August, 2002,

**ORDERED** that Federal Defendants' Motion to Transfer (Docket No. 8), and the State of Wisconsin and Governor Scott McCallum Motion to Transfer (Docket No. 9), are **GRANTED**, and that this action is hereby transferred to the United States District Court for the Western District of Wisconsin.

DEBORAH A. ROBINSON
United States Magistrate Judge

















JAH    2/14/02    11:00

3:01-CV-00951   ROSALES V. USA

*35*

*O.*

FILED

02 FEB 14 AM 9:34

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALTER ROSALES, MARIE TOGGERY, and KAREN TOGGERY,<br><br>    Plaintiffs,<br><br><br>vs.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | CASE NO. 01-951-IEG (JAH)<br><br>**ORDER (1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; and (2) DENYING DEFENDANTS' MOTION TO DISMISS OR FOR JUDGMENT ON THE PLEADINGS**<br><br>[Doc. No. 17] |

Presently before the Court is defendants United States, Department of the Interior, Bureau of Indian Affairs, and National Indian Gaming Commission's (collectively referred to as "defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h) or, in the alternative, for judgment on the pleadings under Rule 12(c) or summary judgment under Rule 56. For the reasons discussed below, the Court grants defendants' motion for summary judgment.

## BACKGROUND

On May 30, 2001, plaintiffs Walter Rosales, Marie Toggery, and Karen Toggery ("plaintiffs") filed a complaint for declaratory and injunctive relief pursuant to the Indian Reorganization Act of 1934. In their complaint, plaintiffs seek (1) a declaration of plaintiffs' entitlement to the allotment of parcel number 597-080-01; (2) to compel defendants to issue to



- 1 -

ENTERED ON 2/19/02

01cv0951

1  plaintiffs a trust patent for the above-mentioned parcel; (3) to enjoin defendants from further

2  denying plaintiffs' entitlement to the parcel; (4) money damages for deprivation of the use and

3  benefit of their parcel; and (5) reasonable attorneys' fees, costs, and expenses. In their complaint,

4  plaintiffs allege that "on February 5, 2001, the United States took action, and first published notice,

5  denying plaintiffs' entitlement and excluding them from their allotment of land in parcel 597-080-

6  01." (Compl. at 6 ¶ 18.) This notice, attached to defendants' motion as Exhibit A, was issued by

7  the Bureau of Indian Land Affairs pursuant to 25 C.F.R. §§ 151.10 and 151.11 and invited the

8  public to comment on the pending application by the Jamul Indian Village Reservation for the

9  United States to take certain parcels into trust for the benefit of the Reservation. The pending

10 application does not include the parcel to which plaintiffs claim allotment rights, but plaintiffs

11 allege that the publication of the notice apprised them of the government's failure to issue a patent

12 to plaintiffs for an allotment to parcel 597-080-01. The leadership of the Jamul Reservation has

13 been pursuing the trust application in an effort to commence gaming activities on tribal land.

14 However, plaintiffs contend that they do not challenge the pending application for trust status of

15 the potential gaming property but rather the government's failure to issue a patent to plaintiffs for

16 an allotment on a separate piece of land, parcel 597-080-01.

17          On August 10, 2001, defendants filed a motion to dismiss pursuant to Federal Rules of

18 Civil Procedure 4(i), 8(a), 12(b)(2), and 12(b)(6), for failure to comply with minimum federal

19 pleading requirements, lack of personal jurisdiction, insufficient service of process, and failure to

20 state a claim upon which relief may be granted. In their motion to dismiss, defendants also

21 contended that the Doe defendants named by plaintiffs in their complaint are improper and should

22 be dismissed. Plaintiffs filed an opposition to the motion on October 1, 2001. Defendants filed

23 their reply on October 15, 2001. In their reply, defendants withdrew the portion of their motion to

24 dismiss based on lack of personal jurisdiction and insufficient service of process under Rules 4(i),

25 12(b)(2), and 12(b)(5), in light of the additional information regarding service of the summons and

26 complaint that plaintiffs attached to their opposition to defendants' motion. On October 16, 2001,

27 the Court denied defendants' motion.

28          On November 9, 2001, defendants filed the instant motion to dismiss or, in the alternative,

- 2 -

01cv0951

1   for judgment on the pleadings or summary judgment.  In their motion, defendants contend that they

2   are entitled to dismissal, judgment on the pleadings, or summary judgment on the basis that (1) the

3   case is not ripe for adjudication; (2) plaintiffs lack standing; and (3) plaintiffs have not exhausted

4   their administrative remedies.  Defendants further contend in their motion that plaintiffs cannot

5   claim allotment rights to parcel number 597-080-01 because such ownership was abolished in

6   1934.  Finally, defendants argue in their motion that defendant National Indian Gaming

7   Commission ("NIGC") is also entitled to dismissal, judgment on the pleadings or summary

8   judgment because it does not play a role in determining whether land should be acquired by the

9   United States in trust.  In their opposition, plaintiffs contend that defendants mischaracterized the

10  nature of their claims.  Plaintiffs emphasize that they are not challenging the application for trust

11  status currently pending before the Bureau of Indian Affairs.  Rather, plaintiffs contend that the

12  gravamen of their complaint is that the government failed to issue them a patent for an allotment to

13  parcel number 597-080-01, which was conveyed to the United States in trust in 1978.  In support

14  of plaintiffs' claim to this allotment, plaintiffs attach to their complaint the 1978 deed by which

15  parcel number 597-080-01 was conveyed to the United States "in trust for such Jamul Indians of

16  one-half degree or more Indian blood as the Secretary of the Interior may designate."  (See Compl.,

17  Ex. B.)

18       Responding to plaintiffs' recharacterization of their claim, defendants contend in their reply

19  that plaintiffs' argument that they are entitled to a patent for their allotment to parcel number 597-

20  080-01 lacks merit because Congress abolished the allotment form of ownership in 1934.  Here,

21  the United States took parcel number 597-080-01 into trust pursuant to 25 U.S.C. § 465.  (See

22  Compl., Ex. B.)  Defendants emphasize that, unlike land that was allotted prior to 1934 under the

23  General Allotment Act, land held in trust pursuant to § 465 does not become allotted land but

24  rather land owned by the United States for the benefit of tribes.  Defendants also contend that no

25  other allotment statute applies to the facts of this case.  Thus, plaintiffs are not entitled to the

26  issuance of a patent for parcel number 597-080-01 because the land was taken into trust by the

27  United States for the benefit of the Jamul Tribe, rather than for the individual plaintiffs.

28  ////

- 3 -

# DISCUSSION

## I.    Legal Standards

### A.    Motion to Dismiss under Rule 12(b)(1) for Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows for dismissal where there is a "lack of jurisdiction over the subject matter." See Fed. R. Civ. P. 12(b)(1). In ruling on defendant's motion, the Court is guided by well-established principles:

> Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).

Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in doing so rely on affidavits or any other evidence properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). Thus, the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. Id. Because the plaintiff bears the burden of establishing subject matter jurisdiction, no presumption of truthfulness attaches to the allegations of the plaintiff's complaint, and the Court must presume that it lacks jurisdiction until the plaintiff establishes jurisdiction. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Whether a claim is ripe for adjudication is an issue of subject matter jurisdiction under the case or controversy clause of Article III of the federal Constitution. St. Clair, 880 F.2d at 201. As any other challenge to a Court's jurisdiction over the subject matter of a case, motions raising ripeness as an issue are properly brought under Rule 12(b)(1). Id. Once a party raises this issue, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Id. In deciding whether the case is ripe, the Court may look to this "extra-pleading material in deciding the issue, even if it becomes necessary to resolve factual

01cv0951

1    disputes." Id. Similarly, issues of standing go to the Court's jurisdiction over the subject matter of

2    the case and are properly raised in a motion to dismiss under Rule 12(b)(1). White v. Lee, 227

3    F.3d 1214, 1242 (9th Cir. 2000).

4       Pursuant to Rule 12(h), the Court must dismiss the action "[w]henever it appears by

5    suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter." Fed.

6    R. Civ. P. 12(h). Thus, although defendants previously filed a motion to dismiss based upon Rules

7    8(a) and 12(b)(6) and subsequently filed an answer to the complaint on November 1, 2001, the

8    instant motion is nonetheless properly before the Court. Furthermore, because lack of subject

9    matter jurisdiction is a matter in abatement, the Court may not rule on a summary judgment motion

10   "or any other matter going to the merits" where the Court determines that it lacks jurisdiction over

11   the subject matter. Capitol Indus.-EMI, Inc. v. Bennett, 681 F.2d 1107, 1118 (9th Cir. 1982).

12      **B.**     **Motion for Judgment on the Pleadings pursuant to Rule 12(c)**

13       Federal Rule of Civil Procedure 12(c) allows a motion for judgment on the pleadings to be

14   filed "after the pleadings are closed." Fed. R. Civ. P. 12(c). The motion may be brought by either

15   party "when all material allegations of fact are admitted in the pleadings and only questions of law

16   remain." Wright & Miller, 5A Federal Practice and Procedure § 1367, at 510-511; see also

17   Doleman v. Meiji Mut. Life Ins. Co., 727 F.2d 1480, 1482 (9th Cir. 1984) (quoting an earlier

18   version of Wright & Miller for the proposition that a 12(c) motion should only be granted where

19   "the movant clearly establishes that no material issue of fact remains to be resolved and that he is

20   entitled to judgment as a matter of law."); accord Vashistha v. Allstate Ins. Co., 989 F. Supp. 1029,

21   1031 (C.D. Cal. 1997). In ruling on a Rule 12(c) motion, the courts must accept all well-pleaded

22   factual allegations as true and determine whether the moving party is entitled to judgment under

23   those facts. See General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist

24   Cong. Church, 887 F.2d 228, 230 (9th Cir. 1989), cert. denied, 493 U.S. 1079 (1990). Judgment

25   on the pleadings is proper when the moving party clearly establishes on the face of the pleadings

26   that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of

27   law. Doleman, 727 F.2d at 1482.

28       If "matters outside the pleadings are presented to and not excluded by the court, the motion

1  shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R.

2  Civ. P. 12(c); <u>see also</u> <u>Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.</u>, 896 F.2d 1542,

3  1550 (9th Cir. 1990) ("[J]udgment on the pleadings is improper when the district court goes

4  beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion

5  for summary judgment.") (internal citations omitted).

6      **C.**    **Summary Judgment pursuant to Rule 56**

7      Summary judgment is proper where "there is no genuine issue as to any material fact

8  and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A

9  material issue of fact is present when a factual determination must be made by a jury to determine

10  the rights of the parties under the substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

11  248 (1986); <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir. 1993). A dispute is only

12  "genuine"when "the evidence presented is such that a jury applying that evidentiary standard could

13  reasonably find for either the plaintiff or the defendant." <u>Anderson</u>, 477 U.S. at 255.   In deciding a

14  motion for summary judgment, the Court must examine all the evidence in a light most favorable

15  to the non-moving party. <u>See</u> <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

16      A moving party who bears the burden of proof at trial is entitled to summary judgment

17  only when the evidence indicates that no genuine issue of material facts exists. Fed. R. Civ. P.

18  56(c); <u>Celotex</u>, 477 U.S. at 325. If the moving party does not bear the burden of proof at trial, he

19  may discharge his burden of showing that no genuine issue of material fact remains by

20  demonstrating that "there is an absence of evidence to support the non-moving party's case."

21  <u>Celotex</u>, 477 U.S. at 325.  The moving party is not required to produce evidence showing the

22  absence of genuine issue of material fact on such issues, nor must the moving party support its

23  motion with evidence negating the nonmoving party's claim.  <u>Lujan v. National Wildlife Fed'n</u>,

24  497 U.S. 871, 885 (1990); <u>United Steelworkers v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1542 (9th

25  Cir.), <u>cert. denied</u>, 493 U.S. 809 (1989).  Instead, "the motion may, and should, be granted so long

26  as whatever is before the District Court demonstrates that the standard for the entry of judgment, as

27  set forth in Rule 56(c), is satisfied." <u>Lujan</u>, 497 U.S. at 885 (quoting <u>Celotex</u>, 477 U.S. at 323).

28      Once the moving party meets the requirement of Rule 56 by either showing that no genuine

01cv0951

1  issue of material fact remains or that there is an absence of evidence to support the non-moving

2  party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts

3  showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

4  (1986).  It is not enough for the party opposing a properly supported motion for summary judgment

5  to "rest on mere allegations or denials of his pleadings." Id.  Genuine factual issues must exist that

6  "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

7  party." Id. at 250.  To make such a showing, the nonmoving party must go beyond the pleadings to

8  designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 325.

9  Such evidence need not be in a form admissible at trial to avoid summary judgment. Id.  The

10  moving party is entitled to judgment as a matter of law if the nonmovant fails to make a sufficient

11  showing of an element of its case with respect to which it has the burden of proof. Id.

12  Standing

13  **II.  Analysis**

14      **A.   Motion to Dismiss under Rule 12(b)(1) for Lack of Subject Matter**
        **Jurisdiction**

15

16          **1.   Ripeness**

17          Defendants first contend that plaintiffs' claim should be dismissed for lack of subject

18  matter jurisdiction because the notice published by the Bureau of Indian Affairs indicates that no

19  action has been taken on the pending application for trust status referred to by the notice.  Absent a

20  final agency decision on the matter referred to by the notice, defendants contend, plaintiffs may not

21  allege a claim arising from the defendants' publishing of a notice "denying plaintiffs' entitlement

22  and excluding them from their allotment of land in parcel 597-080-01."  In their opposition,

23  plaintiffs clarify that their claim is not based on the pending application for trust status but rather

24  on the government's failure to issue a patent to parcel 597-080-01 when it accepted the parcel into

25  trust in 1978.  The publishing of the notice, plaintiffs emphasize, does not form the gravamen of

26  their complaint.  Rather, it merely put them on notice that no patent had issued from the

27  government's acceptance of the parcel into trust.  In light of plaintiffs' clarification of the nature of

28  their claim in their opposition, it is clear that dismissal based on the ripeness doctrine is

1    inappropriate.   Because plaintiffs are challenging the government's failure to issue a patent to

2    parcel 597-080-01, rather than the pending application by the Jamul Tribe for trust status for

3    parcels 597-060-04-00, 597-060-05-00, and 597-042-13-00 (see Defs.' Ex. A), ripeness is not a

4    basis upon which the Court may grant dismissal.

5              **2.    Standing**

6              Defendants next contend that the Court lacks subject matter jurisdiction over plaintiffs'

7    action because plaintiffs lack standing.  Defendants' standing argument is similar to its ripeness

8    argument in that defendants contend plaintiffs have not been injured because there has been no

9    final agency decision on the proposed trust acquisition of parcels 597-060-04-00, 597-060-05-00,

10   and 597-042-13-00.  Absent a final agency decision on the pending application, defendants

11   contend, plaintiffs cannot show that they have suffered an injury in fact.  Plaintiffs' opposition to

12   this basis for dismissal parallels their opposition to defendants' ripeness argument.  Plaintiffs

13   emphasize that they are not challenging the pending application for trust status for parcels 597-

14   060-04-00, 597-060-05-00, and 597-042-13-00.  Rather, plaintiffs assert, the notice of the pending

15   trust application posted on February 5, 2001 merely informed them that the Jamul Tribe planned to

16   relocate plaintiffs' home sites onto the newly acquired trust land in order to construct gaming

17   facilities on the site of plaintiffs' alleged allotment.  (See Defs.' Ex. A at 3) (stating that the

18   proposed construction of gaming facilities "will result in the relocation of our tribal headquarters

19   and current home sites onto the proposed new trust lands").

20            Article III of the Constitution limits the jurisdiction of the federal courts to actual cases or

21   controversies.  U.S. Const. art III, § 2, cl. 1.  In order to meet the requirement for a justiciable case

22   or controversy, plaintiffs must have standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560

23   (1992) ("[T]he core component of standing is an essential and unchanging part of the

24   case-or-controversy requirement of Article III.").  The "irreducible constitutional minimum" of

25   standing requires that:  (1) plaintiff has suffered an "injury in fact;" (2) the injury is "fairly

26   traceable" to the challenged conduct of the defendant, and not the result of the independent action

27   of some third party; and (3) it is likely, as opposed to merely speculative, that the injury will be

28   redressed by a favorable decision.  Medina v. Clinton, 86 F.3d 155, 157 (9th Cir. 1996) (citing

1     Lujan, 504 U.S. at 560-61). At the pleading stage, general factual allegations of injury resulting

2     from the defendant's conduct may suffice to meet the plaintiffs' burden of proof as the party

3     invoking federal jurisdiction. See Lujan, 504 U.S. at 561.

4         Given plaintiffs' recharacterization of their claim in their opposition, the Court finds that

5     plaintiffs meet the three requirements for standing. Assuming plaintiffs' allegation that the United

6     States holds land in trust for them individually to be true, plaintiffs have suffered an injury in fact

7     by the government's failure to issue a patent to plaintiffs for parcel number 597-080-01. If the

8     government indeed accepted parcel number 597-080-01 into trust for the benefit of the individual

9     plaintiffs, interference with plaintiffs' use of the land may be fairly traceable to the government's

10    alleged failure to generate the requisite patents to plaintiffs for the parcel. Finally, declaratory

11    relief from the Court regarding plaintiffs' rights in the parcel may redress plaintiffs' injury in this

12    case. To the extent that there exists a factual dispute regarding whether parcel number 597-080-01

13    was taken into trust for the benefit of plaintiffs or for the Jamul Tribe, this issue may be resolved

14    considering the evidence presented by defendants in support of their motion for summary

15    judgment.

16           **3.**     **Failure to Exhaust Administrative Remedies**

17         Finally, defendants argue that plaintiffs cannot pursue the instant action until they have

18    exhausted their administrative remedies with respect to the proposed trust application for parcels

19    597-060-04-00, 597-060-05-00, and 597-042-13-00. As defendants note, the Jamul Tribe's

20    application for the United States to take the above parcels into trust is still pending before the

21    Secretary of the Interior. The February 5, 2001 notice referred to by plaintiffs in their complaint is

22    merely one step in the process for trust applications with the Secretary of the Interior, defendants

23    emphasize. Even after the Secretary issues a final decision regarding the trust status of the

24    pertinent land, the decision can then be appealed to the Interior Board of Indian Appeals. (See

25    Defs.' Mem. P. & A. at 9-10.) Only after the decision regarding trust status cannot be appealed to

26    a superior authority in the Department of the Interior can the decision be considered a final

27    decision subject to judicial review under the Administrative Procedure Act ("APA"). Defendants

28    contend that because the Secretary of the Interior has not rendered a final decision regarding the

1  application for trust status for parcels 597-060-04-00, 597-060-05-00, and 597-042-13-00, the

2  Court may not adjudicate a challenge to the Secretary's decision at this time.

3       While defendants' analysis would be sound if plaintiffs' claim arose directly from the

4  pending trust application, plaintiffs' opposition clarifies their position and establishes that their

5  claim does not arise from the pending trust application but rather from the United States'

6  acceptance of parcel number 597-080-01 into trust in 1978.  Consequently, plaintiffs' failure to

7  wait for a final agency decision with respect to the application for trust status for parcels 597-060-

8  04-00, 597-060-05-00, and 597-042-13-00 is not a basis upon which dismissal of the instant case is

9  warranted.  Because plaintiffs' claim does not arise from the pending application for trust status,

10  defendants' argument based upon administrative exhaustion does not provide grounds for

11  dismissal, judgment on the pleadings, or summary judgment.

12    **B.**    **Plaintiffs' Entitlement to Allotment**

13       Defendants argue that even if the case were ripe and plaintiffs had standing and had

14  exhausted their administrative remedies, dismissal, judgment on the pleadings, or summary

15  judgment is appropriate because plaintiffs cannot claim allotment[1] rights in parcel number 597-

16  080-01.  Defendants contend that allotment as a form of ownership was abolished in 1934 and thus

17  the conveyance of parcel number 597-080-01 in 1978 could not have vested plaintiffs with

18  allotment rights entitling them to the issuance of a fee patent.  In their opposition, plaintiffs argue

19  that Section 461 of the Indian Reorganization Act of 1934 ended the United States' policy of

20  granting allotments *of Indian land* to individual Indians, but the United States has continued to

21  hold land in trust for both tribes and individual Indians subsequent to 1934.  In particular, 25

22  U.S.C. § 465 contemplates that the United States may hold land in trust for individual Indians.  25

23  U.S.C. § 465 ("Title to any lands or rights acquired pursuant to sections 461, 462, 463, 464, 465,

24  466 to 470, 471 to 473, 474, 475, 476 to 478, and 479 of this title shall be taken in the name of the

25  United States in trust for the Indian tribe or individual Indian for which the land is acquired, and

26

27  ——————————

28      [1]As explained by the Supreme Court in <u>Affiliated Ute Citizens of Utah v. United States</u>, "Allotment is a term of art in Indian law.  It means a selection of specific land awarded to an individual allottee from a common holding." 406 U.S. 128, 142-43 (1972).

1   such lands or rights shall be exempt from State and local taxation.")  Plaintiffs contend that the

2   1978 deed of parcel number 597-080-01 indicates that the United States took this property into

3   trust for them and, thus, they seek a declaration of their rights in the parcel and the issuance of a

4   patent to the parcel.

5          In order to determine (1) whether plaintiffs are entitled to an allotment and (2) whether the

6   land was accepted into trust for the benefit of the individual plaintiffs, it is necessary to distinguish

7   among the various forms of ownership of Indian land contemplated by federal law as of the year in

8   which the United States accepted parcel number 597-080-01 into trust.  Prior to 1934, the United

9   States pursued a policy by which communal Indian property was divided and granted to individual

10  tribal members.  See Babbitt v. Youpee, 519 U.S. 234, 237 (1997).  As noted by the Supreme

11  Court in Babbitt, such "allotted lands were held in trust by the United States or owned by the

12  allottee subject to restrictions on alienation."  Id.  Under the General Allotment Act of 1887, the

13  United States would hold the land in trust for twenty-five years and then convey the land to the

14  Indian or his heirs in fee discharged of the trust.  See 25 U.S.C. § 348; Atkinson Trading Co., Inc.

15  v. Shirley, 121 S. Ct. 1825, 1830 n.1 (2001) (noting that the General Allotment Act, 25 U.S.C. §

16  331 et seq., "authorized the issuance of patents in fee to individual Indian allottees who, after

17  holding the patent for 25 years, could then transfer the land to non-Indians").

18         This policy failed, as Indian land ownership became increasingly fractionalized, and

19  individual owners were unable to productively use their small interests.  See id. at 238.  Thus,

20  "Congress ended further allotment in 1934," id., and "extended indefinitely the existing periods of

21  trust applicable to already allotted (but not yet fee patented) Indian lands," County of Yakima v.

22  Confederated Tribes and Bands of the Yakima Indian Nation, 502 U.S. 251, 255 (1992) (citing 25

23  U.S.C. §§ 461, 462).  The new Indian Reorganization Act of 1934 "reflected a new federal policy

24  of halting the loss of Indian lands which had occurred under statutes that allotted tribal lands to

25  individual Indians."  Chase v. McMasters, 573 F.2d 1011, 1015 (8th Cir. 1978); see also McAlpine

26  v. United States, 112 F.3d 1429, 1431 (10th Cir. 1997) (noting that "the IRA, among other things,

27  prohibited any further transfer of Indian lands outside of the tribes and provided the Secretary

28  authority to replace lands in lieu of those already allotted").

- 11 -

1    As shown by the above cases, plaintiffs' claim is, at best, a claim that is not yet ripe for

2    adjudication. Even if the General Allotment Act remained unaffected by the Indian Reorganization

3    Act of 1934, plaintiffs would have no right to a fee patent for at least 25 years after the land was

4    taken into trust by the United States. Given that parcel number 597-080-01 was accepted into trust

5    no earlier than 1978, (see Compl., Ex. B), plaintiffs would not be able to obtain a fee patent until at

6    least 2003. Furthermore, as indicated by Yakima, when Congress passed the Indian

7    Reorganization Act of 1934, it "extended indefinitely the existing periods of trust applicable to

8    already allotted (but not yet fee patented) Indian lands." Yakima, 502 U.S. at 255. Thus, even if

9    plaintiffs had received an allotment under the General Allotment Act, the trust period was

10   extended indefinitely by the IRA, and plaintiffs would have no right to compel issuance of a fee

11   patent for the parcel. See id.

12   Furthermore, it is clear from the 1978 deed that the pertinent statute under which parcel

13   number 597-080-01 was accepted into trust by the United States, 25 U.S.C. § 465,[2] does not

14   provide for the issuance of fee patents to beneficiaries of the land. Although 25 U.S.C. § 348

15   contemplates a twenty-five year trust period after which a fee patent would be issued to the

16   beneficiary of the trust, section 348 is a part of the General Allotment Act of 1887 and is limited in

17   its application to "allotments provided for in *this* Act." See 25 U.S.C. § 348 (emphasis added). In

18   contrast, section 465, which sets forth the conditions under which parcel number 597-080-01 was

19   accepted into trust by the United States, does not contemplate a point at which the United States

20   will cease holding the land in trust and issue a fee patent to the beneficiaries of the land. Rather,

21   section 465 merely states,

22   The Secretary of the Interior is hereby authorized, in his discretion,
     to acquire, through purchase, relinquishment, gift, exchange, or
23   assignment, any interest in lands, water rights, or surface rights
     to lands, within or without existing reservations, including trust
24   or otherwise restricted allotments, whether the allottee be living

25

26   [2]Significantly, 25 U.S.C. § 465 contemplates the United States taking land into trust for the
     benefit of tribes *or* individual Indians. See 25 U.S.C. § 465 (stating that "title shall be taken in the
27   name of the United States in trust for the Indian tribe or individual Indian for which the land is
     acquired . . ."); see also Chase v. McMasters, 573 F.2d 1011, 1015 (8th Cir. 1978) (rejecting party's
28   contention that section 465 does not authorize the Secretary of the Interior to acceptance conveyance
     of title to land already owned in fee by an individual Indian for his benefit).

or deceased, for the purpose of providing land for Indians.

25 U.S.C. § 465. Plaintiffs point to no section *within the 1934 Act* providing for the issuance of a fee patent to Indians for whose benefit the United States holds land in trust under § 465.[3] Nor is the Court aware of any such provision. To the contrary, section 465 "set[s] forth a procedure by which lands held by Indian tribes may become tax exempt." Cass County v. Leech Lake Band of Chippewa Indians, 524 U.S. 103, 114 (1998). Under section 5 of the pre-1934 General Allotment Act, 25 U.S.C. § 348, land upon which a fee patent is issued not only becomes alienable and encumberable upon the issuance of the fee patent, but it also becomes subject to taxation. See Yakima, 502 U.S. at 263 and n.1. The issuance of a fee patent for land taken into trust under section 465 would directly contradict section 465's policy of providing tax exempt land for Indians and Indian tribes. See Cass County, 524 U.S. at 114-15. Thus, plaintiffs are not entitled to governmental issuance of a fee patent to parcel number 597-080-01, property taken into trust by the United States under section 465.

Finally, considering the evidence presented by defendants in their motion, plaintiffs cannot claim rights in parcel number 597-080-01 separately from those of the Jamul Tribe. First, considering the language of the 1978 deed, it is clear that parcel number 597-080-01 was not conveyed in trust to the United States solely for the benefit of the individual plaintiffs but rather for the Jamul Tribe as a whole. The 1978 deed conveys this parcel to "[t]he United States of America in trust for such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate." (Compl., Ex. B.) Simply because plaintiffs are by birth one-half degree or more Jamul Indian blood and have had continuous possession of the land does not result in the conclusion that they alone are entitled to control over the parcel. Rather, the language in the 1978

---

[3]It is unclear from plaintiffs' complaint and briefs whether they seek to compel the government to issue a fee patent or a trust patent. At one point in their complaint, plaintiffs state that they are seeking issuance of a trust patent. (See Compl. at 8, ¶ 2.) However, plaintiffs cite to 25 U.S.C. § 348, which provides for the issuance of a fee patent after the expiration of a twenty-five year trust period. (See id. at 4, ¶ 9.) Furthermore, plaintiffs cite in their briefs to case law pertaining to the issuance of fee patents. (See Pls.' Opp'n to Mot. Summary Judgment at 4.) Regardless of whether plaintiffs seek to compel the issuance of a fee or trust patent, it is clear that plaintiffs' claim fails on either basis in light of the 1978 deed's language designating the Tribe, rather than the individual plaintiffs, as the beneficiaries of parcel number 597-080-01.

01cv0951

trust conveyance deed clearly refers to the Jamul Tribe, especially in light of the fact that the 1978 deed also references 25 U.S.C. § 479, which defines "Indian[s]" as "all persons of Indian descent who are members of any recognized Indian tribe." 25 U.S.C. § 479. Section 479a further provides that the Secretary of the Interior is vested with the authority to recognize Indian tribes. 25 U.S.C. § 479a(2). Thus, the 1978 deed's reference to "such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate" is a reference to the *tribe*, rather than to the individual half-blooded Jamul Indians then residing on the land.

In addition to the 1978 deed, the 1978 letter from the United States Department of the Interior, attached to defendants' reply as Exhibit L, also shows that parcel number 597-080-01 was taken into trust for the benefit of the Jamul Tribe, rather than for the individual plaintiffs. This letter notes that, as of March 15, 1978, the Department of the Interior "ha[d] received eleven signatures out of the thirteen ½ bloods for the Bureau of Indian Affairs to proceed with the proposed acquisition through a donation to establish the Jamul Indian Reservation." (Defs.' Ex. L.) Thus, plaintiffs cannot claim an individual right, allotment or otherwise, to parcel 597-080-01. Rather, the parcel is held by the United States in trust for the benefit of the Jamul Tribe.[4] See F. Cohen, Handbook of Federal Indian Law, at 472 (1982 ed.) ("The manner in which a tribe chooses to use its property can be controlled by individual tribe members only to the extent that the members participate in the governmental processes of the tribe."). Because there is no genuine issue of material fact with respect to plaintiffs' rights in parcel number 597-080-01 and defendants are entitled to judgment as a matter of law, summary judgment is appropriate in this case.[5]

////

---

[4]To the extent that plaintiffs challenge the identity of the Jamul Tribe members and their leadership, this Court is not the proper forum for such a challenge. Rather, plaintiffs should continue to attempt to resolve their dispute regarding tribal leadership in the pending proceedings before the Interior Board of Indian Appeals. (See Pls.' Ex. D.)

[5]Because the Court finds that plaintiffs have raised no genuine issue of fact with respect to their entitlement to an allotment of parcel number 597-080-01, the Court does not address defendants' additional argument that the National Indian Gaming Commission is separately entitled to judgment on the pleadings. Even if plaintiffs could establish allotment rights in parcel number 597-080-01, plaintiffs have not shown that their claim is ripe for judicial review given that the NIGC has not issued a final decision regarding the proposed gaming contract that is reviewable under Sections 701 through 706 of the Administrative Procedure Act.

- 14 -

01cv0951

# CONCLUSION

Accordingly, for the reasons stated above, the Court **GRANTS** defendants' motion for summary judgment. The Court **DENIES** defendants' motion to dismiss, or in the alternative, for judgment on the pleadings.

**IT IS SO ORDERED.**

Dated: _Feb. 13, 2002_

_Irma E. Gonzalez_
**IRMA E. GONZALEZ**
United States District Judge

cc:  Magistrate Judge Houston
     all parties

01cv0951

1  Patrick D. Webb, Esq. SBN 82857
   WEBB & CAREY APC
2  401 B Street Ste 306
   San Diego, CA 92101
3  (619) 236-1650
   (619) 236-1283 (Fax)
4
   Attorneys for **Plaintiffs**
5

6              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7                   **FOR THE COUNTY OF SAN DIEGO**

8  WALTER ROSALES, KAREN            )    Case No.  GIC 878709
   TOGGERY, JAMUL INDIAN VILLAGE,   )
9  ESTATE OF HELEN CUERO, ESTATE    )
   OF DEAN ROSALES, ESTATE OF       )    **COMPLAINT FOR DECLARATORY**
10 MARIE TOGGERY, ESTATE OF         )    **AND INJUNCTIVE RELIEF**
   MATTHEW TINEJERO TOGGERY,        )
11                                  )
             Plaintiffs,            )
12                                  )
   v.                               )
13                                  )
   STATE OF CALIFORNIA, and its     )
14 NATIVE AMERICAN HERITAGE         )
   COMMISSION and WATER RESOURCES   )
15 CONTROL BOARD, and DOES 1-20,    )
                                    )
16           Defendants.            )
   _____

17

18
        Plaintiffs, WALTER ROSALES, KAREN TOGGERY, JAMUL INDIAN VILLAGE,
19
   ESTATE OF HELEN CUERO, ESTATE OF DEAN ROSALES, ESTATE OF MARIE
20
   TOGGERY, ESTATE OF MATTHEW TINEJERO TOGGERY, are informed and believe and
21
   thereupon allege as follows:
22
                              **PARTIES**
23
        1.      Plaintiffs, WALTER J. ROSALES, and KAREN TOGGERY, are Native
24
   American residents of San Diego County of one-half or more degree of California Indian blood,
25
   are enrolled members and lawfully elected officers of the Plaintiff, JAMUL INDIAN VILLAGE
26
   (hereinafter VILLAGE), and duly authorized to file this action on behalf of the VILLAGE,
27
   which is a tribal governmental entity of Kumeyaay Indians, recognized by the United States'
28
   Congress, governed by a Constitution adopted on May 9, 1981, pursuant to the Indian
29
   Reorganization Act of 1934, 25 U.S.C. 461 et seq., and located in Jamul, California.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

2.      Plaintiff, WALTER J. ROSALES, is also a lineal descendant and son of Native American, Helen Cuero, the personal representative of his mother's estate, the Estate of Helen Cuero, the personal representative of his son's estate, the Estate of Dean Rosales, and a lienal descendant with ownership and control of her human remains and Native American cultural items, and his un-named baby brother's human remains and Native American cultural items, as set forth in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001-2.

3.      Plaintiff, KAREN TOGGERY, is also a lineal descendant and daughter of Native American, Marie Toggery, and the personal representative of her mother's estate, the Estate of Marie Toggery, as well as the mother of her son Matthew Tinejero Toggery, and the personal representative of the Estate of Matthew Tinejero Toggery, and a lineal descendant with ownership and control of their human remains and Native American cultural items, as set forth in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001-2.

4.      At all times mentioned herein, Defendant, STATE OF CALIFORNIA, and its NATIVE AMERICAN HERITAGE COMMISSION and WATER RESOURCES CONTROL BOARD, are and were, public entities.

5.      The true names and capacities, whether individual, corporate, associate or otherwise, of DOE 1, is unknown to Plaintiffs at this time, who, therefore, sue said Defendant by said fictitious name.  Plaintiffs are informed and believe, and based thereon allege, that DOE 1 is responsible in some measure for the actions, events and happenings herein alleged, and was the legal cause of injury and damages to the Plaintiffs as herein alleged, including, but not limited to having contracted to grade Parcels 597-080-04, 597-080-05, 597-080-06, and thereby causing irreparable damage to Native American human remains, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, by knowingly and/or willfully mutilating, disinterring, wantonly disturbing, and willfully removing them without authority of law.  When the true names and capacities of said Defendants are ascertained by Plaintiffs, Plaintiffs will seek leave to amend this complaint to insert their true names and capacities, or will serve said Doe Defendants when they become known.

6.    The true names and capacities, whether individual, corporate, associate or otherwise, of DOES 2-20, inclusive, are unknown to Plaintiffs at this time, who, therefore, sue said Defendants by said fictitious names.  Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Defendants is responsible in some measure for the actions, events and happenings herein alleged, and was the legal cause of injury and damages to the Plaintiffs as herein alleged.  When the true names and capacities of said Defendants are ascertained by Plaintiffs, Plaintiffs will seek leave to amend this complaint to insert their true names and capacities, or will serve said Doe Defendants when they become known.

7.    At all times herein mentioned, Defendants, and each of them, were the agent, employee and/or joint venturer of their co-defendants, and were acting within the course and scope of such agency, employment and/or joint venture, with the permission and consent of their co-defendants and defendants. Furthermore, that at all times herein mentioned, Defendants, while acting as principals, expressly directed, consented to, approved, affirmed and ratified each and every action taken by the other herein alleged. Each reference to one defendant is also a reference to each and every other defendant.  Plaintiffs are informed and believe and thereon allege that the defendants, and each of them, conspired with each other, to engage in acts in furtherance of a conspiracy to wrongfully and illegally violate the Plaintiffs' rights, rendering each of the defendants jointly and severally liable for all resulting and irreparable injury and damage to Plaintiffs.

8.    Plaintiffs, WALTER ROSALES, KAREN TOGGERY, and the JAMUL INDIAN VILLAGE, are also plaintiffs in two federal actions known as <u>Rosales et al. v. United States et al.</u>, Case No. 1:03CV01117, pending before Judge Gladys Kessler of the United States District Court for the District of Columbia, and <u>Rosales et al. v. United States et al.</u>, Case No. 98-960-L, pending before Judge Edward Damich of the United States Court of Federal Claims in Washington, D.C.

9.    The United States Court of Federal Claims action has been stayed, on the United States, Department of Interior's motion, "pending final resolution of the related case of <u>Rosales et al. v. United States</u> (1:03cv1117), which is in the U.S. District Court for the District of Columbia." See, Judge Damich's February 1, 2006 Order, attached as Exhibit I hereto, and the

Joint Status Report Requesting Continuance of the Stay by the United States, Department of Interior et al. and the Plaintiffs, attached as Exhibit J hereto, which sets forth the basis and chronology of the on-going stay of the Court of Federal Claims action, pending final resolution of the appeal of the IBIA' decisions to the District Court for the District of Columbia, regarding who is a lawful member of the Village, and who are the lawfully elected leaders of the Village, and thereby who has standing to bring these various actions.

## GENERAL ALLEGATIONS

10.     For more than 100 years, the Native American families of which the Plaintiffs are the lineal descendants have inhumed, interred and deposited hundreds of their deceased family members' human remains, and items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

11.     The individual Plaintiffs have personal knowledge of at least 20 Native Americans whose human remains, and items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, have been interred and deposited on three parcels of land, originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05, and 597-080-06.

12.     On September 26, 1912, J.D. Spreckel's Coronado Beach Company deeded 2.21 acres of land in Jamul, California, to the Roman Catholic Bishop of Monterey and Los Angeles, a corporate in sole of the State of California, "to be used for the purposes of an Indian graveyard and approach thereto," as set forth in Exhibits A and B hereto, and now known as parcels 597-080-05 and 597-080-06.  In 1912, Father LaPointe and the Roman Catholic church erected a chapel at the cemetery, and since 1956 the diocese of St. Pius Xavier has maintained the chapel, on the parcel now known as 597-080-05, for the purpose of ministering at the Indian cemetery.

13.     From their birth, the Plaintiffs were the lineal descendants of the Native American families that have occupied and possessed that cemetery and the property contiguous to that

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Indian graveyard in Jamul, California, for more than 100 years, which private property was owned at various times since 1831 by Mexican Governor and Don, Pio Pico, U.S. General Henry S. Burton and his widow Maria Amparo Ruiz de Burton, John D. Spreckel's Coronado Beach Company, and later by the Lawrence and Donald Daley families, and the Catholic Diocese, as reflected in Exhibits A, B, C and D hereto.[1]

14.    During the latter part of the 1970's the Plaintiffs and their families negotiated a gift of that certain property of which they were in possession from the Daley families and the Catholic Diocese.  The Daley families agreed to convey title to the land then occupied by the Plaintiffs' families to the United States in trust for the explicit benefit of those half-blood Jamul Indians then occupying the property. The Daley families specifically agreed to this form of conveyance in order to provide a place for the Plaintiffs and their families to live in perpetuity, and to provide a place protected by the United States as a trustee to protect the living and the dead against all forms of alienation, trespass, desecration, mutilation, disinterment, and any other infringement.

15.    On December 27, 1978, Lawrence and Donald Daley, recorded a grant deed of parcel 597-080-01, consisting of approximately 4.66 acres, to "the United States of America in trust for such Jamul Indians of one-half degree or more Indian blood as the Secretary of the Interior may designate," as set forth in Exhibit D hereto.

16.    The Secretary of the Interior through his subordinates designated the individual Plaintiffs and the Native American families then possessing and residing on parcel 597-080-01, as the beneficial owners thereof, by locating said individual Indians on the parcel, providing for their needs, acquiescing in their continued presence on, and use of, the parcel for more than 28 years, in building houses for them on the parcel, and in providing them with services usually accorded to Indians living on such property, and further providing strong and uncontroverted evidence of their designation as the beneficial owners of parcel 597-080-01, as a matter of law, within the meaning of the grant deed, and as set forth in Coast Indian Community v. U.S. (Fed.

_____

[1] See also, United States v. Pio Pico (1870) 27 F.Cas. 537; Estate of Burton (1883) 63 Cal. 36; G.W.B.McDonald, Administrator v. Burton (1886) 68 Cal. 445; Henry H. Burton v. Maria A. Burton (1889) 79 Cal. 490; In re Burton's Estate (1892) 93 Cal. 459; and McDonald v. McCoy (1898) 121 Cal. 55.

Cl. 1977) 550 F.2d 639, <u>United States v. Assiniboine Tribe</u> (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 <u>Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974</u> at 668, 724, 747, and 1479.

17.  The December 27, 1978 grant deed was recorded nearly three years before the Constitution of the Jamul Indian Village was adopted, and three years before the Congress of the United States recognized the creation of the Jamul Indian Village, as an Indian tribe under the Indian Reorganization Act of 1934. This deed was accepted by the United States on December 27, 1978, pursuant to Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. 465.

18.  Parcel 597-080-01, now known as parcel 597-080-04, was not acquired for a tribe, leaving only the possibility under 25 U.S.C. 465 that it was purchased and taken in trust for the individual Indian Plaintiffs and the Native American families then possessing and residing on the parcel, as set forth in <u>Coast Indian Community v. U.S.</u> (Fed. Cl. 1977) 550 F.2d 639, <u>United States v. Assiniboine Tribe</u> (Fed. Cl. 1970) 428 F.2d 1324, 1329-30, and 1 <u>Opinions of the Solicitor of the Department of Interior Relating to Indian Affairs 1917-1974</u> at 668, 724, 747, and 1479.  The individual Plaintiffs thereby became beneficial owners of parcel 597-080-01, now known as 597-080-04, under Section 5 of the Indian Reorganization Act of 1934, 25 U.S.C. 465.

19.  On May 9, 1981, Plaintiff WALTER J. ROSALES, Chairperson of those Indians seeking to re-organize as the VILLAGE, certified on behalf of the election board, that sixteen of twenty three registered voters adopted the VILLAGE constitution. The United States acknowledged the adoption of the constitution on July 7, 1981, and the Congress of the United States recognized the VILLAGE by publication in the Federal Register on November 24, 1982. 47 Fed. Reg. 53130, 53132 (Nov. 24, 1982).

20.  When the VILLAGE was created on May 9, 1981, under the terms of the Indian Reorganization Act of 1934, it was a landless governmental entity.  To date, the United States has not set aside or created an Indian reservation for the VILLAGE. The United States Department of Interior, Bureau of Indian Affairs, August 3, 2000 response to the Plaintiffs' Freedom of Information Act (FOIA) request, confirms that the "current trust parcel was accepted into trust in 1978 for Jamul Indians of ½ degree (4.66 acres)," and that there is "no record of the

1978 trust parcel being known as the Jamul Village," as reflected in Exhibit E hereto.

21.  <u>Coast Indian Community v. U.S.</u> (Fed. Cl. 1977) 550 F.2d 639, held on nearly identical facts, that the parcel in question, "was not acquired for a tribe, leaving only the possibility under the [Indian Reorganization] Act that it was purchased for individual Indians. The deed and proclamation say nothing to contradict this. Thus, the land was taken in trust for the individual Indians." 550 F2.d 639, 651, n. 32.  This is also consistent with Governor Arnold Schwarzenegger's Legal Affairs Secretary's December 20, 2005 letter to the Jamul Indian Village. Exhibit F hereto.

22.  Subsequently, the Catholic Diocese agreed to deed a portion of the Indian Cemetery to the VILLAGE for the purpose of maintaining the road and utilities to the remainder of the Indian cemetery, as required by, and provided in, the original Coronado Beach Company deed to the Catholic Diocese. On July 27, 1982, the Roman Catholic Bishop of San Diego, successor to the Roman Catholic Bishop of Monterey and Los Angeles, a corporation sole, recorded a grant deed of a portion of parcel 597-080-02, now known as 597-080-05, consisting of approximately 1.372 acres, to "the United States of America in trust for the Jamul Indian Village," as set forth in Exhibit G hereto.  Excepted therefrom was that portion of the Coronado Beach Company land grant, now known as parcel 597-080-06, consisting of approximately .838 acres where some of the Native American human remains were interred, to which the Catholic Diocese retains title. The Catholic Diocese also explicitly reserved "to [itself and its] successors or assigns an easement for (1) utility service lines and (2) ingress and egress over the existing well-traveled road," which extends the entire length of the north edge of the 1.372 acres, and which the San Diego County tax assessor's maps continue to describe as "the Indian cemetery," as set forth in  Exhibit H hereto.

23.  By virtue of these afore-described acts, a Native American sanctified cemetery, place of worship, religious and ceremonial site, and sacred shrine, as defined by Cal. Pub. Res. Code 5097.9, have been located on the parcels now known as 597-080-04, 597-080-05, and 597-080-06.

24.  Plaintiff Walter J. Rosales was personally present when his un-named younger

1  brother's human remains, his mother, Helen Cuero's human remains, and his son, Dean Rosales'

2  human remains, were inhumed, interred, and deposited, along with the items associated with

3  their human remains, including, but not limited to grave goods, cultural items, associated

4  funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res.

5  Code 5097.9-5097.99, and 25 U.S.C. 3001, on what are now known as Parcels 597-080-04 and

6  597-080-06.

7          25.     Plaintiff Karen Toggery was personally present when her mother, Marie

8  Toggery's human remains and her son, Matthew Tinejero Toggery's human remains, were

9  inhumed, interred and deposited, along with the items associated with their human remains,

10  including, but not limited to grave goods, cultural items, associated funerary objects, sacred

11  objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99,

12  and 25 U.S.C. 3001, on what are now known as Parcels 597-080-04 and 597-080-06.

13          26.     On or about December 10, 2005, all residents of Parcels 597-080-04 and 597-080-

14  05, and 597-080-06, except Walter Rosales, Karen Toggery and Vivian Flores, abandoned their

15  residences on the Parcels, and have been living continuously in other locations in San Diego

16  County.

17          27.     During 2006, Plaintiffs have repeatedly put the Defendants and a faction of

18  individuals, many of whom are not lawful members of the Jamul Indian Village, who have

19  contracted with an unidentified grading contractor to unlawfully build a gambling casino on the

20  Plaintiffs' parcel, now known as 597-080-04, on written notice of Plaintiffs' ownership and

21  control, as lineal descendants, of their deceased Native American family members' human

22  remains, and the items associated with their human remains, including, but not limited to grave

23  goods, cultural items, associated funerary objects, sacred objects, and objects of cultural

24  patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that for more

25  than 100 years have been inhumed, interred and deposited on these three parcels of land,

26  originally known as 597-080-01 and 597-080-02, and now known as 597-080-04, 597-080-05,

27  and 597-080-06.

28          28.     Despite such written notice from the Plaintiffs, a Notice of Intent Associated with

29  Construction Activity has been prepared for the California State Water Resources Control Board

and executed on behalf of a general contractor, known as McCarthy Building Companies, Inc., indicating that an unidentified grading contractor will begin grading during January 2007, on 7.2 acres of an 8.9 acre construction site for a 14 story gambling casino and hotel, among parcels now known as 597-080-04, 597-080-05 and 597-080-06.

29.    No permit required by Title 16 U.S.C. 470cc has been posted by any federal land manager on the property for anyone to grade or excavate parcels now known as 597-080-04, 597-080-05 and 597-080-06. Nor can any such permit be granted by any federal land manager under 16 U.S.C. 470cc, without the consent of the Indian owning or having jurisdiction over such lands, which consent the Plaintiffs, who are the beneficial landowners of 597-080-04, have not granted.

30.    Nor has the San Diego County coroner been notified by any grading contractor of the intent to excavate and/or disturb human remains or the site of any nearby area reasonably suspected to overlie adjacent human remains, as required by Cal. Health & Safety Code 7050.5; nor has the Native American Heritage Commission been notified, until now, of the existence of Native American human remains and associated Native American artifacts, grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, on said parcels, as required by Cal. Health & Safety Code 7050.5.

31.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause irreparable damage to the Plaintiffs' Native American human remains, along with the items associated with their human remains, including, but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, by knowingly and/or willfully mutilating, disinterring, wantonly disturbing, and willfully removing them without authority of law. Knowingly mutilating, disinterring, wantonly disturbing, and willfully removing such human remains without authority of law is a crime, under Cal. Health & Safety Code 7050.5, and any person willfully mutilating or disinterring any remains known to be human without authority of law is guilty of a felony, under Cal. Health & Safety Code 7052, as is anyone obtaining or possessing, or who removes with malice or wantonness, and without authority of law, any Native

American artifacts or human remains from a Native American grave or cairn, pursuant to Cal. Pub. Res. Code 5097.99.

32.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will also cause irreparable damage to, and interfere with, the Plaintiffs' free expression and exercise of Native American religion as provided in the United States Constitution and the California Constitution, and shall cause severe and irreparable damage to the Plaintiffs' Native American sanctified cemetery, place of worship, religious or ceremonial site, and sacred shrines located on said parcels.

33.    Grading parcels now known as 597-080-04, 597-080-05 and 597-080-06 will cause the Plaintiffs severe personal, physical and bodily injury, including severe emotional distress, all in excess of the jurisdictional limit of this court, subject to proof at trial. Such acts will also unduly interfere with the Plaintiffs' civil rights to due process and equal protection of the laws. Plaintiffs will be greatly and irreparably damaged by reason of Defendants' infringement and violation of these civil rights, and unless Defendants are enjoined by this court, said acts will further violate Plaintiffs' civil rights, and further irreparably harm the Plaintiffs.

34.  To prevent such wrongful conduct of the defendants as herein alleged, Plaintiffs are entitled to a temporary, preliminary and permanent injunction to prevent great and irreparable injury resulting from the infringement and violation of these personal and civil rights, from the likelihood that damages cannot properly compensate Plaintiffs for such irreparable personal harm, and that Defendants will be unable to respond in damages, and from the difficulty or impossibility to ascertain the exact amount of personal bodily injury and property damage Plaintiffs have sustained, and will in the future sustain. These ongoing and continuing injuries sustained by Plaintiffs cannot be fully compensated in damages and Plaintiffs are without an adequate remedy at law without the imposition of the requested equitable injunctive relief.

35.    This court has jurisdiction over Plaintiffs' personal injury claims arising under both California common and statutory law, to the same extent that any other California court has jurisdiction over other civil causes of action, and those civil laws of California that are of general application to private persons or private personal property shall have the same force and effect, as they have elsewhere within California, because Plaintiffs are Indians and their causes of

action arise in California, pursuant to Public Law 280 and 28 U.S.C. 1362, as held in <u>People v.</u>

<u>Van Horn</u> (1990) 218 Cal. App.3d 1378. See also, 25 U.S.C. 3009: "Nothing in this chapter shall

be construed to–(3) deny or otherwise affect access to any court; (4) limit any procedural or

substantive right which may otherwise be secured to individuals..."

## FIRST CAUSE OF ACTION

### (For Declaratory and Injunctive Relief against all Defendants)

36.    Plaintiffs incorporate by reference each and every allegation contained in

paragraphs 1 through 34, inclusive, of this complaint as though fully set forth herein.

37.    Cal. Pub. Res. Code 5097.9 provides that no public agency and no private party

using or occupying public property, or operating on public property, under a public license,

permit, grant, lease, or contract made on or after July 1, 1977, shall in any manner whatsoever

interfere with the free expression or exercise of Native American religion as provided in the

United States Constitution and the California Constitution; nor shall any such agency or party

cause severe or irreparable damage to any Native American sanctified cemetery, place of

worship, religious or ceremonial site, or sacred shrine located on public property, where, as here,

there is no clear and convincing showing that the public interest and necessity so require.

38.    The personal rights of the Plaintiffs, as the beneficial owners of parcels 597-080-

04, 597-080-05, and 597-080-06, and the lineal descendants of their Native American ancestors,

cannot be adequately protected without the cooperation of the State of California and its Native

American Heritage Commission and Water Resources Control Board in preventing grading on

these parcels. Cal. Pub. Res. Code 5097.95 provides that each state and local agency shall

cooperate in carrying out its duties under the California Native American Graves Protection Act,

as codified in Cal. Pub. Res. Code 5097.9-5097.99.

39.    This action is brought in the Superior Court of the State of California to enjoin the

State of California and its Native American Heritage Commission and Water Resources Control

Board from allowing any grading of these parcels, in order to maintain the Plaintiffs' preferences

that the Native American human remains and associated cultural items remain "in place," as set

forth in 25 U.S.C. 3001-2, including but not limited to grave goods, cultural items, associated

funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1    Code 5097.9-5097.99, and 25 U.S.C. 3001, which have been inhumed, interred, and deposited on

2    the parcels now known as 597-080-04, 597-080-05, and 597-080-06 over the last 100 years.

3        40.    If the State of California and its Native American Heritage Commission and

4    Water Resources Control Board are not enjoined from allowing grading on these parcels, the

5    Plaintiffs will continue to suffer severe and irreparable personal injury, physical and bodily

6    injury, including severe emotional distress from the published intention of the Doe Defendant

7    grading contractors, who have not yet been publicly identified, to knowingly and/or wilfully

8    mutilate, disinter, wantonly disturb, willfully remove and otherwise excavate, disturb and cause

9    severe and irreparable damage to the Plaintiffs' ancestors human remains, along with the items

10   associated with their human remains, including but not limited to grave goods, cultural items,

11   associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal.

12   Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001.

13       41.    Cal. Pub. Res. Code 5097.97 provides that in the event that any Native American

14   individual, such as the individual Plaintiffs, advises the California Native American Heritage

15   Commission that a proposed action by a public agency may cause severe or irreparable damage

16   to a Native American sanctified cemetery, place of worship, religious or ceremonial site, or

17   sacred shrine located on public property, or may bar appropriate access thereto by Native

18   Americans, and the proposed action would result in such damage or interference, and the public

19   agency fails to accept the mitigation measures recommended, an action is further authorized by

20   Cal. Pub. Res. Code 5097.94 to prevent severe and irreparable damage to, and to assure

21   appropriate access for Native Americans to, the Native American sanctified cemetery, place of

22   worship, religious or ceremonial site, or sacred shrine located on public property.

23       42.    Cal. Pub. Res. Code 5097.94 further provides that where, as here, severe and

24   irreparable damage will occur, appropriate access will be denied, appropriate mitigation

25   measures are not available, and there is no clear and convincing evidence that the public interest

26   and necessity require otherwise, the court shall issue an injunction, to prevent severe and

27   irreparable damage to, and to assure appropriate access for Native Americans to, the Native

28   American sanctified cemetery, place of worship, religious or ceremonial site, or sacred shrine

29   located on public property.  The California legislature specifically provided, in enacting the 1982

1  amendments to Cal. Pub. Res. Code 5097.94, that: "The purpose of the act is:  To provide

2  protection to Native American human burials and skeletal remains from vandalism and

3  inadvertent destruction."

4      43.    Similarly, Cal. Pub. Res. Code 5097.98, as amended September 30, 2006,

5  provides that upon the discovery of Native American human remains, which may be an

6  inhumation or cremation, and in any state of decomposition or skeletal completeness, the

7  landowner shall ensure that the immediate vicinity, according to generally accepted cultural or

8  archaeological standards or practices where the Native American human remains are located, is

9  not damaged or disturbed by further development activity, so long as the lineal descendants'

10  preferences are to preserve the Native American human remains and associated items in place,

11  and that any items associated with the human remains that are placed or buried with the Native

12  American human remains are to be treated in the same manner as the remains.

13      44.    Plaintiffs are the beneficial landowners and lineal descendants' with ownership

14  and control of their predecessors' human remains and Native American and associated cultural

15  items, as set forth in 25 U.S.C. 3001-2, including, but not limited to grave goods, cultural items,

16  associated funerary objects, sacred objects, and objects of cultural patrimony, as defined in Cal.

17  Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, which have been inhumed, interred, and

18  deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06 over the last

19  100 years.  Plaintiffs' preferences are to preserve the Native American human remains and

20  associated cultural items in place, as set forth in Cal. Pub. Res. Code 5097.98 and 25 U.S.C.

21  3001-2, including, but not limited to grave goods, cultural items, associated funerary objects,

22  sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-

23  5097.99, and 25 U.S.C. 3001.

24      45.    Therefore, since the individual Plaintiffs, lineal descendants of the Native

25  Americans whose human remains, and the items associated with their human remains, including,

26  but not limited to grave goods, cultural items, associated funerary objects, sacred objects, and

27  objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C.

28  3001, have been inhumed, interred, and deposited on the parcels now known as 597-080-04,

29  597-080-05 and 597-080-06 over the last 100 years, seek to preserve these Native American

1  human remains and associated items in place, the court is required to issue an injunction to

2  prevent their mutilation, disinterment, removal, excavation, disturbance and severe and

3  irreparable damage.

4      46.  An actual controversy has arisen and now exists between Plaintiffs and Defendants

5  regarding their respective rights, duties and obligations in that Plaintiffs contend that Defendants

6  are liable to Plaintiffs for the statutory, contractual, and tortious deprivations of their civil rights

7  alleged herein, and defendants deny such liability to Plaintiffs.

8      47.  Plaintiffs desire a judicial determination of the respective rights of Plaintiffs and

9  Defendants.

10      48.  Such a declaration is necessary and appropriate at this time so that the parties may

11  ascertain their rights and duties with respect to each other.

12      49.  Plaintiffs have been greatly and irreparably damaged by reason of said Defendants'

13  statutory, contractual, and tortious deprivations of Plaintiffs' personal and civil rights alleged

14  herein, and unless Defendants are enjoined by this court, they will continue the violation of

15  Plaintiffs' rights further irreparably harming the Plaintiffs.

16      50.  As a result of the wrongful conduct of said defendants as herein alleged, Plaintiffs

17  are entitled to a temporary, preliminary and permanent injunction to prevent great and

18  irreparable injury resulting from the infringement and violation of their personal and civil rights,

19  from the likelihood that Defendants will be unable to respond in damages, and from the

20  difficulty or impossibility to ascertain the exact amount of personal bodily injury and damage

21  Plaintiffs have, and will in the future, sustain. These ongoing and continuing injuries sustained

22  by Plaintiffs cannot be fully compensated in damages and Plaintiffs are without an adequate

23  remedy at law without the imposition of the requested equitable injunctive relief.

24  **WHEREFORE** Plaintiffs pray for judgment as follows:

25      1.    That the Defendants, and their officers, agents, servants, employees and attorneys

26  and all persons in active concert with them, or any of them, be temporarily, preliminarily and

27  permanently enjoined from grading, excavating, operating heavy equipment, moving dirt and/or

28  gravel, or any other construction activities on the parcels now known as 597-080-04, 597-080-05

29  and 597-080-06, and otherwise mutilating, disinterring, removing, excavating, and disturbing in

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

any way, any Native American human remains, and the items associated with their human

remains, including, but not limited to grave goods, cultural items, associated funerary objects,

sacred objects, and objects of cultural patrimony, as defined in Cal. Pub. Res. Code 5097.9-

5097.99, and 25 U.S.C. 3001, that have been inhumed, interred, and deposited on the parcels

now known as 597-080-04, 597-080-05 and 597-080-06;

2.    That the State of California and its Native American Heritage Commission and

Water Resources Control Board, and their officers, agents, servants, employees and attorneys

and all persons in active concert with them, or any of them, be temporarily, preliminarily and

permanently enjoined from allowing any grading, excavating, operating heavy equipment,

moving dirt and/or gravel, or any other construction activities, on the parcels now known as 597-

080-04, 597-080-05 and 597-080-06, and otherwise allowing any mutilating, disinterring,

removing, excavating, and disturbing in any way, any Native American human remains, and the

items associated with their human remains, including, but not limited to grave goods, cultural

items, associated funerary objects, sacred objects, and objects of cultural patrimony, as defined

in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed, interred,

and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06;

3.    That the State of California and its Native American Heritage Commission and

Water Resources Control Board, and their officers, agents, servants, employees and attorneys

and all persons in active concert with them, or any of them, be temporarily, preliminarily and

permanently enjoined from failing to protect "in place" any Native Americans human remains,

and the items associated with their human remains, including, but not limited to grave goods,

cultural items, associated funerary objects, sacred objects, and objects of cultural patrimony, as

defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have been inhumed,

interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and 597-080-06, to

protect them from mutilation, disinterment, removal, excavation, and disturbance.

4.    That the court declare that the Doe Defendants are liable for money damages for

any mutilation, disinterment, removal, excavation, and disturbance of any Native Americans

human remains, and the items associated with their human remains, including, but not limited to

grave goods, cultural items, associated funerary objects, sacred objects, and objects of cultural

patrimony, as defined in Cal. Pub. Res. Code 5097.9-5097.99, and 25 U.S.C. 3001, that have

been inhumed, interred, and deposited on the parcels now known as 597-080-04, 597-080-05 and

597-080-06;

5. That Plaintiffs be awarded their reasonable attorneys' fees, costs, and expenses in

this action; and

6. That Plaintiffs be awarded such other and further relief as this court may deem

just and proper.

### JURY DEMAND

Plaintiffs hereby demand trial by jury.

Dated: January 19, 2007          **WEBB & CAREY**

/s/ Patrick Webb
Patrick D. Webb for Plaintiffs
WALTER ROSALES, KAREN TOGGERY,
JAMUL INDIAN VILLAGE, ESTATE OF HELEN
CUERO, ESTATE OF DEAN ROSALES, ESTATE OF
MARIE TOGGERY, ESTATE OF MATTHEW
TOGGERY