# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WALTER J. ROSALES, ESTATE OF HELEN CUERO, ESTATE OF DEAN ROSALES, P.O. Box 85, Jamul, California, 91935 | ) ) ) ) ) | **CASE NUMBER:**    1:07-cv-00162 |
| KAREN TOGGERY, ESTATE OF MARIE TOGGERY, ESTATE OF MATTHEW TOGGERY, P.O. Box 375, Jamul, California, 91935 | ) ) ) ) ) | **JUDGE:**    Judge Rosemary M. Collyer  **DECK TYPE:**    Tribal Rights  **DATE STAMP:** |
| JAMUL INDIAN VILLAGE, a federally recognized Indian tribe, P.O. Box 612 Jamul, California, 91935 | ) ) ) ) |  |
| Plaintiffs, | ) ) |  |
| v. | ) ) |  |
| UNITED STATES OF AMERICA, DEPARTMENT OF THE INTERIOR, by and through DIRK KEMPTHORNE, in his official capacity, | ) ) ) ) ) |  |
| BUREAU OF INDIAN AFFAIRS, by and through Assistant Secretary of Indian Affairs, CARL J. ARTMAN.[1] | ) ) ) ) |  |
| Defendants. | ) ) ) |  |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

---

[1]Carl J. Artman has replaced James Cason as Assistant Secretary - Indian Affairs and is therefore substituted for James Cason as a named defendant in his official capacity pursuant to Fed. R. Civ. P. 25(d).

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STANDARD OF REVIEW .................................................................................. 4

ARGUMENT ......................................................................................................... 6

I.  Plaintiffs Cannot Succeed on Their Claims Pursuant to NAGPRA ......................... 6

II.  Plaintiffs Cannot Succeed on Their Claims of Beneficial Ownership of Parcel 04 In the Absence of the Tribe ......................................................................... 8

III.  Plaintiffs' Trespass Claim Must Fail ......................................................... 9

IV.  Plaintiffs Have Not Shown Irreparable Injury and the Balancing of the Equities and the Public Interest Favors in Denying Emergency Injunctive Relief ............... 12

CONCLUSION ..................................................................................................... 13

**INTRODUCTION**

Defendants United States of America, Department of the Interior, Dirk Kempthorne, Secretary, Department of Interior, Bureau of Indian affairs, and Carl J. Artman,[2] respectfully submit this memorandum in opposition to Plaintiffs' Emergency Motion for Temporary Restraining Order ("Pl. Mot.") (Doc. 20). Defendants incorporate by reference their opposition to Plaintiffs' Motion for Preliminary Injunction and their sur-reply in further opposition to Plaintiffs' Motion for Preliminary Injunction (Docs. 7 and 15, respectively). Plaintiffs' Motion raises the same beneficial ownership, trespass and Native American Graves Protection and Repatriation Act ("NAGPRA") claims as their Motion for Preliminary Injunction – and must fail for the same reasons.

Plaintiffs' motion for a preliminary injunction has been fully briefed. Plaintiffs now assert that a temporary restraining order is needed to prevent "any further alienation of their right to possession and quiet enjoyment of their homes and parcel 04" and to prevent grading of Parcel 04 until such time as the Court rules on Plaintiffs' motion for a preliminary injunction.[3] For the

---

[2] James E. Cason is not the Assistant Secretary of Indian Affairs. Rather, he is the Associate Deputy Secretary of the U.S. Department of the Interior. The Assistant Secretary - Indian Affairs is now Carl J. Artman.

[3] Plaintiffs have also filed an action in California state court requesting a preliminary injunction to prevent the state government from failing to prevent grading on Parcels 04, 05 and 06. *See* Pl. Mot. at 3. According to Plaintiffs, they were granted a temporary restraining order by a California State court judge on February 2, 2007, to prevent GMH Manufactured Housing Services from removing certain manufactured housing from Parcels 04 and 05. *See id.* However, on March 6, 2007, Plaintiffs requested to dismiss without prejudice GMH Manufactured Housing Services as a party to the state court proceeding. *See* Exhibit A.

On March 12, 2007, Plaintiffs also sent a letter to Richard Dietrich of the Dietrich Corporation informing Mr. Dietrich that Plaintiffs would seek a temporary restraining order in California state court "prohibiting you and Dietrich Corporation from grading or conducting any other similar

1

reasons previously discussed by Defendants in their opposition to Plaintiffs' Motion for

Preliminary Injunction and their sur-reply in further opposition to Plaintiffs' Motion for

Preliminary Injunction, Plaintiffs are not entitled to injunctive relief of any kind against

Defendants to prevent grading on Parcels 04, 05 and 06.  Further, several hours after Plaintiffs

filed their emergency motion, Plaintiffs informed this Court that demolition of the homes is now

complete.  *See* Second Supplemental Declaration of Patrick D. Webb ("Webb Second Supp.

Decl.") (Doc. 22).  Therefore, their claim in this regard is moot.  Additionally, their claims

regarding their supposed right to the "possession and quiet enjoyment of their homes" does not

appear on the face of the Complaint, and thus would not be addressed by any ruling from the

Court on Plaintiffs' motion for a preliminary injunction.

       Plaintiffs' recitation of the events that allegedly occurred on over the past several days in

no way involve Defendants, nor do Plaintiffs allege any federal involvement.  In particular,

Plaintiffs are concerned with the actions of McCarthy Building Companies Inc., whom Plaintiffs

allege are the contractor for the federally recognized Tribe.  *See* Pl. Opp. at 8.  However, neither

the Tribe nor McCarthy Building Companies Inc. are parties to this action, and thus are not

before this Court.   Further, as Defendants have previously explained, any claims by Plaintiffs

that implicate the beneficial ownership of the land cannot be adjudicated in the absence of the

federally recognized Tribe.  *See* Doc. 15 at 19-21; Doc. 7 at 23-25.  Plaintiffs' request for a

temporary restraining order clearly implicates the question of the beneficial ownership of the

land, just as their request for a preliminary injunction does.

---

construction activities on Parcels 04, 05 and 06. . . ."  *See* Exhibit B.  A hearing on this motion
was held at 8:45 am, Pacific Standard Time before Judge Ronald Prager.  Another hearing on the
matter has been set for today, March 14, 2007.

Specifically, Plaintiffs' claims regarding beneficial ownership, trespass and "forcible removal" are all premised on the argument that Plaintiffs are the beneficial owners of Parcel 04. As set forth in greater detail in Defendants' briefing on the preliminary injunction (Docs. 7, 15), Plaintiffs are precluded from arguing the issue of beneficial ownership in the absence of the federally recognized Tribe. Accordingly, Plaintiffs' beneficial ownership, trespass and "forcible removal" claims must all fail. In addition, even if Plaintiffs were the beneficial owners of Parcel 04, their trespass claim must fail because, as set forth in Docs. 7 and 15, Plaintiffs do not allege that the trespass will be committed by the United States. Despite filing several briefs on this issue, Plaintiffs have not and cannot provide any authority for the proposition that the United States is obligated to prevent trespass by third parties.

Further, Plaintiffs have not exhausted their tribal court remedies. *See* Doc. 7. On February 16, 2007, the Jamul Indian Village Tribal Court issued an Order and Default Judgment in which it stated: "Pursuant to Jamul Indian Village Ordinance No. 2007-01, this Judgment is final and is not subject to appeal. This Court will retain jurisdiction over this matter for as long as necessary to enforce this Judgment and to hear any related issues." *See* Exhibit C at 3.

Finally, Plaintiffs' claims under NAGPRA must fail because Plaintiffs, who alleged status under NAGPRA as lineal descendents, are attempting to use NAGRPA as a way to control the land at issue in this case. However, NAGPRA does not provide them with such power, and Defendants have no authority to take any of the actions demanded by Plaintiffs, as Parcels 04 and 05 are tribal, and not federal, land. See Doc. 15 at 4-12. Additionally, as Plaintiffs have not alleged that there has been an actual inadvertent discovery, the provisions of NAGPRA have not been triggered.

3

Once again, Plaintiffs are asking this Court to direct that Defendants take certain actions which are not required or permitted under any regulatory scheme identified by Plaintiffs. Such a request for mandatory injunctive relief should be denied by this Court.

## STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief carries its burden of persuasion by a clear showing. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *Tanner v. Federal Bureau of Prisons*, 433 F. Supp. 2d 117, 121 (D.D.C. 2006) ("not a form of relief granted lightly," and "carefully circumscribed . . ."). The same standards apply for both temporary restraining orders and preliminary injunctions. *See Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). "The power to issue a preliminary injunction, especially a mandatory one, should be 'sparingly exercised.'" *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969).

> In considering whether to grant preliminary injunctive relief, the court must consider whether: (1) the party seeking the injunction has a substantial likelihood of success on the merits; (2) the party seeking the injunction will be irreparably injured if relief is withheld; (3) an injunction will not substantially harm other parties; and (4) an injunction would further the public interest.

*CSX Transp., Inc. v. Williams*, 406 F.3d 667, 670 (D.C. Cir. 2005). The D.C. Circuit uses a flexible test, meaning that "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998), quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir.1995); *CSX Transp., Inc. v. Williams*, 406 F.3d at 670 (same). Notwithstanding that "sliding scale," however, courts in the D.C. Circuit have emphasized that "[i]t is particularly important for the movant to demonstrate a *substantial*

*likelihood of success on the merits*," and that the proponent of the injunction *must* "demonstrate at least 'some injury.'" *Tanner*, 433 F. Supp. 2d 117, 121 (emphasis supplied).

Finally, even under the sliding scale, the burden remains on the plaintiff to demonstrate that all four factors are met. *Mova Pharm. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998); *CityFed Financial Corp.,* 58 F.3d at 746; *Thomas v. Network Solutions, Inc.*, 2 F. Supp. 2d 22, 33 (D.D.C. 1998) (Hogan, J.) (stating that the party moving for a preliminary injunction must demonstrate the four factors weigh in its favor), *vacated on other grounds*, No. 97-2412 TFH, 1998 WL 1738180 (D.D.C. Aug. 28, 1998); *cf., Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (burden of establishing the propriety of an injunction is on the movant).

The traditional purpose for preliminary injunctive relief is to preserve the status quo until a trial on the merits may be had. *See Otero Sav. and Loan Ass'n v. Federal Reserve Bank of Kansas City, Mo.*, 665 F.2d 275, 277 (10th Cir. 1981). "[W]hen granting mandatory injunctive relief, i.e., an injunction that would alter, rather than preserve, the status quo by commanding some positive act--the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *National Conference On Ministry To Armed Forces v. James*, 278 F. Supp. 2d 37, 43 (D.D.C. 2003) (internal quotation marks omitted), quoting *Columbia Hosp. for Women Foundation, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 15 F.Supp.2d 1, 4 (D.D.C. 1997), *aff'd*, 159 F.3d 636, 1998 WL 203110 (D.C. Cir.1998). Such relief may not granted unless "extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980), citing *Clune v. Publishers' Ass'n of New York City*,

214 F. Supp. 520, 531 (S.D.N.Y.), *aff'd per curium*, 314 F.2d 343 (2d Cir. 1963).

## ARGUMENT

### I.      Plaintiffs Cannot Succeed on Their Claims Pursuant to NAGPRA

_____Plaintiffs assert, erroneously, that they are entitled to a temporary restraining order in order to compel compliance by Defendants with NAGRPA.  *See* Pl. Mot. at 8-9.   Plaintiffs rely, without any additional legal analysis, on the basis of the rulings in *Yankton Sioux Tribe v. U.S. Army Corps of Engineers*, 83 F. Supp. 2d 1047 (D.S.D. 2000) ("*Yankton Sioux I*"),  *Yankton Sioux Tribe v. U.S. Army Corps of Engineers*, 209 F. Supp. 2d 1008 (D.S.D. 2002) ("*Yankton Sioux II*"), *Yankton Sioux Tribe v. U.S. Army Corps of Engineers*, 258 F. Supp. 2d 1027 (D.S.D. 2003) ("*Yankton Sioux III*") and *San Carlos Apache Tribe v. United States*, 272 F. Supp. 2d 860 (D. Ariz. 2003), to support their request.  Plaintiffs' reliance is misplaced.  First, all of these cases involved activities on federal, and not tribal land.  As Defendants have previously explained, the land in question is tribal, and not federal, land.  *See* Doc. 15 at 4-12.

Second, Plaintiffs assert that NAGPRA requires Defendants to "restrain[] such third parties from excavation . . . ."  However, Plaintiffs cites to *Yankton Sioux II* and *Yankton Sioux III*, *see* Pl. Mot. At 8, do not reveal such a duty, and Plaintiffs, who are not the federally recognized Tribe, point to no specific provisions in NAGRPA requiring Defendants to undertake such a duty.  As the D.C. Circuit has stated, "an Indian tribe cannot force the government to take specific action unless a treaty, statute or agreement imposes, expressly or by implication, that duty." *Shoshone-Bannock Tribes v. Reno*, 56 F.3d 1476, 1482 (D.C. Cir. 1995).

Finally, Plaintiffs assert that the court in *Yankton Sioux II* and *Yankton Sioux III* "ultimately stipulated to continuing injunctions to maintain the status quo."  Pl. Mot. at 8.

However, it does not appear that a permanent injunction was ever granted or "stipulated to" by the district court in either of those case.  Rather the court ordered preliminary injunctive relief.  *See, e.g., Yankton Sioux III*, 258 F. Supp. 2d at 1035 (preliminary enjoining excavation in "Area A," and lifting preliminary injunctions to perform work in other areas).  As was later noted by the district court in *Yankton Sioux Tribe v. U.S. Army Corps of Engineers*, 396 F. Supp. 2d 1087, 1089 (D.S.D. 2005), "[f]ollowing several Court hearings and the appointment of a Special Master, the NAGPRA claims [brought with regard to White Swan (*Yankton Sioux I*) and North Point Recreation Area (*Yankton Sioux II and II*)] were resolved. . . ."  Further, the court in *Yankton Sioux III* had specifically recognized that "[a]lthough plaintiffs understandably do not want the . . .dirt. . . disturbed in any way, *the regulations implementing NAGPRA do not permanently prohibit inadvertent discoverers from conducting construction activities in the area where Native American cultural items are inadvertently discovered*.  See 43 C.F.R. § 10.1 et seq."  *Yankton Sioux III*, 258 F. Supp. 2d at 1033 (emphasis supplied).

In their request for a temporary restraining order, Plaintiffs first asserted that simply moving a tractor onto property that they allege contains human remains and associated cultural objects is a violation of NAGRPA.  *See* Pl. Mot. at 4.  Several hours later, Plaintiffs asserted that destruction of their homes "has almost certainly resulted in the disturbance of human remains and funerary artifacts buried near and around the houses."  Webb Second Supp. Decl. at ¶ 2.  However, Plaintiffs provide no proof of any actual inadvertent discoveries.  As Defendants have previously explained, in order for the requirements of NAGPRA to be triggered, including any requirements under 43 C.F.R. § 10.3(b), there must first be an inadvertent discovery or a plan for an intentional excavation of human remains or cultural items.  *See* Doc. 15 at 14-15; Doc. 7 at

18-19.   More importantly, as Defendants have previously explained, the land in question is

tribal, and not federal, land and therefore, Defendants have no authority, or indeed any

obligation, to act under NAGPRA even if the requirements of NAGPRA have been triggered by

an inadvertent discovery.  *See* Doc. 15 at 4-15.  Finally, to the extent that Plaintiffs believe this

amounts to a NAGPRA violation by the potential excavator, the Plaintiffs can bring suit against

those parties directly.

As Plaintiffs do not provide any additional authority for their assertion that Defendants

have any authority or duty to act in the instant case pursuant to NAGPRA, Defendants

respectfully refer this Court to their response and sur-reply memoranda in opposition to

Plaintiffs' motion for preliminary injunction for a more detailed discussion of why Plaintiffs are

not entitled to  injunctive relief of any kind under NAGPRA.  *See* Doc. 15 at 4-19 (particularly

pages 16-19 for a discussion of the trust responsibilities of the United States and a discussion of

the decisions in *Yankton Sioux I, II* and *III*); Doc. 7 at 13-22 (particularly pages 17-18 and 21-22

for a discussion of the decisions in *San Carlos Apache Tribe* and *Yankton Sioux I*).

## II.    Plaintiffs Cannot Succeed on Their Claims of Beneficial Ownership of Parcel 04 In the Absence of the Tribe

As set forth in more detail in Defendants' briefing on the preliminary injunction (Docs. 7,

15), the issue of beneficial ownership of Parcel 04 has already been litigated in an action filed in

the Southern District of California.  Doc. 7 at 23.  There, these same Plaintiffs filed an action

against the United States claiming that they as individuals – and not the federally recognized

Tribe – were the beneficial owners of Parcel 04.  Doc. 7, Ex. B.  The Ninth Circuit affirmed the

dismissal of the case on the grounds that the federally recognized Tribe, who also claim

ownership of Parcel 04, are a necessary and indispensable party.  *See Rosales v. United States*, 73

8

Fed. Appx. 913, 914-15, 2003 WL 21920015 (unpublished) (9th Cir. 2003), Doc. 7, Ex. C.  Thus, Plaintiffs are precluded from attempting to reargue in this Court the issue of beneficial ownership in the absence of the Tribe.  Because all of Plaintiffs' arguments regarding removal from their homes (Pl. Mot. at 9-11), beneficial ownership (id. at 9-11)  and trespass (id.) are premised on Plaintiffs' assertion of beneficial ownership, these arguments all must fail.  This Court cannot consider any of the arguments raised by Plaintiffs in the instant case which implicate the beneficial ownership of the land.[4/]

## III.     Plaintiffs' Trespass Claim Must Fail

As set forth in more detail in Defendants' briefing on the preliminary injunction (Docs. 7, 15), even if the Court were to look past the fact that Plaintiffs are barred from asserting beneficial ownership, Plaintiffs' trespass claim is still without merit.  Plaintiffs ask this Court to issue an injunction to prevent "trespass" on Plaintiffs' beneficial ownership interests.  Pl. Mot. at 11. This argument – and all authority upon which Plaintiffs rely – is premised on the assertion that Plaintiffs are the beneficial owners of Parcel 04.  Id.  As set forth in above and in Docs. 7 and 15, Plaintiffs cannot succeed on their beneficial ownership claim and therefore Plaintiffs' trespass

---

[4/] It should also be noted that to the extent Plaintiffs are seeking to establish the title to Parcel 04 as against the federally recognized Tribe, the Court is without jurisdiction to hear this claim because there has been no waiver of sovereign immunity.  The Quiet Title Act ("QTA") waives the United States' sovereign immunity for civil actions "to adjudicate a disputed title to real property in which the United States claims an interest."  28 U.S.C. § 2409a(a).  Because the United States holds legal title to Parcel 04, the QTA represents "the exclusive means" by which Plaintiffs may challenge title to this property.  See Block v. North Dakota, 461 U.S. 273, 286 (1983).  The sovereign immunity waiver in the QTA, however, "does not apply to trust or restricted Indian lands."  28 U.S.C. § 2409a(a); United States v. Motaz, 476 U.S. 834, 842 (1986); State of Alaska v. Babbitt, 38 F.3d 1068, 1073 (9th Cir. 1994); Wildman v. United States, 827 F. 2d 1306, 1309 (9th Cir. 1987).  Accordingly, there is no waiver of sovereign immunity for Plaintiffs' claim to ownership of Parcel 04.

claim must fail as well.  But even if Plaintiffs were authorized to bring this action on behalf of the Tribe or were found to be the beneficial owners of the land, the trespass claim would still fail.

Plaintiffs do not assert that the alleged trespass will be committed by the United States. Plaintiffs are therefore asking this Court to find that the United States is liable for trespass or other land deprivation wrongs committed by third parties.  This, despite the fact that  Plaintiffs, even if they did represent the Tribe, have the power to bring actions against any alleged trespasser on their own.  To so find would make Defendants a guarantor and insurer on behalf of the Tribe.  Plaintiffs continue to make this argument in their current motion, but still do not cite any authority for this proposition.  Pl. Reply at 20-21.[5]

As set forth in Docs. 7 and 15, the Supreme Court has repeatedly refused to make the United States an insurer on behalf of a tribe.  *See Creek Nation v. United States*, 318 U.S. 629, 640 (1943) ("we are unable to find in the words of the treaties or statutes upon which this action rests any such prodigal assumption by the government of other people's liabilities as that for which the petitioners contend here"); *Nez Perce v. United States*, 95 Ct. Cl. 1, 7 (1941) ("prodigal assumption" of liability cannot be assumed).

Plaintiffs' assertion that the United States' trust responsibility requires the United States to prevent trespass by third parties is without merit.  Enforceable governmental trust obligations must be anchored by statute or regulation.  *See United States v. Mitchell*, 445 U.S. 535 (1980)

---

[5] *Comanche Nation v. United States*, 393 F. Supp. 2d 1196 (W.D. Okla. 2005), was not a trespass action.  It did not address an attempt to compel the United States to enforce a claim against a third party, but instead challenged a specific BIA decision.  *Keechi v. United States*, 604 F. Supp. 267 (D.D.C. 1984), is similarly inapposite.  There, an Individual Indian Money ("IIM") account holder brought an action to enforce a spendthrift trust.  *United States v. Flournoy*, 69 F. 886 (D. Neb. 1895) is also inapposite.  This case does not hold that the United States is liable for trespass committed by third parties.

("*Mitchell I*") and *United States v. Mitchell*, 463 U.S. 206, 217-18 (1983) ("*Mitchell II*"),
(General Allotment Act created a "bare trust," i.e., a limited trust relationship which did not
impose on the government any fiduciary management duties).  The Court in *Mitchell II* stressed
that any other statutes or regulations that might establish a fiduciary relationship would "define
the contours of the United States' fiduciary responsibilit[y]." 463 U.S. at 224.

   *Creek Nation,* 318 U.S. at 638-640 is also instructive.  There, the Supreme Court refused
to hold the United States liable for the failure to file suits that would have protected tribal
property interests.  Rather than a mandatory duty, the Court found the decision as to "when to
institute legal proceedings" as one in which wide "discretion would seldom be more necessary..."
*Id.* at 639.  The argument that the general trust relationship and general language in treaties,
under even generous rules of construction, can premise a mandatory duty to assert claims was
rejected by the Supreme Court.  *Id.*

   Similarly, in *Shoshone-Bannock*, the Tribes sought to compel the United States to take
action on their behalf, specifically to sue others on behalf of the tribe regarding water rights
claims.  56 F.3d at 1480.  The D.C. Circuit, citing *Heckler v. Chaney*, 470 U.S. 821 (1985),
found that the Attorney General's refusal to assert the Tribes' claims "was presumptively within
her discretion." *Shoshone-Bannock.* at 1481.  The Circuit also addressed the question of the
United States' fiduciary responsibility to the Tribes, holding that "an Indian tribe cannot force the
government to take a specific action unless a treaty, statute or agreement imposes, expressly or
by implication, that duty.  'Without an unambiguous provision by Congress that clearly outlines a
federal trust responsibility, courts must appreciate that whatever fiduciary obligation otherwise

exists, it is a limited one only.'"  *Id*. at 1482 (internal citations omitted).[6]

Thus, even if Plaintiffs were found to be the beneficial owners of Parcel 04, or authorized to bring this action on behalf of the Tribe, they could not show that the United States has an obligation to prevent trespass by third parties.  Accordingly, Plaintiffs cannot succeed on their trespass claim.[7]

## IV.    Plaintiffs Have Not Shown Irreparable Injury and the Balancing of the Equities and the Public Interest Favors in Denying Emergency Injunctive Relief

Proof of irreparable injury is an essential prerequisite to obtaining injunctive relief.

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987).  Plaintiffs have also failed to carry their burden of proving irreparable injury, as Defendants have previously discussed.  *See* Doc. Doc. 7 at 35-36.  Injury is not, by definition, irreparable where other remedies are available.

*SMA Life Assur. Co. v. Sanchez-Pica* , 960 F.2d 274, 277 (1st Cir. 1992) ("SMA's failure to meet the standard for granting preliminary injunctions, which requires a showing of irreparable harm

_____

[6]Curiously, Plaintiffs now assert that Judge Kessler's recent decision in *Rosales v. United States*, No. 1:03CV01117, (Doc. 16), granting summary judgment is "not relevant."  Pl. Mot. at 12. This contradicts Plaintiffs' counsel's assertion at the February 16, 2007, hearing that Plaintiffs are currently asking the Court to maintain the status quo until Judge Kessler's ruling.  *See* transcript of hearing, Doc. 15, Ex. J at 36.  Nonetheless, because Plaintiffs' beneficial ownership claims are barred by issue preclusion and because Plaintiffs' trespass claims are without merit, Plaintiffs' request for injunctive relief must fail.

[7]Finally, any allegation by Plaintiffs' of criminal misconduct are appropriately the subject of state court jurisdiction pursuant to Public Law 280, Act of August 15, 1953, Pub. L. 83-280, 67 Stat. 588 (1953),  Act of Aug. 15, 1953, ch. 505, § 4, 67 Stat. 589 (codified at 18 U.S.C. § 1162(a) and 28 U.S.C. § 1360(a)).  Public Law 280 granted California, among other states, broad criminal jurisdiction over offenses committed by or against Indians in Indian country (including "all land within the limits of any Indian reservation under the jurisdiction of the United States Government").  18 U.S.C. § 1151.  See *California v. Cabazon Band of Mission Indians*, 480 U.S. 202 (1987) The *Cabazon* Court held that California's "prohibitory" laws had general application in Indian country, but merely "regulatory" laws did not.  *Cabazon*, 480 U.S. at 210-12.

and the inadequacy of alternative remedies.") *(citing Wulp v. Corcoran*, 454 F.2d 826, 831 n. 5 (1st Cir.1972)); *CSX Transp., Inc. v. Williams*, 406 F.3d 667, 674, n.7 (D.C. Cir. 2005). Typically, a defendant can demonstrate that there is no irreparable harm where an alternative legal remedy is available to remedy the wrong.  Here, Plaintiffs have available alternative equitable remedies, as well as legal remedies, to rectify the supposed harm.  For example, they could pursue a remedy against the federally recognized Tribe in tribal court, which, in this case, has retained jurisdiction over the eviction proceeding.  *See* Exhibit C at 3.  They also have a remedy against any contractors or individuals responsible or involved in the construction work in state court, and indeed, Plaintiffs are actively pursuing that route.  *See* Pl. Mot. at 3. Alternatively, Plaintiffs could bring suit for any claim of a NAGPRA violation against any contractors or individuals claimed to be directly responsible in federal district court in California where they could assert personal jurisdiction over such companies or individuals.  25 U.S.C. § 3013.  Plaintiffs could secure all they seek directly, if their claims had any merit, rather than attempt to secure indirectly against the federal defendants in an action that impacts the claims and rights of third parties not before this court.

As Defendants have previously discussed, Plaintiffs have also failed to carry their burden of proving that the balancing of the equities or the public interest favor granting emergency injunctive relief.  *See* Doc. 15 at 24; Doc. 7 at 35-36.  Thus, Plaintiffs' request for emergency injunctive relief should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' emergency motion for a temporary restraining order should be denied.

13

March 14, 2007.

Respectfully submitted,

MATTHEW J. MCKEOWN
Acting Assistant Attorney General
SAMANTHA KLEIN
ALEX KRIEGSMAN
Trial Attorneys
United States Department of Justice
Environment and Natural Resources Division

By:    */s/ Samantha Klein*_____
Samantha Klein
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0474
Facsimile: (202) 305-0506

By:    */s/ Alex Kriegsman*_____
Alex Kriegsman
Trial Attorney
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-3022
Facsimile: (202) 305-0506

Of Counsel:
Tobias Halvarson, Attorney-Advisor
U.S. Department of the Interior
1849 C Street, N.W.
Washington, D.C.  20240
Tel: (202) 208-6930
Facsimile: (202) 219-1791

ATTORNEYS FOR DEFENDANTS

14

EXHIBIT A

RECEIVED MAR  6 2007

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address)*:<br>Patrick D. Webb 82857<br>401 B Street Ste 306, San Diego CA 92101 | TELEPHONE NO.:<br>619-236-1650<br>619-236-1283 | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY FOR *(Name)*: Plaintiffs

Insert name of court and name of judicial district and branch court, if any:

San Diego Superior Court, Central

PLAINTIFF/PETITIONER: Walter Rosales et al.

DEFENDANT/RESPONDENT: State of California et. al

| **REQUEST FOR DISMISSAL**<br>☐ Personal Injury, Property Damage, or Wrongful Death<br>　☐ Motor Vehicle ☑ Other<br>☐ Family Law<br>☐ Eminent Domain<br>☑ Other *(specify):* Complaint under NAGPRA | CASE NUMBER:<br>GIC 878709 |
|---|---|

— A conformed copy will not be returned by the clerk unless a method of return is provided with the document. —

1. **TO THE CLERK: Please dismiss** this action as follows:
　a. (1) ☐ With prejudice　(2) ☑ Without prejudice

　b. (1) ☐ Complaint　(2) ☐ Petition
　　(3) ☐ Cross-complaint filed by *(name)*:　on *(date)*:
　　(4) ☐ Cross-complaint filed by *(name)*:　on *(date)*:
　　(5) ☐ Entire action of all parties and all causes of action
　　(6) ☑ Other *(specify):** DOE Defendant 2, GMH Manufactured Housing Services

Date: 2-27-07

Patrick D. Webb
...................................................
(TYPE OR PRINT NAME OF ☑ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
* If dismissal requested is of specified parties only, of specified causes of
action only, or of specified cross-complaints only, so state and identify
the parties, causes of action, or cross-complaints to be dismissed.

▶ *(SIGNATURE)*
Attorney or party without attorney for:
☑ Plaintiff/Petitioner　☐ Defendant/Respondent
☐ Cross-complainant

2. **TO THE CLERK: Consent** to the above dismissal is hereby given.**
Date:

...................................................
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)
** If a cross-complaint—or Response (Family Law) seeking affirmative
relief—is on file, the attorney for cross-complainant (respondent) must
sign this consent if required by Code of Civil Procedure section 581(i)
or (j).

▶ *(SIGNATURE)*
Attorney or party without attorney for:
☐ Plaintiff/Petitioner　☐ Defendant/Respondent
☐ Cross-complainant

*(To be completed by clerk)*
3. ☐ Dismissal entered as requested on *(date)*:
4. ☐ Dismissal entered on *(date)*:　as to only *(name)*:
5. ☐ Dismissal **not entered** as requested for the following reasons *(specify)*:

6. ☐ a. Attorney or party without attorney notified on *(date)*:
　　b. Attorney or party without attorney not notified. Filing party failed to provide
　　☐ a copy to conform　☐ means to return conformed copy

Date:　Clerk, by _____, Deputy

| Form Adopted by the<br>Judicial Council of California<br>982(a)(5) [Rev. January 1, 1997] | **REQUEST FOR DISMISSAL** | Code of Civil Procedure, § 581 et seq.<br>Cal. Rules of Court, rules 383, 1233<br>American LegalNet, Inc. \| www.USCourtForms.com |
|---|---|---|

# DECLARATION OF SERVICE

I, the undersigned, certify as follows:

I am a citizen of the United States, a resident of the County of San Diego, State of California, over the age of eighteen years, and not a party to the within action.

I am employed by **WEBB & CAREY**, 401 B STREET SUITE 306, San Diego, California 92101.

On February 27, 2007, I served the within:

**REQUEST FOR DISMISSAL WITHOUT PREJUDICE**

upon the parties interested in said action, by U.S. mail upon the following parties and counsel at the following addresses:

Antonette Cordero, Esq.
Office of Attorney General
300 S. Spring Street
Los Angeles 90013

Carol Squire, Esq.
Office of Attorney General
110 West A ST. Ste 1100
San Diego, CA 92101

Skip Durocher, Esq.
Dorsey & Whitney LLP
50 South Sixth Street, Ste 1500
Minneapolis, MN 55402-1498

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on February 27, 2007, at San Diego, California.

Patrick D. Webb

EXHIBIT B

1   EUGENE MADRIGAL (Cal Bar No. 90429)
    LAW OFFICE OF EUGENE R. MADRIGAL
2   28581 Old Town Front Street, Ste. 208
    Temecula, CA 92590
3   Telephone: (951) 695-7080
    Facsimile: (951) 695-7081
4

5   SKIP DUROCHER (*to be admitted pro hac vice*)
    DORSEY & WHITNEY LLP
    50 South Sixth Street, Suite 1500
6   Minneapolis, MN 55402-1498
    Telephone: (612) 340-2600
7   Facsimile: (612) 340-2868

8   KENT J. SCHMIDT (Cal Bar No. 195969)
    DORSEY & WHITNEY LLP
9   38 Technology Drive
    Irvine, CA 92618
10   Telephone: (949) 932-3600
    Facsimile: (949) 932-3601
11

    Attorneys for Plaintiff
12

    JAMUL INDIAN VILLAGE
13

14

**ENTERED**

### JAMUL INDIAN VILLAGE TRIBAL COURT

#### INTERTRIBAL COURT OF SOUTHERN CALIFORNIA

15

16

17

18   JAMUL INDIAN VILLAGE,           Case No.: Jamul 07-01-01

19       Plaintiffs,              **ORDER AND DEFAULT JUDGMENT**

20       vs.

21   WALTER ROSALES, KAREN TOGGERY,
    LOUIS AHYULE GOMEZ, DOES 1 through
22   20, inclusive,

23       Defendants.

24

25

26

27

28

ORDER AND DEFAULT JUDGMENT-1

1    The Jamul Indian Village filed its Motion for Default Judgment on February 9, 2007. On

2    February 14, 2007, Defendants filed a "Special Appearance to Oppose Motion for Default

3    Judgment." In the special appearance, the Defendants continue to contest the jurisdiction of this

4    Court. The Defendants make the same arguments that they made in their January 22, 2006,

5    special appearance. However, the Court has already rejected these arguments and determined that

6    it has jurisdiction over this matter, following a hearing. See Order After Hearing Findings at 4-5.

7    Because the Defendants failed to file an Answer in this case by February 8, 2007, as ordered by

8    the Court, and because they have failed to provide any substantive response to Plaintiffs' Motion

9    for Default Judgment, that Motion is granted. Judgment is hereby entered in favor of the

10   Plaintiffs, the Jamul Indian Village, for possession of the premises currently occupied by the

11   Defendants.

12   The Defendants are ordered to vacate the Reservation not more than five days from the

13   date of this Order. If the Defendants have not left the Reservation within five days, the Plaintiffs

14   may take all necessary action to have them removed, including enlisting the assistance of law

15   enforcement to assist with the removal of the Defendants and their personal property from the

16   Reservation. The Plaintiffs are ordered to store the Defendants' personal property in a safe place

17   for at least fourteen days, during which time the Defendants may claim the property. If the

18   Defendants' personal property includes any vehicles, the Plaintiffs are ordered to store the

19   vehicles in a safe place for thirty days. The Defendants are ordered to pay for the storage costs of

20   their personal property and vehicles, as required by Jamul Eviction and Exclusion Rule 5.2.03.

21   Pursuant to Jamul Indian Village Ordinance No. 2007-01, this Judgment is final and is not

22   subject to appeal. This Court will retain jurisdiction over this matter for as long as necessary to

23   enforce this Judgment and to hear any related issues.

24   IT IS SO ORDERED.

25

26   Chief Judge Anthony J. Brandenburg.
     Jamul Indian Village Tribal Court

27

28   February 16, 2007

ORDER AND DEFAULT JUDGMENT-3

EXHIBIT C

Law Offices
**Webb & Carey**
A Professional Corporation
**401 B Street, Suite 306**
**San Diego, California 92101**
Tel (619) 236-1660
Fax (619) 236-1283

**VIA FACSIMILE**                    March 12, 2007

Richard Dietrich
Dietrich Corporation
1243 Greenfield Dr. #H
El Cajon, Ca 92021

Re: Rosales v. California
     SDSC Case No. 878709

Dear Mr. Dietrich:

This will serve to provide you and your company notice that Plaintiffs in the above referenced action, will seek a temporary restraining order prohibiting you and Dietrich Corporation from grading or conducting any other similar construction activities on parcels 597-080-04, 04 and 06 until our clients' motion for a preliminary injunction can be heard by the court, at an exparte hearing before the Hon. Ronald Prager, Department 71 of the San Diego Superior Court, 330 West Broadway, San Diego Calif., on Friday, March 13, 2007 at 8:15 a.m.

Very truly yours,

Patrick D. Webb for
**WEBB & CAREY**

cc: Antonette Cordero, Esq.            Carol Squire, Esq.
Office of Attorney General             Office of Attorney General
300 S. Spring Street                   110 West A ST. Ste 1100
Los Angeles 90013                      San Diego, CA 92101
fax 213-897-7605                       fax 619-645-2581